## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **MOTOROLA, INC.** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 08-04512** |
| **v.** | ) | |
| | ) | **Judge James B. Zagel** |
| **MICHAEL FENGER,** | ) | **Magistrate Judge Arlander Keys** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S NOTICE OF FILING OF STATE COURT DOCUMENTS

Defendant Michael Fenger, by his counsel, hereby gives notice of filing of copies of all process, pleadings and orders (other than the Complaint and attached exhibits, already filed with the Notice of Removal) known to Mr. Fenger in this action from the Circuit Court of Cook County, the court from which this case was removed, pursuant to 28 U.S.C. § 1446(a).

Counsel for Mr. Fenger notes that although repeated efforts were made to obtain original copies of the process, pleadings and orders filed in the underlying action in the Circuit Court of Cook County, the Clerk of Court could not locate the Court's file. The copies attached, therefore, are copies that were provided by plaintiff Motorola, Inc. to Mr. Fenger, and are not copies from the official file of the Circuit Court of Cook County. Mr. Fenger reserves the right to substitute copies of the original or add any additional documents that are not provided herein when the official file is located.

Dated:  August 13, 2008                    Respectfully submitted,


                                           ___/s/ Matthew L. Kutcher_____
                                           One of the Attorneys for Defendant Michael Fenger


                                           Timothy B. Hardwicke
                                           Matthew L. Kutcher
                                           Catherine K. Dick
                                           LATHAM & WATKINS LLP
                                           Sears Tower, Suite 5800
                                           233 South Wacker Drive
                                           Chicago, Illinois 60606
                                           Phone: (312) 876-7700
                                           Fax: (312) 993-9767

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew L. Kutcher, hereby certify that on August 13, 2008, I electronically filed

MICHAEL FENGER'S NOTICE OF FILING OF STATE COURT DOCUMENTS, which will

be automatically served via the CM/ECF system, upon:

        Justin K. Beyer
        jbeyer@seyfarth.com

                /s/ Matthew L. Kutcher
                Matthew L. Kutcher

### Exhibits

| Exhibit No. | Date | Title |
|---|---|---|
| A | 07/17/2008 | Summons |
| B | 07/17/2008 | Civil Cover Sheet |
| C | 07/18/2008 | Ex Parte Motion for Appointment of Special Process Server |
| D | 07/18/2008 | Order |
| E | 07/21/2008 | Emergency Ex Parte Motion to Substitute and Replace Exhibit 10 to Complaint for Injunctive and Other Relief |
| F | 07/21/2008 | Order |
| G | 07/24/2008 | Notice of Filing of Proofs of Personal Service |
| H | 07/24/2008 | Notice of Orders |
| I | 07/30/2008 | Notice of Motion and Motion of Plaintiff Motorola, Inc.'s Motion for Expedited Discovery |
| J | 08/11/2008 | Order |

# EXHIBIT A

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY _____ DIVISION

(Name all parties)

MOTOROLA, INC, a Delaware corporation, Plaintiff

v.

MICHAEL FENGER, an individual, Defendant

} 0 8 C H 2 5 7 4 2

No. _____

### SUMMONS

To each Defendant: Michael Fenger, 23500 Toyonita Road, Los Altos Hills, CA 94024

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _802_____, Chicago, Illinois 60602

| ☐ District 2 - Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |

| ☐ District 5 - Bridgeview | ☐ District 6 - Markham | ☐ Child Support |
|---|---|---|
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 90747

Name: Justin K. Beyer, Seyfarth Shaw LLP

Atty. for: Plaintiff

Address: 131 S. Dearborn Street, Suite 2400

City/State/Zip: Chicago, IL 60603

Telephone: (312) 460-5000

Service by Facsimile Transmission will be accepted at: _____

WITNESS, JUL 17 2008 , _____

DOROTHY BROWN
CLERK OF Circuit Court
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code) (Facsimile Telephone Number)

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# EXHIBIT B

(Rev. 12/4/00)  CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT /CHANCERY DIVISION

FILED - 2

MOTOROLA, INC., a Delaware Corporation

2008 JUN 20 PM 2:37

v.

~~ZIP COURT CLERK OF COOK~~
~~COUNTY, ILLINOIS~~
~~CHANCERY DIV.~~

MICHAEL FENGER, an individual

~~CLERK~~

DOE Defendant

Case No. _____

# 08CH25742

## CHANCERY DIVISION CIVIL COVER SHEET

A Chancery Division Civil Cover Sheet shall be filed with the initial complaint in all actions filed in the Chancery Division. The information contained herein is for Administrative purposes only and shall not be introduced into evidence. Please check the box in front of the appropriate category which best characterizes your action being filed.

005 _____ Administrative Review
006 _____ Change of Name
001 _____ Class Action
002 _____ Declaratory Judgment
004 __✓__ Injunction
008 _____ Mechanic's Lien
003 _____ Mortgage Foreclosure

007 _____ General Chancery
_____ Accounting
_____ Arbitration Awards
_____ Certiorari
_____ Dissolution of Corporation
_____ Dissolution of Partnership
_____ Equitable Lien
_____ Interpleader
_____ Mandamus
_____ Ne Exeat

_____ Partition
_____ Quiet Title
_____ Quo Warranto
_____ Redemption Rights
_____ Reformation of a Contract
_____ Rescission of a Contract
_____ Specific Performance
_____ Trust Construction
_____ Other _____

Atty. No.: 90747

By: _____

Name: Justin K. Beyer, Seyfarth Shaw LLP

Atty. for: Plaintiff

Address: 131 S. Dearborn Street, Suite 2400

City/State/Zip: Chicago, IL  60603

Telephone: (312) 460-5000

Attorney _____ Pro Se _____

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# EXHIBIT C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

MOTOROLA, INC.
a Delaware Corporation,

Plaintiff,

v.

MICHAEL FENGER, an individual,

Defendant.

)
)
)
)
)
)
)
)
)
)

Case No. 08 CH 25742

Hon. William Maki

## EX PARTE MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Plaintiff, MOTOROLA, INC. ("Motorola") brings this *ex parte* motion for appointment of special process server pursuant to Section 2-202 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-202, for the appointment of Sally Graver, 15466 Los Gatos Boulevard, Los Gatos, California 95032 as a special process server to serve defendant. In support of its motion, Motorola states:

1.      The Complaint for Injunctive and Other Relief was filed on July 17, 2008.

2.      Due to the time sensitive nature of the case, the defendant must receive notice of the filing of the Complaint expeditiously.

3.      Defendant is an out of state resident and the Cook County Sheriff is unable to execute service.

4.      The proposed special process server is over 18 years of age and is not a party to this lawsuit.

5.      The appointment requested in this motion is for the limited purpose of serving the summons and the Complaint for Injunctive and Other Relief in the above-captioned litigation.

6.      A proposed order is attached hereto as Exhibit A.

WHEREFORE, Motorola, Inc. moves pursuant to 735 ILCS 5/2-202 for the appointment of Sally Graver, as special process server.

Respectfully submitted,

MOTOROLA, INC.

By: _____
One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 17, 2008

2
CHI 11521360.1

# EXHIBIT A

(               (

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC. a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | Hon. |
| MICHAEL FENGER, an individual, | ) ) | |
| Defendant. | ) ) | |

### <u>ORDER</u>

It is hereby ordered that Sally Graver, 15466 Los Gatos Boulevard, Los Gatos, California 95032, is appointed to serve process in this cause on MICHAEL FENGER.

ENTERED:

_____
Judge

<u>Prepared By</u>:
Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

# EXHIBIT D

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

MOTOROLA, INC.　　　　　　　　　)
a Delaware Corporation,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　Case No.  08 CH 25742
　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　Hon. William Maki
MICHAEL FENGER, an individual,　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)

### ORDER

It is hereby ordered that Sally Graver, 15466 Los Gatos Boulevard, Los Gatos, California

95032, is appointed to serve process in this cause on MICHAEL FENGER.

ENTERED:

Judge

ENTERED
JUDGE WILLIAM ____ -1604
JUL 18 2008
CLERK OF _____ T COURT
OF COO_____, IL
DEPUTY CLE___

Prepared By:
Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

CHI 11521396.1

# EXHIBIT E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| MOTOROLA, INC. a Delaware Corporation, | ) ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MICHAEL FENGER, an individual, | ) ) |
|  | ) |
| Defendant. | ) |

CLERK OF THE CIRCUIT COURT
DOMESTIC RELATIONS

CLERK

CLERK OF THE CIRCUIT COURT

Case No. 08 CH 25732

Hon. William Maki

**EMERGENCY *EX PARTE* MOTION TO SUBSTITUTE AND REPLACE
EXHIBIT 10 TO COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff, MOTOROLA, INC. ("Motorola") brings this emergency *ex parte* motion to

substitute and replace Exhibit 10 to its Complaint for Injunctive and Other Relief pursuant to

Section 2-616 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-616. In support of its

motion, Motorola states:

1.    The Complaint for Injunctive and Other Relief (the "Complaint") was filed on

July 17, 2008.

2.    Amongst the exhibits filed in support of the Complaint was Fenger's application

for employment with Motorola.

3.    After filing the Complaint, Motorola discovered that Exhibit 10 of the Complaint

contained Michael Fenger's social security number. While Motorola is not aware of any

prohibition to this, in an effort to protect Mr. Fenger's personal information, Motorola moves to

substitute and replace Exhibit 10 with the attached exhibit. A substitute copy of Exhibit 10 is

attached as Exhibit A.

4.    735 ILCS 5/2-616 allows a party to amend its pleadings at anytime before final

judgment.

5.      Amendments may be allowed on just and reasonable terms and amendments to pleadings should be liberally allowed in order to further the ends of justice. *Pantaleo v. Our Lady of the Resurrection Med. Ctr.*, 297 Ill. App. 3d 266, 696 N.E.2d 717 (1st Dist. 1998).

6.      The filing of this substitute exhibit will not prejudice Fenger and is not filed for purposes of delaying the litigation or harassing Fenger.

WHEREFORE, Motorola, Inc. moves pursuant to 735 ILCS 5/2-616 to substitute and replace Exhibit 10 of its Complaint with the attached Exhibit A.

Respectfully submitted,

MOTOROLA, INC.

By: _____
        One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 21, 2008

**MOTOROLA**

## Application for Employment

Motorola Inc. is an Equal Opportunity/Affirmative Action Employer and fully complies with all applicable federal, state and/or local laws, orders and regulations. All qualified applicants will receive consideration for employment without regard to age, sex, race, color, national origin, ancestry, religion, disability, marital or Veteran status.

last name: **Fenger**  first name: **Michael**  middle initial: **J**  date: **9-14-02**

street address: **17455 Shelburne Rd**  city: **Cleveland Hts**  state: **Ohio**  zip: **44118**

social security number: **REDACTED**  home phone: **(216) 397-9877**  business phone: **(216) 266-5501**

position applied for or type of work preferred

which shift do you prefer?                     which location do you prefer?

Please mark the appropriate boxes:     under 18? ☐ yes ☒ no

### Personal History

Motorola has a legal obligation to employ only persons who can produce documentation that indicates their identity and authorization to work in the United States. This policy is required by the Immigration Reform and Control Act of 1986 (IRCA). The responsibility for compliance with IRCA is very important to Motorola. Therefore, in order for Motorola to determine whether you are authorized to work and are eligible for hire, please mark the 'yes' or 'no' box.

Do you currently have unrestricted employment authorization that will allow you to work with any employer in the United States? ☐ yes ☐ no

As part of its application process, Motorola asks each applicant whether he or she has been convicted of a felony. Conviction of a crime does not constitute an absolute bar to employment. Underlying circumstances at the time of the offense will be taken into account.

Have you ever been convicted of a felony? ☐ yes ☒ no

If yes, please explain

Have you ever worked for the Department of Defense or the U.S. Government or served in the armed forces? ☐ yes ☒ no

If yes, please provide:

dates of service            branch/department/service        highest rank held

/    /    -    /    /

Motorola is an EEO/Affirmative Action Employer

Page 1

**Exhibit 10**

Exhibit A

## Personal History

Were you referred to Motorola by one of the following?  Please check one.

☐ advertisement        ☒ referral        ☐ agency        ☐ job fair        ☐ write-in        ☐ college recruitment        ☐ other

If you previously worked at Motorola and/or its subsidiaries in any capacity (e.g., as an employee, consultant, contractor or temporary employee), please provide:

dates                    location/facility                    name used                    badge number

Is there any other information that may be of value in considering your application? (Please do not include any information that may indicate your age, sex, race, color, national origin, ancestry, religion, physical or mental disability unrelated to job requirements, marital or veteran status.)

## Education

| high school (name and location) | degree earned | field of specialty | graduate? |
|---|---|---|---|
| Western Reserve Academy  Hudson Ohio | GED | — | |
| college (name and location) | degree earned | field of specialty | |
| Miami University, Oxford Ohio | BA | Economics | ☒ yes ☐ no |
| graduate (name and location) | degree earned | field of specialty | ☒ yes ☐ no |
| | | | |
| other (name and location) | degree earned | field of specialty | ☐ yes ☐ no |
| | | | |
| other (name and location) | degree earned | field of specialty | ☐ yes ☐ no |
| | | | ☐ yes ☐ no |

## Patents Granted or Pending

It is only necessary to list the title of such inventions and their purpose.

US Pat # 634 2766 - Power Module for High Intensity Discharge Lamp (Co-inventor)

I represent that the invention identified in the _____ pages I attached hereto comprise all the unpatented inventions that I have made or conceived prior to my application for employment by Motorola; all such inventions shall be excluded from any agreement with Motorola.

If there are no such unpatented inventions to be excluded, initial here_ MJF

**Employment Record**

Give a complete record of your experience starting with your present or most recent position (attach additional sheets if necessary).

employer
General Electric

employment dates
9/17/98 - 9/23/02

street address
1975 Noble Road

city
Cleveland

state
Oh

zip

starting position
Mgt. Trainee

starting salary
29,000

present position
General Manager - Global Supply Chain

present salary
245,000

other compensation
100,000 Bonus

present duties and responsibilities
Responsible for all Supply Chain Activities for the Lighting Business

reason for leaving
Recruited Away

supervisor's name
Jack Fish

title
COO, GE Consumer Products

phone
(216) 266-8986

May we contact this employer? ☑ yes ☐ no

employer

employment dates
/ / - / /

street address

city

state

zip

starting position

starting salary

final position

final salary

other compensation

final duties and responsibilities

reason for leaving

supervisor's name

title

phone
( )

May we contact this employer? ☐ yes ☐ no

**Employment Record**

employer                                                                employment dates

street address                          city                    /    /    –    /    /
                                                                state         zip

starting position                                  starting salary

final position                                     final salary              other compensation

final duties and responsibilities

reason for leaving

supervisor's name                      title                   phone

                                                                (       )

May we contact this employer? ☐ yes ☐ no

---

employer                                                                employment dates

street address                          city                    /    /    –    /    /
                                                                state         zip

starting position                                  starting salary

final position                                     final salary              other compensation

final duties and responsibilities

reason for leaving

supervisor's name                      title                   phone

                                                                (       )

May we contact this employer? ☐ yes ☐ no

**Professional Work References**

List only persons we may contact at this time.

name
> Jack Fish

title
Chief Operating Officer - GECP

address
>

business phone
( 216 ) 266- 8986

name
> Mike Zafirouski

title
Chief Operating Officer  Motorola

address
>

business phone
( )

name
>

title

address
>

business phone
( )

name
>

title

address
>

business phone
( )

**Motorola's Drug-Free Workforce Policy**

It is Motorola's policy to employ a workforce that is drug free and to provide a workplace free from the illegal manufacture, distribution, possession and use of drugs. All candidates offered a position with Motorola must consent to and pass a drug test as a condition of employment. Motorola will maintain the confidentiality of the test results and any information a candidate furnishes in connection with the pre-employment drug testing process, in accordance with applicable law.

Consent For Drug Testing

You hereby consent to a urinalysis and/or other drug screening to determine the presence of drugs or their metabolites in your system. You also consent to the release of these tests and any information furnished in connection with the pre-employment drug testing process to Motorola, in accordance with applicable law. You hereby release and agree to hold Motorola, the collection facility, the testing laboratory and their employees and agents and the Medical Review Officer harmless from any liability to you based on the testing procedure or the reporting of the test results. You also understand that any offer of employment is contingent upon your passing this pre-employment drug test.

signature
> Michael J Fenger

printed name
Michael J Fenger

date
9-14-02

**Agreement**

Read this carefully as it applies to actions Motorola may or may not take regarding your employment.

The information contained in this application is true to the best of your knowledge and belief. You understand that any misrepresentation of fact, as stated or implied, given in your application or other employment documents, interview(s) or during your employment may be sufficient reason for not hiring you and/or immediate dismissal.

You understand and agree that all information furnished in this application may be verified by Motorola or its authorized representative. You waive any right you may have to be notified by any individuals and organizations named or referred to in this application prior to the release of any employment information to Motorola.

You hereby authorize all individuals and organizations named or referred to in this application and any law enforcement organization to give Motorola all information relative to such verification. You hereby release such individuals, organizations and Motorola from any and all liability for any claim or damage resulting therefrom.

You understand that, if employed by Motorola and as a condition of your employment by Motorola, you must furnish proof that you are at least 18 years old and authorized to work in the United States. In addition, you will be required to execute certain agreements with Motorola (profit sharing participation, inventions and code of conduct, copies of which are available upon request) and you may be required, at the option of Motorola, to obtain through the auspices of Motorola and at its expense, a U.S. government security clearance.

You understand that, if hired, you are required to comply with all current and amended Motorola communications regarding any rules, regulations, policies, and/or procedures, which may or may not affect your employment with Motorola. You further understand that Motorola may change and/or amend any of these items at any time and in any way without notice to you.

You understand that Motorola is not obligated to provide employment and that you are not obligated to accept employment. Nothing in this application nor in any prior or subsequent oral or written statement is intended to create any contract of employment or to create any rights in the nature of a contract of employment. This application does not bind either party for a specific period of time regarding employment. You understand that no one other than the Motorola, Inc. Executive Vice President and Director of Human Resources has any authority to enter into any agreement contrary to the foregoing. If hired, nothing in this application shall restrict your right as an employee nor the right of Motorola as an employer to terminate your employment at any time.

signature: *Michael J Fenge*    witness: *Laura H. Fenge*    date: 9-14-02

**Non-Disclosure Agreement**

In consideration of this potential employment opportunity with Motorola, I agree to the following:

1. During and after this potential employment opportunity, I will not disclose Motorola confidential information to others or use Motorola confidential information for any purpose other than evaluating employment with Motorola; 2. "Motorola Confidential Information" includes but is not limited to research and/or development projects and related data, designs, products, processes, customer and supplier lists, employee data, cost and pricing data and sales plans; 3. "Motorola Confidential Information" does not include information that I can demonstrate is known to the public without breach of a confidentiality obligation; and 4. I will not remove from Motorola premises any documents, file records, correspondence, notes or other papers (including copies) relating to the business of Motorola except with permission of an authorized Motorola representative, and in such case, I will promptly return such items to Motorola upon request.

signature: *Michael J Fenge*    witness: *Laura H. Fenge*    date: 9-14-02

(Motorola internal use only when completed)

# EXHIBIT F

Order _____ (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MOTOROLA, INC.

v.                                        }   No. _08 CH 25742_

FENGER

### ORDER

This matter coming before the court on Plaintiff's emergency
_ex parte_ motion to substitute and replace and physically remove
Exhibit 10 to Complaint with Exhibit A to motion, the
court being advised in the premises;

IT IS HEREBY ORDERED:

(1)   The motion is granted

(2)   The Clerk of the Circuit Court of Cook County is
ordered to replace Exhibit 10 to the Complaint with
the Substitute Exhibit 10 instantu

Atty. No.: _90747_

Name: _Seyfarth Shaw LLP / J. Bryer_         ENTERED:

Atty. for: _Π_

Address: _131 S. Dearborn St, Ste 2400_       Dated: ENTERED _____, 2008
                                              JUDGE WILLIAM O. MAKI-1604
City/State/Zip: _CHICAGO IL 60603_             JUL 21 2008
                                              DOROTHY BROWN
Telephone: _( 312 ) 460-5000_                 Judge CLERK OF THE CIRCUIT COURT   Judge's No.
                                                   OF COOK COUNTY, IL
                                              DEPUTY CLERK

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# EXHIBIT G



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MOTOROLA, INC.<br>a Delaware Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08-CH-25742 |
| v. | ) |
| | ) Hon. William Maki |
| MICHAEL FENGER, an individual, | ) |
| | ) |
| Defendant. | ) |

### NOTICE OF FILING

TO:    Michael Fenger
       23500 Toyonita Road
       Los Altos Hills, California 94024

PLEASE TAKE NOTICE that on July 24, 2008, the undersigned filed with the Clerk of the Circuit Court of Cook County, County Department, Chancery Division, **Proofs of Personal Service,** copies of which are attached hereto and hereby served upon you.

Respectfully submitted,

MOTOROLA, INC.

By: _____
         One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 24, 2008

Affidavit of Service of Summons               (Rev. 3/15/07) CCG 0074

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Motorola, Inc.

v.           }    No. 08 CH 25742

Michael Fenger

### AFFIDAVIT OF SERVICE OF SUMMONS OUTSIDE COOK COUNTY

State of ___California___

County of ___Santa Clara___ } ss:

___Sally Graver___ on oath states:

I am over 21 years of age and not a party to this case. I served the summons and a copy of the complaint upon defendant as follows:

☐   (a)   on defendant _____, by leaving a copy of the summons and of the complaint with the defendant personally on _____, _____, at the hour of _____ m. at _____, County of _____.

☒   (b)   on defendant ___Michael Fenger___ on (date) ___July 21___, 2008, at the hour of ___7:25___ a. m., by leaving a copy of the summons and of the complaint at ___23500 Toyonita Road Los Altos Hills, California___, County of ___Santa Clara___, the defendant's usual place of abode with ___Mrs. Fenger___, a person of the defendant's family or a person residing there, of the age of 13 years or upwards, who, to the best of my knowledge is ___38___ years of age, ☐ Male ☒ Female and described by me as follows: ___Caucasian adult, approximately 5'5" tall, 120 pounds, blonde hair medium length (worn in a ponytail), no glasses, no visible tattoos or birthmarks.___

and informing that person of the content of the summons, and also by sending on (date)_____, _____, a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode.

   (c)   on defendant corporation _____, by leaving a copy of the summons and of the complaint with _____,

(name)

_____, of the corporation

(registered agent)      (officer)      (agent)

on _____, _____, at the hour of _____ m. at _____, County of _____.

_____
Signature of Affiant

Atty. No.: _____    Signed and sworn to before me ___July 22, 08___

Name: _____

Atty. for: _____    _____

Address: _____      Notary Public

City/State/Zip: _____

Telephone: _____

GIRISH H. PATEL
COMM. #1670707
Notary Public-California
SANTA CLARA COUNTY
My Comm. Exp. June 26, 2010

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

POS-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michael D. Wexler<br>Seyfarth Shaw LLP<br>131 S. Dearborn Street, Suite 2400<br>Chicago, Illinois 60603<br><br>TELEPHONE NO.: (312) 460-5000<br>E-MAIL ADDRESS *(Optional):*          FAX NO. *(Optional):*<br>ATTORNEY FOR *(Name):* Motorola, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 190 W. Hedding Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95110
BRANCH NAME:

PETITIONER/PLAINTIFF: Motorola, Inc.

RESPONDENT/DEFENDANT: Michael Fenger

| PROOF OF PERSONAL SERVICE—CIVIL | CASE NUMBER:<br>08 CH 25742 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.**

2. I served the following documents *(specify):*

   Summons and Complaint

   ☐ The documents are listed in the *Attachment to Proof of Personal Service—Civil (Documents Served)* (form POS-020(D)).

3. I personally served the following **persons** at the address, date, and time stated:
   a. Name:    Mrs. Michael Fenger
   b. Address: 23500 Toyonita Road
   c. Date:    July 21, 2008
   d. Time:    7:35 A.M.

   ☐ The persons are listed in the *Attachment to Proof of Personal Service—Civil (Persons Served)* (form POS-020(P)).

4. I am
   a. ☐ not a registered California process server.
   b. ☐ a registered California process server.
   c. ☐ an employee or independent contractor of a registered California process server.
   d. ☑ exempt from registration under Business & Professions Code section 22350(b).

5. My name, address, telephone number, and, if applicable, county of registration and number are *(specify):*

   Sally Graver
   15466 Los Gatos Boulevard, PMB 245-109
   Los Gatos, CA 95032

6. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7. ☐ I am a California sheriff or marshal and certify that the foregoing is true and correct.

Date: July 22, 2008

_____
Sally Graver
(TYPE OR PRINT NAME OF PERSON WHO SERVED THE PAPERS)

▶ _____
(SIGNATURE OF PERSON WHO SERVED THE PAPERS)

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-020 [New January 1, 2005] | PROOF OF PERSONAL SERVICE—CIVIL | Code of Civil Procedure, § 1011<br>www.courtinfo.ca.gov |
|---|---|---|

www.accesslaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the NOTICE OF FILING to be served upon the following by U.S. Mail, postage prepaid, this 24th day of July, 2008:

> Michael Fenger
> 23500 Toyonita Road
> Los Altos Hills, California 94024

Justin K. Beyer

2

CHI 11528965.1

FedEx® Ship Manager Enterprise | Label



Notice of filing of proofs
of Personal Service

AND

Notice of Orders with
Copies of Orders both
sent in this pkg.

PLEASE FOLD THIS SHIPPING DOCUMENT IN HALF AND PLACE IT IN A WAYBILL POUCH AFFIXED TO YOUR SHIPMENT SO THAT THE BARCODE PORTION OF THE LABEL CAN BE READ AND SCANNED. ***WARNING: USE ONLY THE PRINTED ORIGINAL LABEL FOR SHIPPING. USING A PHOTOCOPY OF THIS LABEL FOR SHIPPING PURPOSES IS FRAUDULENT AND COULD RESULT IN ADDITIONAL BILLING CHARGES, ALONG WITH THE CANCELLATION OF YOUR FEDEX ACCOUNT NUMBER.

| From    Origin ID: CHIA  (312) 460-5957 | FedEx Express | Ship Date: 24JUL08<br>ActWgt: 1 LB<br>System#: 381258/FXRS0773<br>Account#: S 416819580 |
| --- | --- | --- |

From    Origin ID: CHIA  (312) 460-5957
Justin K. Beyer
Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, IL 60603

**FedEx** Express

**E**

CL58501670123

SHIP TO:    (312) 460-5957          BILL SENDER

**Michael Fenger**
23500 Toyonita Road

**Los Altos Hills, CA 94024**

Ship Date: 24JUL08
ActWgt: 1 LB
System#: 381258/FXRS0773
Account#: S 416819580

Delivery Address Bar Code



Ref #    11726-000712
Invoice #
PO #
Dept #

** 2DAY **                                    **MON**
                                              Deliver By:
TRK#  **9651  9187  0096**   FORM 0201        28JUL08
                                    **SJC**   A2

**94024**  -CA-US
RES

**SB NUQA**



# EXHIBIT H

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC.<br>a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08-CH 25742 |
| v. | ) ) | Hon. William Maki |
| MICHAEL FENGER, an individual, | ) ) | |
| Defendant. | ) | |

### NOTICE OF ORDERS

TO:    Michael Fenger
       23500 Toyonita Road
       Los Altos Hills, California 94024

PLEASE TAKE NOTICE that, in accordance with Cook County Circuit Court Rule 2.2(b), on July 24, 2008, Plaintiff, MOTOROLA, INC, by and through its attorneys, Seyfarth Shaw LLP, provided Defendant, MICHAEL FENGER, with copies of the orders entered by Judge William O. Maki on July 18 and 21, 2008.

Respectfully submitted,

MOTOROLA, INC.

By: _____
       One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 24, 2008

CHI 11525335.1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused a true and correct copy

of the NOTICE OF ORDERS to be served upon the following by U.S. Mail, postage prepaid,

this 24th day of July, 2008:

> Michael Fenger
> 23500 Toyonita Road
> Los Altos Hills, California 94024

Justin K. Beyer

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MOTOROLA, INC.<br>a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL FENGER, an individual,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  08 CH 25742<br><br>Hon. William Maki |

## ORDER

It is hereby ordered that Sally Graver, 15466 Los Gatos Boulevard, Los Gatos, California

95032, is appointed to serve process in this cause on MICHAEL FENGER.

ENTERED:

Judge ENTERED
JUDGE WILLIAM D. MAKI - 1604

JUL 18 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Prepared By:
Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Order (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MOTOROLA, INC.

v.                                              No. 08 CH 25742

FENGER

## ORDER

This matter coming before the court on Plaintiff's emergency ex-parte motion to substitute and replace and physically remove Exhibit 10 to Complaint with Exhibit A to motion, the court being advised in the premises;

IT IS HEREBY ORDERED:

(1) The motion is granted.

(2) The Clerk of the Circuit Court of Cook County is ordered to replace Exhibit 10 to the Complaint with the Substitute Exhibit 10 instanter.

Atty. No.: 90747

Name: Seyfarth Shaw LLP / J. Beyer          ENTERED:

Atty. for: TT

Address: 131 S. Dearborn St, Ste 2400       Dated: ENTERED

JUDGE WILLIAM O. MAKI-1604

JUL 21 2008

City/State/Zip: Chicago, IL 60603

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Telephone: (312) 460-5000          Judge    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# EXHIBIT I

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|   |   |   |
|---|---|---|
| MOTOROLA, INC. a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CH 25742 |
| v. | ) ) | Hon. William Maki |
| MICHAEL FENGER, an individual, | ) ) | |
| Defendant. | ) ) | |

### NOTICE OF MOTION

TO:    Michael Fenger
       23500 Toyonita Road
       Los Altos Hills, California 94024

    PLEASE NOTE that on the _11_ day of August, 2008 at 9:30 a.m., we shall appear before the Honorable Judge William O. Maki in Room 2302 at the Richard J. Daley Center, Chicago, Illinois 60602, and there and then present **Plaintiff Motorola, Inc.'s Motion for Expedited Discovery**, a true and correct copy of which is attached hereto and hereby served upon you.

                     Respectfully submitted,

                     MOTOROLA, INC.

                     By: _____
                              One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 30, 2008

# EXHIBIT I

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| MOTOROLA, INC.<br>a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 CH 25742 |
| v. | ) | |
| | ) | Hon. William O. Maki |
| MICHAEL FENGER, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR EXPEDITED DISCOVERY AND TO PRESERVE EVIDENCE

Plaintiff, MOTOROLA, INC. ("Motorola"), by and through its attorneys, Seyfarth Shaw, LLP, and, pursuant to Illinois Supreme Court Rule 201(c-e), respectfully requests that this Court enter an order expediting discovery in this matter and preserving all relevant evidence. In support of said Motion, Motorola states as follows:

1.    Motorola filed a Complaint against Defendant Michael Fenger ("Fenger") on July 17, 2008. (A copy of the Complaint is attached as Exhibit "A").

2.    Motorola and Fenger entered into a series of Stock Option Consideration Agreements and Restricted Stock Option Consideration Agreements (the "Agreements") with Motorola from 2002 through October 2006. (Compl. at ¶¶ 19 – 21.) In consideration for continued employment, stock options, restricted stock units, and/or monies, Fenger agreed to agreed to protect Motorola's trade secrets, proprietary information, goodwill, and customer relationships. Fenger further agreed not to compete against Motorola, not to solicit Motorola employees, and not to utilize or disclose Motorola's confidential information. (Id. at ¶ 21.)

3.    During the life of the Agreements and during the course of his employment, Fenger was privy to Motorola's most sensitive trade secrets and confidential information. (Compl. at ¶¶ 14, 24.)

4.      In or around March 2008, Fenger voluntarily resigned his employment from Motorola and Motorola learned that Fenger became employed by Apple Inc. in a similar position as he had served at Motorola.  (Compl. at ¶ 27.)

5.      Apple is a competitor of Motorola.  (Id. at ¶ 28.)

6.      While employed by Motorola, Fenger had day-to-day contact with customers, vendors, and proprietary information.  He was privy to the pricing, margins, customer initiatives, allocation of resources, product development, multi-year product, business, and talent planning, and strategies being utilized by Motorola, which would give Fenger and Apple an unfair advantage in soliciting customers, utilizing vendors, and developing products.  (Id. at ¶ 30.)

7.      On information and belief, Fenger solicited, hired, or aided Apple in the solicitation and hiring of two Motorola employees, who possess Motorola's trade secrets, confidential information, and access to customer relationships.  (Id. at ¶ 34.)

8.      Disclosure of Motorola's trade secrets and proprietary information to Apple would greatly diminish, if not destroy, the value of Motorola's trade secrets and proprietary information.

9.      Accordingly, Motorola, in its Complaint and Motion, requests that this Court enjoin Fenger from disclosing or using Motorola's confidential information and trade secrets, soliciting Motorola's employees, soliciting Motorola's customers, and from interfering with Motorola's ongoing contracts.  (Compl. at Count I.)

10.     A Court may order expedited discovery when trade secrets and confidential information are at immediate risk and irreparable injury to the plaintiff is likely.  *See Buntrock &*

*Gidwitz v. Terra*, 348 Ill. App. 3d 875, 879 (1st Dist. 2004) (trial court ordered expedited discovery).[1]

11.     As is more fully explained in its Complaint, Motorola's trade secrets and confidential information are at immediate risk and irreparable injury to Motorola has occurred as a result of Fenger's continuing violations of the Agreements, signed with Motorola.  Such actions by Fenger not only violate his Agreements with Motorola, but also diminish, if not destroy, the value of Motorola's trade secrets and information and irreparably damage Motorola's work force.  Thus, unless enjoined, Fenger will expose Motorola's confidential and proprietary information, thereby destroying its value.  Accordingly, time is of the essence.

12.     Moreover, in order to present the facts of this case to the Court as completely as possible for purposes of a preliminary injunction, and to discover the full extent of Fenger's unlawful activities and the corresponding damage being done or already done to Motorola, Motorola must conduct certain limited, expedited discovery.  Specifically, Motorola desires to obtain certain documents and things, take Fenger's deposition and the deposition of an Apple representative pursuant to Illinois Supreme Court Rule 206(a)(1), and issue limited third-party

---

[1] Although not controlling in this Court, Rule 26(d) of the Federal Rules of Civil Procedure authorizes courts to order expedited discovery.  Expedited discovery is appropriate in connection with preliminary injunction motions seeking to prevent irreparable injury.  *See Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D. D.C. 1996) ("expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings"); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) (expedited discovery would "better enable the court to judge the parties' interests and respective chances for success on the merits" at a preliminary injunction hearing); *Consumer Sales & Mktg, Inc. v. Digital Equip. Corp.*, 1995 U.S. Dist. LEXIS 13374 (N.D. Ill. Sept. 11, 1995) (extending temporary restraining order and allowing expedited discovery to prepare for preliminary injunction hearing); Advisory Committee Notes to Fed. R. Civ. P. 26(d) ("discovery can begin earlier . . . in some cases, such as those involving requests for a preliminary injunction . . .").

discovery on an expedited basis. (A copy of Motorola's Discovery Requests are attached as Exhibit B.)

13.    If Motorola has to wait to take discovery in the normal course, it will be forced to present its Motion on an incomplete record and suffer irreparable injury while discovery proceeds in the ordinary course and Fenger discloses Motorola's trade secrets and proprietary information. On the other hand, by allowing expedited discovery, the Court will be in a better position to consider Motorola's preliminary injunction and to prevent further damage to Motorola.

14.    Motorola, therefore, requests that this Court enter an Order allowing the taking of depositions on four (4) calendar days' notice and requiring the parties to produce requested documents and respond to all other discovery requests on or within ten (10) calendar days from the date of receipt thereof.

15.    Motorola also seeks an Order requiring Fenger to preserve all evidence in his possession or control relevant to the facts and circumstances alleged in Motorola's Complaint and Motion. An Order preserving evidence will not prejudice Fenger. Rather, such an order will ensure that the Court has all relevant information available to it as it considers Motorola's claims and the damage that Motorola has suffered and continues to suffer as a result of Fenger's conduct.

16.    Thus, Motorola respectfully requests an Order preserving all evidence relevant to the facts and circumstances alleged in its Complaint and/or Motion. This includes, but is not limited to, documents, computer files, ambient computer information, electronic mail messages, contracts, and phone logs.

**WHEREFORE**, Plaintiff, MOTOROLA, INC. respectfully requests that the Court (1) order expedited discovery in this matter and (2) enter an Order stating that Michael Fenger must preserve all evidence relevant to the facts and circumstances alleged in Motorola's Complaint and/or Motion, plus grant Motorola whatever further relief the Court deems necessary and just.

Respectfully submitted,

MOTOROLA, INC.

By _____
One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

DATE: July 30, 2008

EXHIBIT A

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

MOTOROLA, INC.
a Delaware Corporation,

        Plaintiff,

        v.

MICHAEL FENGER, an individual,

        Defendant.

2008 JUL 17 PM 2:58

CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
CHANCERY DIV.

DOROTHY BROWN CLERK

Case No. **08CH25742**

Hon. *William Maki*

## COMPLAINT FOR INJUNCTIVE RELIEF AND OTHER RELIEF

Plaintiff, MOTOROLA, INC. ("Motorola") brings this Complaint against, Defendant

MICHAEL FENGER ("Fenger"), and for its causes of action, states as follows:

### INTRODUCTION

Despite being paid millions of dollars in cash, restricted stock units, and stock options in

exchange for Fenger's simple agreement not to take a position with a competitor during the two

years following his departure from the role as Senior Vice President of Mobile Devices of

Europe, Middle East, and Africa ("EMEA") at Motorola, Fenger willfully and deliberately

violated the reasonable non-compete agreements which he agreed to in writing while employed

by Motorola.   Fenger accepted a position with Apple Inc. ("Apple"), as its Vice President,

Global iPhone Sales, a direct competitor of Motorola.  In his new position, not only will Fenger

be in violation of his numerous written agreements with Motorola, he will also be in a position in

which he cannot perform his duties for Apple without inevitably disclosing Motorola's trade

secrets.   Additionally, on information and belief, in Fenger's new position with Apple, he has

aided Apple, directly or indirectly, in the hiring of two former Motorola employees, both valued,

high-level employees, who are in possession of trade secret information and have access to

Motorola's customer relationships.  Finally, based on the non-compete agreements in his various

stock-option contracts, Motorola is entitled to recoup payments made on vested and executed stock-options contracts. Hence, Motorola seeks injunctive relief to protect its trade secrets, confidential information, and customer relationships, to require Fenger to honor his legally-binding contractual obligations, and to protect Motorola's work force from further poaching.

## NATURE OF ACTION

1.      This is an action for breach of contract and threatened misappropriation of trade secrets. Motorola seeks injunctive relief and other damages.

2.      Fenger, the former Senior Vice President of Mobile Devices of EMEA (as well as other positions putting him in either physical or mental possession of Motorola's trade secrets, confidential information, and customer relationships), is violating and will continue to violate express contractual obligations owed to Motorola, by which he agreed not to accept a competing position with a competitor of Motorola, not to solicit Motorola employees to join a competitor, and to affirmatively maintain the confidentiality of Motorola's proprietary information. In exchange for these obligations, Fenger was employed, paid monies, restricted stock units, and stock options worth million of dollars. Specifically, in violation of his obligations, on or about March 31, 2008, Fenger accepted a position as Vice President, Global iPhone Sales for Motorola's competitor, Apple, and in that position he will inevitably disclose or utilize Motorola's trade secrets and confidential information.

3.      Motorola seeks to enjoin Fenger from rendering services to Motorola's competitor Apple for two years; soliciting or hiring Motorola employees; and from utilizing or disclosing Motorola's confidential information. Additionally, Motorola seeks repayment of stock options paid out and contingent upon Fenger's compliance with his non-compete agreement with Motorola.

2

## PARTIES, JURISDICTION, AND VENUE

4.      Fenger is the former Senior Vice President of Mobile Devices.  Fenger began his

employment with Motorola on or about September 23, 2002 as Corporate Vice President,

Corporate Initiatives Group.  Fenger held a number of executive level positions within Motorola,

all with access to the most confidential and highly sensitive information, including his last

position as Senior Vice President of Mobile Devices for EMEA.  Prior to joining Motorola,

Fenger had no experience in the telecommunications industry.  Upon Fenger being employed by

Motorola, and at numerous points throughout his employment with Motorola, Fenger received

stock options, restricted stock units, and monies worth millions of dollars in exchange for his

agreement that he would not work for a competitor for a specified period of time, that he would

not solicit Motorola employees, and that he would not utilize or disclose Motorola' s confidential

information.  Fenger voluntarily resigned from Motorola on or about March 2008.

5.      Fenger worked for Motorola in its Schaumburg, Cook County, Illinois office, has

and is conducting business in this venue, and entered into certain stock option contracts here.

Moreover, Fenger signed numerous stock-option agreements, pursuant to which he agreed that

venue and jurisdiction is proper and exclusive in Illinois.  On information and belief, Fenger

resides at 23500 Toyonita Road, Los Altos Hills, California, 94024.

6.      Plaintiff, Motorola, is a Delaware corporation with its principal place of business

and world headquarters in Schaumburg, Cook County, Illinois.

7.      Motorola employs numerous employees in Cook County, Illinois and conducts

business in Cook County, Illinois worth millions of dollars each year which is at risk due to

Fenger's actions.

CHI 11491941.1

8.    Motorola is a global communications provider which provides seamless mobility products, solutions and services across broadband, embedded systems, and wireless networks. Motorola consists of four business units including Connected Home Solutions, Government and Enterprise Mobility Solutions, Mobile Devices, and Networks.

## BACKGROUND

9.    For many years, Motorola has been an international leader in communications technology. Motorola's success is derived from many components, but, in particular, Motorola develops proprietary, cutting-edge technology, products, customer initiatives, business strategies, communication solutions and customer-support strategies, along with merger-and-acquisition strategies, which are not publicly known. A critical factor in Motorola's success has been the evolution of its Mobile Devices business.

10.    Motorola's Mobile Devices business delivers capabilities in cellular, wireless broadband, and wireline access technologies. The Mobile Devices business designs, integrates, and markets mobile technology through its communication, data management, and mobile entertainment devices. Motorola designs, manufactures, sells, and services wireless handsets, as well as licensing its vast portfolio of intellectual property. Motorola's devices span all cellular and wireless systems and include integrated software applications as well as a large complement of Bluetooth®-enabled accessories.

11.    Motorola is a leader in customer support and service through the use of a well-trained staff, the use of technology, and the establishment of strong customer relationships.

12.    Motorola has invested millions of dollars to create proprietary designs, solutions, initiatives, and equipment to insure that Motorola can provide cutting-edge technologies and services to its customers.

CHI 11491941.1

13.    Motorola also spends extensive time and millions of dollars toward: identifying and maintaining key customer relationships; designing customer initiatives; identifying vendors; determining strategic mergers, acquisitions, and divestures; allotting resources for new technologies and initiatives; creating multiyear product and business plans called T2 and T3 plans, respectively; identifying and developing leader and talent plans called T1 plans; and identifying resources that should be redirected to more promising initiatives.

14.    In fact, Motorola's key management personnel, which included Fenger, participate extensively in the design and implementation of Motorola's T2 and T3 plans. For example, Motorola's T2 plan identifies product development efforts and launches over a three-year period thereby focusing research and development efforts, marketing initiatives, and customer strategies. The T2 plan is utilized in all Motorola business units, including Mobile Devices. Fenger also participated in and had access to T1 plans identifying talented individuals and leadership development initiatives.

15.    Motorola has purchased through acquisitions and, on its own, developed and maintained valuable, near-permanent relationships and substantial goodwill with its customers.

16.    In order to grow its business and better serve its customers, Motorola has acquired other entities and technology throughout the world to best provide products and services that meets its clients' needs and from which Motorola can derive economic gain.

17.    Motorola's business information, long-standing or near-permanent customer relationships and goodwill are of paramount significance to its business reputation and its success.

## EVENTS GIVING RISE TO THIS ACTION

18.     Fenger joined Motorola on or about September 23, 2002.  Prior to joining

Motorola, Fenger had no experience in the communications industry.  In his role as Corporate

Vice President, Corporate Initiatives, Fenger was a member of Motorola's Senior Leadership

Team and as such attended high-level meetings and was privy to the most sensitive of Motorola

proprietary information.

19.     Upon joining Motorola, Fenger received stock options worth millions of dollars

and was provided access to Motorola's proprietary and confidential information.  In exchange for

employment, receiving the restricted stock units, stock options, and confidential information,

Fenger was required and, in fact, executed a Stock Option Consideration Agreement dated

September 23, 2002 and accepted on October 14, 2002 (hereinafter the "September 23, 2002

Stock Option Consideration Agreement").  A copy of the document is attached as Exhibit 1.

20.     In order to protect Motorola's trade secrets, proprietary information, goodwill,

and customer relationships, pursuant to the September 23, 2002 Stock Option Consideration

Agreement, Fenger agreed for a period of two years following his termination of employment

from Motorola not to engage in any activity as a director, officer, employee, manager or

otherwise, in connection with the manufacture, development, marketing, promotion or sale of

any product or technological development competitive with any products or technological

developments with respect to which Fenger's work was directly concerned during the two years

preceding his termination of employment from Motorola or about which he learned confidential

information.  Fenger also agreed that he would not solicit, induce, or recruit Motorola employees

away from Motorola or disclose Motorola's confidential information.  The September 23, 2002

Stock Option Consideration Agreement also entitles Motorola to injunctive relief and the return

of Motorola's vested and unvested options as well as a portion of the monies received for exercised options.

21.    On eight additional occasions (specifically on May 6, 2003, May 4, 2004, twice on May 3, 2005 (for two separate agreements), May 6, 2006, March 9, 2007, May 8, 2007, and October 16, 2007) and in consideration for continued employment, stock options, restricted stock units, and/or monies, Fenger executed additional stock option agreements. A copy of each is attached as Exhibits 2 through 9, respectively. Based on these various agreements, Fenger agreed to protect Motorola's trade secrets, proprietary information, goodwill, and customer relationships. Fenger further agreed not to compete against Motorola, not to solicit Motorola employees, and not to utilize or disclose Motorola's confidential information. Finally, Fenger agreed to return a portion of monies received for exercised options, if he breached the agreements, agreed to a forfeiture of Motorola's vested and unvested options, and injunctive relief.

22.    On or about September 14, 2002, Fenger also executed an Employment Agreement with Motorola in which he agreed not to disclose confidential information of Motorola. A copy of the Employment Agreement is attached as Exhibit 10. Further, Fenger also executed an acknowledgement that he would abide by Motorola's Code of Conduct, which also required Fenger to maintain the confidentiality of Motorola's proprietary information. A copy of the acknowledgement is attached as Exhibit 11. Finally, Fenger was provided with copies of Motorola's Protection of Proprietary Information policy and Motorola's Appropriate Use of Computer Software policy. Copies of these policies are attached as Exhibit 12.

23.    In or about July 2007 Fenger was promoted to Senior Vice President of Mobile Devises for EMEA of Motorola. In that role, Fenger was a member of the executive team of the

7

Mobile Devices business, he attended high-level meetings at Motorola and was privy to the most sensitive of Motorola proprietary information, especially regarding the Mobile Devices business.

24.     Because Fenger was placed in such a high-level position with access to virtually all of Motorola's confidential information regarding research and development, marketing, strategy, customer contacts, target acquisitions, merger opportunities, possible divestures, allocation of resources, pricing, margins, profitability, customer initiatives, leadership and talent initiatives and other proprietary information, Fenger received even more restricted stock units and stock options. Once again, Fenger promised upon receiving the restricted stock units and options that he would not compete with Motorola for two years, he would not solicit employees for two years and he would not utilize or disclose Motorola's confidential information. Further, the additional agreements also provided for the forfeiture of certain restricted stock units and options upon breaches of the agreements.

25.     Because Fenger had no background in the communications industry, Motorola trained Fenger and provided him access to confidential information about Motorola, its products, research, and strategies. In particular, Fenger attended operation review meetings, technology review meetings, strategic planning meetings, and customer review meetings.

26.     Through numerous restricted stock units and stock option grants, Fenger was made a multi-millionaire in exchange for his simple promise that he would not compete for two years, solicit employees, or utilize or disclose Motorola's confidential information.

27.     In or around March 2008, Fenger voluntarily resigned from Motorola. Following Fenger's resignation, Motorola learned that Fenger had been hired as Apple's Senior Vice President, Global iPhone Sales, a position similar in scope and nature to his position with Motorola.

28.     Like Motorola, Apple also designs, implements, and markets mobile devices. On information and belief, Apple also allocates its resources, responds to market conditions, and makes strategic plans. Apple's website claims it delivers innovative technology solutions encompassing broadband, multimedia services, and wireless broadband.

29.     Fenger will be violating his agreements by working at Apple and he cannot perform his job at Apple without inevitably disclosing or utilizing Motorola's trade secrets and proprietary information. Motorola's trade secrets include: leader identification and talent planning (T1); multi-year product planning (T2); strategic business planning (T3); resource allocation; products under development; strength and weaknesses of products, including switches; intelligent call management; embedded computing technology and push-to-talk technology; customer initiatives; customer relationship strengths and weaknesses; pricing and margins; acquisition targets and divesture plans; and business growth strengths and weaknesses.

30.     While employed by Motorola, Fenger had day-to-day contact with customers, vendors, and proprietary information. He was privy to the pricing, margins, customer initiatives, allocation of resources, product development, multi-year product, business, and talent planning, and strategies being utilized by Motorola, which would give Fenger and Apple an unfair advantage in soliciting customers, utilizing vendors, and developing products.

31.     Motorola's trade secret information is not generally known in the industry and is valuable because Motorola derives economic value from the information in part because such information is not publicly available. Motorola's trade secret business and customer information is of great value to Motorola and such information would give any competitor, who improperly acquired such information, an unfair competitive advantage by: not expending the time and resources to develop the trade secret information as Motorola has done; quickly developing

9

products and technologies to unfairly compete with Motorola in order to diminish Motorola's head start; and even alerting a competitor as to initiatives that should not be pursued; and other improper advantages.

32.    Motorola protects its trade secret business and customer information by requiring employees to keep confidential business and customer information, by password protecting computers, by limiting access to information, by requiring employees to sign confidentiality agreements, and by requiring employees to sign an acknowledgement requiring employees to review and abide by its Code of Conduct.

33.    Motorola's customer relationships and goodwill are of paramount importance to Motorola in that many of Motorola's customers have been customers of Motorola for quite some time and are near permanent.  Moreover, in a number of instances, Motorola's customers entrust Motorola with confidential information and require Motorola to enter into confidentiality agreements as well.

34.    Moreover, on information and belief, Fenger solicited, hired, or aided Apple in the solicitation and hiring of two Motorola employees, who possess Motorola's trade secrets, confidential information, and access to customer relationships.

35.    Fenger's actions are a serious threat to Motorola's business, are in violation of contractual obligations and applicable law, and unjustly enrich Fenger.

36.    Motorola has no adequate remedy at law to fully protect it.  If Fenger's actions go unchecked, he will necessarily diminish the value of Motorola's trade secret and confidential information, deplete Motorola's work force, diminish its goodwill, negatively impact customer

CHI 11491941.1

relationships, give Apple a strategic advantage as to where to allocate or not allocate resources, and exploit the knowledge of Motorola's product strengths and weaknesses.

## COUNT I

### BREACH OF CONTRACT

37.     Motorola hereby repeats, realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 36.

38.     Fenger's agreements are valid and enforceable contracts.  The post-employment activity covenants, confidentiality covenants, and other provisions contained in the agreements are reasonable in scope and duration and are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work force, and goodwill.

39.     Motorola has fully performed all of its obligations under the Agreements.

40.     Fenger is breaching or threatens to breach at least one of his agreements in at least one of the following ways by:

    A.     accepting his position with Apple;

    B.     on information and belief, directly or indirectly soliciting, selling to, or rendering services to customers of Motorola with whom he worked or learned confidential information about during the two years prior to termination of employment at Motorola;

    C.     on information and belief, diverting customers from Motorola;

    D.     on information and belief, directly or indirectly, hiring, soliciting, or inducing employees of Motorola to leave Motorola's employ on Apple's behalf;

    E.     on information and belief, disclosing or utilizing Motorola's confidential and proprietary information; or

CHI 11491941.1

F.    failing to return to Motorola restricted stock units, stock options and/or monies.

41.    As a result of any one of these breaches of his agreements, Motorola has been injured and faces irreparable injury.  Motorola is threatened with losing customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, and its work force unless Fenger is enjoined and restrained by order of this Court.

## COUNT II

### THREATENED MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

42.    Motorola hereby repeats and realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 36.

43.    The proprietary business and customer information of Motorola constitutes trade secrets because Motorola derives independent economic value from that information, such information is neither generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

44.    Fenger has actually misappropriated and/or threatens to inevitably misappropriate Motorola's trade secrets without Motorola's consent in violation of the Illinois Trade Secrets Act. 765 ILCS 1065 *et seq.*  Fenger cannot serve as Senior Vice President of Global Sales of IPhone for Apple without utilizing and disclosing Motorola's confidential information.  This is especially true because Fenger had no prior knowledge of or training regarding the communications industry before joining Motorola.  Fenger cannot separate out Motorola's trade secrets from his daily duties at Apple.

CH1 11491941.1

45.    Fenger has become employed by Apple or will serve functions at Apple similar to his previous roles at Motorola and, thus, will inevitably utilize or disclose Motorola's trade secrets and/or confidential information.

46.    Fenger will be unjustly enriched by the misappropriation of Motorola's trade secrets and/or confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire, and/or otherwise misappropriate Motorola's trade secrets and confidential information.

47.    Upon information and belief, Fenger's threatened misappropriation has been willful and malicious in light of his repeated execution of contracts prohibiting his current conduct and his deliberate violation of the contractual obligations.

48.    As a result of the threatened misappropriation of Motorola's trade secrets, Motorola has been injured and faces irreparable injury.  Motorola is threatened with losing customers, technology, its competitive advantage, its trade secrets and goodwill in amounts which may be impossible to determine, and work force unless Fenger is enjoined and restrained by order of this Court, as alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Motorola prays for the following relief:

A.    That Fenger, along with his respective agents, employers, employees, attorneys, and those persons in active concert or participation with him, be enjoined from:

    1.    directly or indirectly being employed by Apple Inc. as its Senior Vice President for Global Sales of iPhones for two years beginning March 31, 2008;

    2.    directly or indirectly contacting or selling products or technology competitive with Motorola's products or technology to any customer of

Motorola for two years beginning March 31, 2008 with whom Fenger worked or learned confidential information about during the two years preceding March 31, 2008;

3. directly or indirectly disclosing or utilizing Motorola's confidential and proprietary information; and

4. directly or indirectly soliciting, hiring, or seeking to cause any employee of Motorola to leave its employ or aiding, in any manner, any company or group from soliciting, hiring, or seeking to cause any employee of Motorola to leave its employ;

B. That Motorola be awarded compensatory damages it has suffered, in an amount to be proven at trial and in excess of $50,000;

C. That Fenger be ordered to return to Motorola all monies due Motorola as a result of Fenger violating his Stock Option Consideration Agreements, and other agreements, including, but not limited to, a figure in excess of $1,000,000.00 and additional amounts to be determined at trial;

D. That Motorola be awarded exemplary damages as provided for by statute for willful and malicious conduct;

E. That Motorola be awarded attorney's fees and the costs of this action as permitted by law; and

F. That Motorola be awarded such other and further relief as the Court deems equitable and just.

Respectfully submitted,

MOTOROLA, INC.

By: _____
One of Its Attorneys

14

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 17, 2008

R3 Award Document

**How to use this document**

The first thing you will see on this website is your Option Award Document. This shows the date you were notified at the top of the first page and describes most of the terms under which the options are granted. It is important to read the Award Document carefully, though it is not necessary that you sign it.

From the Award Document you will scroll down to the Stock Option Consideration Agreement ("SOCA"). Please read the SOCA carefully to help you decide whether you wish to accept its terms to receive the Option Award. After reviewing the SOCA, you are required to "sign" the SOCA as a condition of the grant. In other words, the options will not become yours unless you sign the SOCA within 30 days of the date of your email notification for this option grant.

At the bottom of the SOCA, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the SOCA will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," all the terms of the SOCA will apply and the SOCA will be a binding contract between you and Motorola. If you "Reject," the options will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this option grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the options permanently.

If you "Accept" the SOCA and thus receive the options, you will be able to view both the Award Document and the signed SOCA on the website in the future. Even so, we strongly recommend that that you print out a hard copy of the Award Document and the accepted SOCA for your records. If you "Reject" the SOCA or do nothing and thus forfeit the options, on the 31st day of the date of your email notification you will lose the ability to access any information on the website regarding these options. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

**Exhibit 1**


R3 Award Document

# MOTOROLA, INC.
# AWARD DOCUMENT
### For the
### COMPENSATION/ACQUISITION PLAN OF 2000
## Terms and Conditions Related to Employee Nonqualified Stock Options
### Award ID: 370629

| Name : | Michael Fenger | Expiration Date : | September 23, 2012 |
|---|---|---|---|
| Commerce ID : | 12028663 | Number of Options : | 125,000 |
| Grant Date : | September 23, 2002 | Exercise Price : | $ 10.48 (USD) |

Motorola, Inc. ("Motorola") is pleased to grant you options to purchase shares of Motorola's common stock under the Motorola Compensation/Acquisition Plan of 2000 (the "Plan"). The number of options ("Options") awarded to you and the Exercise Price per Option, which is the Fair Market Value on the Date of Grant, are stated above. Each Option entitles you to purchase one share of Motorola's common stock on the terms described below and in the Plan.

## Vesting Schedule

| Percentage | Date |
|---|---|
| 10.00 | September 23, 2003 |
| 20.00 | September 23, 2004 |
| 30.00 | September 23, 2005 |
| 40.00 | September 23, 2006 |

**Vesting and Exercisability**

You cannot exercise the Options until they have vested.

*Regular Vesting* The Options will vest in accordance with the aforementioned schedule (subject to the other terms hereof):

*Special Vesting* You may be subject to the Special Vesting Dates described below if your employment or service with Motorola or a Subsidiary (as defined below) terminates.

*Exercisability* You may exercise Options at any time after they vest and before they expire as described below.

**Expiration**

All Options expire on the earlier of

*(1)* the tenth anniversary of the Date of Grant as stated above or

*(2)* any of the Special Expiration Dates described below. Once an Option expires, you no longer have the right to exercise it.

**Special Vesting Dates and Special Expiration Dates**

There are events that cause your Options to vest sooner than the schedule discussed above or to expire sooner than the tenth anniversary of the Date of Grant. Those events are as follows:

Motorola Confidential Proprietary

(End of page 1 of the Award Document)

R3 Award Document                                        Page 3 of 8

*Retirement* If your employment or service with Motorola or a Subsidiary is ended because of your Retirement, Options that were granted at least one year prior to your Retirement that are not vested will automatically become fully vested upon your Retirement. Any remaining unvested Options will be forfeited. All your vested Options will then expire on the earlier of the third anniversary of ending your employment or service because of your Retirement or the Date of Expiration stated above. Retirement means your retirement from Motorola or a Subsidiary as follows:

*(i)* Retiring at or after age 55 with 20 years of service;

*(ii)* Retiring at or after age 60 with 10 years of service;

*(iii)* Retiring at or after age 65, without regard to years of service.

*Disability* If your employment or service with Motorola or a Subsidiary is terminated because of your Total and Permanent Disability (as defined below), Options that are not vested will automatically become fully vested upon your termination of employment or service. All your Options will then expire on the earlier of the third anniversary of your termination of employment or service because of your Total and Permanent Disability or the Date of Expiration stated above. Until that time, the Options will be exercisable by you or your guardian or legal representative.

*Death* If your employment or service with Motorola or a Subsidiary is terminated because of your death, Options that are not vested will automatically become fully vested upon your death. All your Options will then expire on the earlier of the third anniversary of your death or the Date of Expiration stated above. Until that time, with written proof of death and inheritance, the Options will be exercisable by your legal representative, legatees or distributees.

*Change In Control* If there is a Change In Control of Motorola (as defined in the Plan), all the unvested Options will automatically become fully vested as described in the Plan. If Motorola or a Subsidiary terminates your employment or service other than for Serious Misconduct within two years of consummation of a Change In Control, all of your vested Options will be exercisable until the Date of Expiration.

*Termination of Employment or Service Because of Serious Misconduct* If Motorola or a Subsidiary terminates your employment or service because of Serious Misconduct (as defined below) all of your Options (vested and unvested) expire upon your termination.

*Change in Employment in Connection with a Divestiture* If you accept employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfers of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary (a "Divestiture"), all of your unvested Options will automatically expire upon termination in direct connection with a Divestiture and your vested Options will expire 12 months after such Divestiture or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service by Motorola or a Subsidiary Other than for Serious Misconduct or a Divestiture* If Motorola or a Subsidiary on its initiative, terminates your employment or service other than for Serious Misconduct or a Divestiture, all of your unvested Options will automatically expire upon termination and your vested Options will expire twelve months after your termination of employment or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service for any Other Reason than Described Above* If your employment or service with Motorola or a Subsidiary terminates for any reason other than that described above, including voluntary resignation of your employment or service, all of your Options (vested and unvested) will automatically expire on the date of termination.

### Leave of Absence/Temporary Layoff

If you take a Leave of Absence from Motorola or a Subsidiary that your employer has approved in writing in accordance with your employer's Leave of Absence Policy and which does not constitute a termination of employment as determined by Motorola, or you are placed on Temporary Layoff (as defined below) by Motorola or a Subsidiary the following will apply:

*Vesting of Options* Options will continue to vest in accordance with the vesting schedule set forth above.

*Exercising Options* You may exercise Options that are vested or that vest during the leave of absence or layoff.

R3 Award Document

*Effect of Termination of Employment or Service* If your employment or service is terminated during the Leave of Absence or Temporary Layoff, the treatment of your Options will be determined as described under "Special Vesting Dates and Special Expiration Dates" above.

### Other Terms

*Method of Exercising* You must follow the procedures for exercising options established by Motorola from time to time. At the time of exercise, you must pay the Exercise Price for all of the Options being exercised and any taxes that are required to be withheld by Motorola or a Subsidiary in connection with the exercise. Options may not be exercised for less than 50 shares unless the number of shares represented by the Option is less than 50 shares, in which case the Option must be exercised for the remaining amount.

*Transferability* Unless the Committee provides, Options are not transferable other than by will or the laws of descent and distribution.

*Tax Withholding* Motorola or a Subsidiary is entitled to withhold an amount equal to the required minimum statutory withholding taxes for the respective tax jurisdictions attributable to any share of common stock deliverable in connection with the exercise of the Options. Employee may satisfy any withholding obligation in whole or in part by electing to have Motorola retain Option shares having a Fair Market Value on the date of exercise equal to the minimum amount required to be withheld.

### Definition of Terms

If a term is used but not defined, it has the meaning given such term in the Plan.

*Fair Market Value* is the closing price for a share of Motorola common stock on the last trading day before the grant. The official source for the closing price is the New York Stock Exchange Composite Transaction as reported in the Wall Street Journal, Midwest edition.

*Serious Misconduct* means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

*Subsidiary* means an entity of which Motorola owns directly or indirectly at least 50% and that Motorola consolidates for financial reporting purposes.

*Total and Permanent Disability* means for (x) U.S. employees, entitlement to long-term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations.

*Temporary Layoff* means a layoff or redundancy that is communicated as being for a period of up to twelve months and as including a right to recall under defined circumstances.

### Consent to Transfer Personal Data

By accepting this award, you voluntarily acknowledge and consent to the collection, use, processing and transfer of personal data as described in this paragraph. You are not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect your ability to participate in the Plan. Motorola, its Subsidiaries and your employer hold certain personal information about you, that may include your name, home address and telephone number, date of birth, social security number or other employee identification number, salary, nationality, job title, any shares of stock held in Motorola, or details of all options or any other entitlement to shares of stock awarded, canceled, purchased, vested, unvested or outstanding in your favor, for the purpose of managing and administering the Plan ("Data").

Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of your participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, such as the United States. You authorize them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing your participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on your behalf to a broker or other third party with whom you may elect to deposit any shares of stock acquired pursuant to the Plan. You may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing your consent may affect your ability to participate in the Plan.

(End of page 3 of the Award Document)

### Acknowledgement of Discretionary Nature of the Plan; No Vested Rights

You acknowledge and agree that the Plan is discretionary in nature and limited in duration, and may be amended, cancelled, or terminated by Motorola or a Subsidiary, in its sole discretion, at any time. The grant of awards under the Plan is a one-time benefit and does not create any contractual or other right to receive an award in the future. Future grants, if any, will be at the sole discretion of Motorola, including, but not limited to, the timing of any grant, the amount of the award, vesting provisions, and the exercise price.

### Agreement Following Termination of Employment

As a further condition of accepting the Options, you acknowledge and agree that for a period of two years following your termination of employment or service, you will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of Motorola or a Subsidiary to terminate his/her employment with Motorola or a Subsidiary and/or to seek employment with your new or prospective employer, or any other company.

You agree that upon termination of employment with Motorola or a Subsidiary, you will immediately inform Motorola of

*(i)* the identity of your new employer (or the nature of any start-up business or self-employment),

*(ii)* your new title, and

*(iii)* your job duties and responsibilities.

You hereby authorize Motorola or a Subsidiary to provide a copy of this Award Document to your new employer. You further agree to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine your compliance with the terms hereof.

### Acceptance of Terms and Conditions

By accepting the Options, you agree to be bound by these terms and conditions, the Plan and any and all rules and regulations established by Motorola in connection with awards issued under the Plan.

### Other Information about Your Options and the Plan

You can find other information about options and the Plan on the Motorola website http://hr2.mot.com/stockadmin. If you do not have access to the website, please complete the order form included with these Terms and Conditions to receive the information.

R3 Award Document                                                                          Page 6 of 8



Printed: March 12, 2008

# STOCK OPTION CONSIDERATION AGREEMENT

**Grant Date: September 23, 2002**

The following Agreement is established to protect the trade secrets, intellectual property, confidential information, customer relationships and goodwill of Motorola, Inc. and each of its subsidiaries (the "Company") both as defined in the Motorola Omnibus Incentive Plan of 2000, as amended (the "2000 Plan").

As sole consideration for the stock option(s) granted to me on the date shown above under the terms of the 2000 Plan, the Motorola Incentive Plan of 1998 (the "1998 Plan"), the Motorola Compensation/Acquisition Plan of 2000 (the "C/A Plan") [or the Motorola Omnibus Incentive Plan of 2002 (the "2002 Plan")], as the case may be ("the Covered Options"), and as a person with a salary grade of EXB and/or as a Motorola appointed vice president or elected officer, I agree to the following:

(1)  I agree that during the course of my employment and thereafter, I will not use or disclose, except on behalf of the Company and pursuant to its directions during the course of my employment, any Company Confidential Information. Confidential Information means information concerning the Company and its business that is not generally known outside the Company. Confidential Information includes: (i) trade secrets; (ii) intellectual property; (iii) the Company's methods of operation and Company processes; (iv) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (v) information on customers or potential customers, including customer's names, sales records, prices, and other terms of sales and Company cost information; (vi) Company personnel data; (vii) Company business plans, marketing plans, financial data and projections; and (viii) information received in confidence by the Company from third parties. Information regarding products or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall not be deemed generally known until such broader use is actually commercially implemented.

(2)  I acknowledge and agree that for a period of two years following my termination of employment, I will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company to terminate his/her employment with the Company and/or to seek employment with my new or prospective employer, or any other company.

(3)  I understand that by accepting the Covered Options, (i) if I violate the terms of paragraphs 1 or 2 of this Agreement, or (ii) if during a period of two years following the termination of my employment for any reason I engage in activities which are the same as or similar to activities in which I engaged at any time during the two years preceding termination of my employment, for any person, company or entity in connection with products, services or technological developments (existing or planned) that are the same as, similar to, or competitive with, any products, services or technological developments (existing or planned) on which I worked at any time during the two years preceding the termination of my employment, then:

(a)  all of my vested and unvested Covered Options will terminate and no longer be exercisable; and

(b)  for all Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment, I will immediately pay to the Company the difference between the option price and the market price of the Company's common stock on the date of exercise (the "spread").

Paragraph 3(ii) applies in the countries in or for which I have performed work at any time during the two years preceding termination of my employment.

(4)  The requirements of this agreement can be waived or modified only upon the prior written consent of Motorola, Inc. I acknowledge that the promises in this Agreement, not any employment of or services performed by me in the course and scope of that employment, are the sole consideration for the Covered Options.

(5)  I agree that upon termination of employment with the Company and for a period of two years thereafter, I will immediately inform the Company of (i) the identity of my new employer (or the nature of any start-up business, consulting arrangements or self-employment), (ii) my new title, and (iii) my job duties and responsibilities. I hereby authorize the Company to provide a copy of this Agreement to my new employer. I further agree to provide information to the Company as may from time to time be requested in order to determine my compliance with the terms of this Agreement.

(6)  I acknowledge that the harm caused to the Company by the breach or anticipated breach of paragraphs 1 and/or 2 of this Agreement may be irreparable and I agree the Company may have injunctive relief against me in addition to and cumulative with any other rights and remedies the Company may have pursuant to this Agreement, any other agreements between me and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. I agree that any interim or final equitable relief entered by a court of competent jurisdiction will, at the request of the Company, be entered on and enforced by any court having jurisdiction over me. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

(7)  If any provisions contained in this Agreement shall be determined by a court of competent jurisdiction to be overly broad as to scope of activity, duration or territory, I consent to any request by the Company to such court to interpret

such provision by limiting or reducing it to be enforceable to the extent compatible with then applicable law. If any one or more of the terms, provisions, covenants or restrictions of this Agreement are determined by a court of competent jurisdiction to be invalid, void or unenforceable, then the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. However, and without regard to the foregoing, if paragraphs 1, 2 and 3 herein, or either of them, is not enforceable or otherwise invalid, the consideration I am providing Motorola for the Covered Options would fail. I agree that all of my Covered Options will terminate and that, I will pay Motorola the spread on any Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment.

(8)    I accept the terms of this Agreement and the above option(s) to purchase shares of the Common Stock of the Company, subject to the terms of this Agreement, the 1998 Plan, the 2000 Plan, the C/A Plan [or the 2002 Plan], as the case may be, and any Award Document issued pursuant to one of those Plans. I am familiar with the 1998 Plan, the 2000 Plan, the C/A Plan [or the 2002 Plan] and agree to be bound by it, the actions of the Compensation Committee and the actions of the Company's Board of Directors.

(9)    I agree that this Agreement and the 1998 Plan, the 2000 Plan, the C/A Plan [or the 2002 Plan], as the case may be, and any Award Document issued pursuant to one of those Plans, together constitute an agreement between the Company and me. I further agree that this Agreement is governed by the laws of Illinois, without giving effect to principles of Conflicts of Laws, and any legal action related to this Agreement shall be brought in any federal or state court located in Illinois, USA.

I accept the jurisdiction of these courts and consent to service of process from said courts solely for legal actions related to this Agreement and stock option(s) offer.

(End of the Consideration Agreement)

**The recipient has accepted the terms of the Agreement on October 14, 2002**

R3 Award Document

**How to use this document**

The first thing you will see on this website is your Option Award Document. This shows the date you were notified at the top of the first page and describes most of the terms under which the options are granted. It is important to read the Award Document carefully, though it is not necessary that you sign it.

From the Award Document you will scroll down to the Stock Option Consideration Agreement ("SOCA"). Please read the SOCA carefully to help you decide whether you wish to accept its terms to receive the Option Award. After reviewing the SOCA, you are required to "sign" the SOCA as a condition of the grant. In other words, the options will not become yours unless you sign the SOCA within 30 days of the date of your email notification for this option grant.

At the bottom of the SOCA, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the SOCA will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," all the terms of the SOCA will apply and the SOCA will be a binding contract between you and Motorola. If you "Reject," the options will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this option grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the options permanently.

If you "Accept" the SOCA and thus receive the options, you will be able to view both the Award Document and the signed SOCA on the website in the future. Even so, we strongly recommend that that you print out a hard copy of the Award Document and the accepted SOCA for your records. If you "Reject" the SOCA or do nothing and thus forfeit the options, on the 31st day of the date of your email notification you will lose the ability to access any information on the website regarding these options. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

## MOTOROLA, INC.
## AWARD DOCUMENT
### For the
### Motorola Omnibus Incentive Plan of 2000
### Terms and Conditions Related to Employee Nonqualified Stock Options
### Award ID: 482214

| | | | |
|---|---|---|---|
| Name : | Michael Fenger | Expiration Date : | May 06, 2013 |
| Commerce ID : | 12028663 | Number of Options : | 100,000 |
| Grant Date : | May 06, 2003 | Exercise Price : | $ 8.13 (USD) |

Motorola, Inc. ("Motorola") is pleased to grant you options to purchase shares of Motorola's common stock under the Motorola Omnibus Incentive Plan of 2000 (the "Plan"). The number of options ("Options") awarded to you and the Exercise Price per Option, which is the Fair Market Value on the Date of Grant, are stated above. Each Option entitles you to purchase one share of Motorola's common stock on the terms described below and in the Plan.

## Vesting Schedule

| Percentage | Date |
|---|---|
| 25.00 | May 06, 2004 |
| 25.00 | May 06, 2005 |
| 25.00 | May 06, 2006 |
| 25.00 | May 06, 2007 |

### Vesting and Exercisability

You cannot exercise the Options until they have vested.

*Regular Vesting* The Options will vest in accordance with the aforementioned schedule (subject to the other terms hereof).

*Special Vesting* You may be subject to the Special Vesting Dates described below if your employment or service with Motorola or a Subsidiary (as defined below) terminates.

*Exercisability* You may exercise Options at any time after they vest and before they expire as described below.

### Expiration

All Options expire on the earlier of (1) the Date of Expiration as stated above or (2) any of the Special Expiration Dates described below. Once an Option expires, you no longer have the right to exercise it.

### Special Vesting Dates and Special Expiration Dates

There are events that cause your Options to vest sooner than the schedule discussed above or to expire sooner than the Date of Expiration as stated above. Those events are as follows:

*Retirement* If your employment or service with Motorola or a Subsidiary is ended because of your Retirement, Options that were granted at least one year prior to your Retirement that are not vested will automatically become fully vested upon your Retirement. Any remaining unvested Options will be forfeited. All your vested Options will then expire on the earlier of the third anniversary of ending your employment or service because of your Retirement or the Date of Expiration stated above. Retirement means (only for purposes of this Option) your retirement from Motorola or a Subsidiary as follows:

*(i)* Retiring at or after age 55 with 20 years of service;

*(ii)* Retiring at or after age 60 with 10 years of service;

*(iii)* Retiring at or after age 65, without regard to years of service.

*Disability* If your employment or service with Motorola or a Subsidiary is terminated because of your Total and Permanent Disability (as defined below), Options that are not vested will automatically become fully vested upon your termination of employment or service. All your Options will then expire on the earlier of the third anniversary of your

Motorola Confidential Proprietary

(End of page 1 of the Award Document)

termination of employment or service because of your Total and Permanent Disability or the Date of Expiration stated above. Until that time, the Options will be exercisable by you or your guardian or legal representative.

*Death* If your employment or service with Motorola or a Subsidiary is terminated because of your death, Options that are not vested will automatically become fully vested upon your death. All your Options will then expire on the earlier of the third anniversary of your death or the Date of Expiration stated above. Until that time, with written proof of death and inheritance, the Options will be exercisable by your legal representative, legatees or distributees.

*Change In Control* If there is a Change In Control of Motorola (as defined in the Plan), all the unvested Options will automatically become fully vested as described in the Plan. If Motorola or a Subsidiary terminates your employment or service other than for Serious Misconduct within two years of consummation of a Change In Control, all of your vested Options will be exercisable until the Date of Expiration stated above.

*Termination of Employment or Service Because of Serious Misconduct* If Motorola or a Subsidiary terminates your employment or service because of Serious Misconduct (as defined below) all of your Options (vested and unvested) expire upon your termination.

*Change in Employment in Connection with a Divestiture* If you accept employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary (a "Divestiture"), all of your unvested Options will automatically expire upon termination in direct connection with a Divestiture and your vested Options will expire 12 months after such Divestiture or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service by Motorola or a Subsidiary Other than for Serious Misconduct or a Divestiture* If Motorola or a Subsidiary on its initiative, terminates your employment or service other than for Serious Misconduct or a Divestiture, all of your unvested Options will automatically expire upon termination and your vested Options will expire twelve months after your termination of employment or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service for any Other Reason than Described Above* If your employment or service with Motorola or a Subsidiary terminates for any reason other than that described above, including voluntary resignation of your employment or service, all of your Options (vested and unvested) will automatically expire on the date of termination.

### Leave of Absence/Temporary Layoff

If you take a Leave of Absence from Motorola or a Subsidiary that your employer has approved in writing in accordance with your employer's Leave of Absence Policy and which does not constitute a termination of employment as determined by Motorola, or you are placed on Temporary Layoff (as defined below) by Motorola or a Subsidiary the following will apply:

*Vesting of Options* Options will continue to vest in accordance with the vesting schedule set forth above.

*Exercising Options* You may exercise Options that are vested or that vest during the leave of absence or layoff.

*Effect of Termination of Employment or Service* If your employment or service is terminated during the Leave of Absence or Temporary Layoff, the treatment of your Options will be determined as described under "Special Vesting Dates and Special Expiration Dates" above.

### Other Terms

Method of Exercising You must follow the procedures for exercising options established by Motorola from time to time. At the time of exercise, you must pay the Exercise Price for all of the Options being exercised and any taxes that are required to be withheld by Motorola or a Subsidiary in connection with the exercise. Options may not be exercised for less than 50 shares unless the number of shares represented by the Option is less than 50 shares, in which case the Option must be exercised for the remaining amount.

Transferability Unless the Committee provides, Options are not transferable other than by will or the laws of descent and distribution.

Tax Withholding Motorola or a Subsidiary is entitled to withhold an amount equal to the required minimum statutory withholding taxes for the respective tax jurisdictions attributable to any share of common stock deliverable in connection with the exercise of the Options. You may satisfy any withholding obligation in whole or in part by electing

to have Motorola retain Option shares having a Fair Market Value on the date of exercise equal to the minimum amount required to be withheld.

### Definition of Terms

If a term is used but not defined, it has the meaning given such term in the Plan.

"Fair Market Value" is the closing price for a share of Motorola common stock on the last trading day before the date of grant or date of exercise, whichever is applicable. The official source for the closing price is the New York Stock Exchange Composite Transaction as reported in the Wall Street Journal, Midwest edition.

"Serious Misconduct" means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

"Subsidiary" means an entity of which Motorola owns directly or indirectly at least 50% and that Motorola consolidates for financial reporting purposes.

"Total and Permanent Disability" means for (x) U.S. employees, entitlement to long-term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations.

"Temporary Layoff" means a layoff or redundancy that is communicated as being for a period of up to twelve months and as including a right to recall under defined circumstances.

### Consent to Transfer Personal Data

By accepting this award, you voluntarily acknowledge and consent to the collection, use, processing and transfer of personal data as described in this paragraph. You are not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect your ability to participate in the Plan. Motorola, its Subsidiaries and your employer hold certain personal information about you, that may include your name, home address and telephone number, date of birth, social security number or other employee identification number, salary, nationality, job title, any shares of stock held in Motorola, or details of all options or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data"). Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of

implementation, administration and management of your participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. You authorize them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing your participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on your behalf to a broker or other third party with whom you may elect to deposit any shares of stock acquired pursuant to the Plan. You may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing your consent may affect your ability to participate in the Plan.

### Acknowledgement of Discretionary Nature of the Plan; No Vested Rights

You acknowledge and agree that the Plan is discretionary in nature and limited in duration, and may be amended, cancelled, or terminated by Motorola or a Subsidiary, in its sole discretion, at any time. The grant of awards under the Plan is a one-time benefit and does not create any contractual or other right to receive an award in the future. Future grants, if any, will be at the sole discretion of Motorola, including, but not limited to, the timing of any grant, the amount of the award, vesting provisions, and the exercise price.

### Agreement Following Termination of Employment

As a further condition of accepting the Options, you acknowledge and agree that for a period of two years following your termination of employment or service, you will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of Motorola or a Subsidiary to terminate his/her employment with Motorola or a Subsidiary and/or to seek employment with your new or prospective employer, or any other company.

You agree that upon termination of employment with Motorola or a Subsidiary, you will immediately inform Motorola of (i) the identity of your new employer (or the nature of any start-up business or self-employment), (ii) your new title, and (iii) your job duties and responsibilities. You hereby authorize

Motorola or a Subsidiary to provide a copy of this Award Document to your new employer. You further agree to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine your compliance with the terms hereof.

### Substitute Stock Appreciation Right

Motorola reserves the right to substitute a Stock Appreciation Right for your Option in the event certain changes are made in the accounting treatment of stock options. Any substitute Stock Appreciation Right shall be applicable to the same number of shares as your Option and shall have the same Date of Expiration, Exercise Price, and other terms and conditions. Any substitute Stock Appreciation Right may be settled only in Common Stock.

### Acceptance of Terms and Conditions

By accepting the Options, you agree to be bound by these terms and conditions, the Plan and any and all rules and regulations established by Motorola in connection with awards issued under the Plan.

### Other Information about Your Options and the Plan

You can find other information about options and the Plan on the Motorola website http://myhr.mot.com/finances/stock_options/index.jsp If you do not have access to the website, please contact Motorola Global Rewards, 1303 E. Algonquin Road, Schaumburg, IL 60196 USA; GBLRW01@Motorola.com; 847-576-7885; for an order form to request Plan documents.

Motorola Confidential Proprietary

(End of page 4 of the Award Document)

R3 Award Document                                                    Page 6 of 8

[x] Motorola, Inc.

Printed: March 12, 2008

## STOCK OPTION CONSIDERATION AGREEMENT

**Grant Date: May 06, 2003**

The following Agreement is established to protect the trade secrets, intellectual property, confidential information, customer relationships and goodwill of Motorola, Inc. and each of its subsidiaries (the "Company") both as defined in the Motorola Omnibus Incentive Plan of 2000, as amended (the "2000 Plan").

As sole consideration for the stock option(s) granted to me on the date shown above under the terms of the 2000 Plan, the Amended and Restated Motorola Incentive Plan of 1998 (the "1998 Plan"), the Motorola Compensation/Acquisition Plan of 2000 (the "C/A Plan"), the Motorola Omnibus Incentive Plan of 2002 (the "2002 Plan") or the Motorola Omnibus Incentive Plan of 2003 (the "2003 Plan"), as the case may be ("the Covered Options"), and as a person with a salary grade of EXB and/or as a Motorola appointed vice president or elected officer, I agree to the following:

(1)    I agree that during the course of my employment and thereafter, I will not use or disclose, except on behalf of the Company and pursuant to its directions during the course of my employment, any Company Confidential Information. Confidential Information means information concerning the Company and its business that is not generally known outside the Company. Confidential Information includes: (i) trade secrets; (ii) intellectual property; (iii) the Company's methods of operation and Company processes; (iv) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (v) information on customers or potential customers, including customer's names, sales records, prices, and other terms of sales and Company cost information; (vi) Company personnel data; (vii) Company business plans, marketing plans, financial data and projections; and (viii) information received in confidence by the Company from third parties. Information regarding products or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall not be deemed generally known until such broader use is actually commercially implemented.

(2)    I acknowledge and agree that for a period of two years following my termination of employment, I will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company to terminate his/her employment with the Company and/or to seek employment with my new or prospective employer, or any other company.

(3)    I understand that by accepting the Covered Options, (i) if I violate the terms of paragraphs 1 or 2 of this Agreement, or (ii) if during a period of two years following the termination of my employment for any reason I engage in activities which are the same as or similar to activities in which I engaged at any time during the two years preceding termination of my employment, for any person, company or entity in connection with products, services or technological developments (existing or planned) that are the same as, similar to, or competitive with, any products, services or technological developments (existing or planned) on which I worked at any time during the two years preceding the termination of my employment, then:

(a)    all of my vested and unvested Covered Options will terminate and no longer be exercisable; and

(b)    for all Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment, I will immediately pay to the Company the difference between the option price and the market price of the Company's common stock on the date of exercise (the "spread").

Paragraph 3(ii) applies in the countries in or for which I have performed work at any time during the two years preceding termination of my employment.

(4)    The requirements of this agreement can be waived or modified only upon the prior written consent of Motorola, Inc. I acknowledge that the promises in this Agreement, not any employment of or services performed by me in the course and scope of that employment, are the sole consideration for the Covered Options.

(5)    I agree that upon termination of employment with the Company and for a period of two years thereafter, I will immediately inform the Company of (i) the identity of my new employer (or the nature of any start-up business, consulting arrangements or self-employment), (ii) my new title, and (iii) my job duties and responsibilities. I hereby authorize the Company to provide a copy of this Agreement to my new employer. I further agree to provide information to the Company as may from time to time be requested in order to determine my compliance with the terms of this Agreement.

(6)    I acknowledge that the harm caused to the Company by the breach or anticipated breach of paragraphs 1 and/or 2 of this Agreement may be irreparable and I agree the Company may have injunctive relief against me in addition to and cumulative with any other rights and remedies the Company may have pursuant to this Agreement, any other agreements between me and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. I agree that any interim or final equitable relief entered by a court of competent jurisdiction will, at the request of the Company, be entered on consent and enforced by any court having jurisdiction over me. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

(7)    If any provisions contained in this Agreement shall be determined by a court of competent jurisdiction to be overly

broad as to scope of activity, duration or territory, I consent to any request by the Company to such court to interpret such provision by limiting or reducing it to be enforceable to the extent compatible with then applicable law. If any one or more of the terms, provisions, covenants or restrictions of this Agreement are determined by a court of competent jurisdiction to be invalid, void or unenforceable, then the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. However, and without regard to the foregoing, if paragraphs 1, 2 and 3 herein, or either of them, is not enforceable or otherwise invalid, the consideration I am providing Motorola for the Covered Options would fail. I agree that all of my Covered Options will terminate and that, I will pay Motorola the spread on any Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment.

(8)   I accept the terms of this Agreement and the above option(s) to purchase shares of the Common Stock of the Company, subject to the terms of this Agreement, the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and/or the 2003 Plan, as the case may be, and any Award Document issued pursuant to one of those Plans. I am familiar with the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and the 2003 Plan and agree to be bound by each to the extent applicable, the actions of the Compensation Committee and the actions of the Company's Board of Directors.

(9)   I agree that this Agreement and the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and/or the 2003 Plan, as the case may be, and any Award Document issued pursuant to one of those Plans, together constitute an agreement between the Company and me. I further agree that this Agreement is governed by the laws of Illinois, without giving effect to principles of Conflicts of Laws, and any legal action related to this Agreement shall be brought in any federal or state court located in Illinois, USA.

I accept the jurisdiction of these courts and consent to service of process from said courts solely for legal actions related to this Agreement and stock option(s) offer.

(End of the Consideration Agreement)

**A paper copy of this document, with the recipients signature of acceptance, is maintained by Global Rewards.**

R3 Award Document

**How to use this document**

The first thing you will see on this website is your Option Award Document. This shows the date you were notified at the top of the first page and describes most of the terms under which the options are granted. It is important to read the Award Document carefully, though it is not necessary that you sign it.

From the Award Document you will scroll down to the Stock Option Consideration Agreement ("SOCA"). Please read the SOCA carefully to help you decide whether you wish to accept its terms to receive the Option Award. After reviewing the SOCA, you are required to "sign" the SOCA as a condition of the grant. In other words, the options will not become yours unless you sign the SOCA within 30 days of the date of your email notification for this option grant.

At the bottom of the SOCA, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the SOCA will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," all the terms of the SOCA will apply and the SOCA will be a binding contract between you and Motorola. If you "Reject," the options will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this option grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the options permanently.

If you "Accept" the SOCA and thus receive the options, you will be able to view both the Award Document and the signed SOCA on the website in the future. Even so, we strongly recommend that that you print out a hard copy of the Award Document and the accepted SOCA for your records. If you "Reject" the SOCA or do nothing and thus forfeit the options, on the 31st day of the date of your email notification you will lose the ability to access any information on the website regarding these options. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

# MOTOROLA, INC.
## AWARD DOCUMENT
### For the
### Motorola Omnibus Incentive Plan of 2003
### Terms and Conditions Related to Employee Nonqualified Stock Options
### Award ID: 516373

| Name : | Michael Fenger | Expiration Date : | May 04, 2014 |
|---|---|---|---|
| Commerce ID : | 12028663 | Number of Options : | 150,000 |
| Grant Date : | May 04, 2004 | Exercise Price : | $ 18.22 (USD) |

Motorola, Inc. ("Motorola") is pleased to grant you options to purchase shares of Motorola's common stock under the Motorola Omnibus Incentive Plan of 2003 (the "Plan"). The number of options ("Options") awarded to you and the Exercise Price per Option, which is the Fair Market Value on the Date of Grant, are stated above. Each Option entitles you to purchase one share of Motorola's common stock on the terms described below and in the Plan.

## Vesting Schedule

| Percentage | Date |
|---|---|
| 25.00 | May 04, 2005 |
| 25.00 | May 04, 2006 |
| 25.00 | May 04, 2007 |
| 25.00 | May 04, 2008 |

### Vesting and Exercisability

You cannot exercise the Options until they have vested.

*Regular Vesting* The Options will vest in accordance with the aforementioned schedule (subject to the other terms hereof).

*Special Vesting* You may be subject to the Special Vesting Dates described below if your employment or service with Motorola or a Subsidiary (as defined below) terminates.

*Exercisability* You may exercise Options at any time after they vest and before they expire as described below.

### Expiration

All Options expire on the earlier of (1) the Date of Expiration as stated above or (2) any of the Special Expiration Dates described below. Once an Option expires, you no longer have the right to exercise it.

### Special Vesting Dates and Special Expiration Dates

There are events that cause your Options to vest sooner than the schedule discussed above or to expire sooner than the Date of Expiration as stated above. Those events are as follows:

*Retirement* If your employment or service with Motorola or a Subsidiary is ended because of your Retirement, Options that were granted at least one year prior to your Retirement that are not vested will automatically become fully vested upon your Retirement. Any remaining unvested Options will be forfeited. All your vested Options will then expire on the earlier of the third anniversary of ending your employment or service because of your Retirement or the Date of Expiration stated above. Retirement means (only for purposes of this Option) your retirement from Motorola or a Subsidiary as follows:

*(i)* Retiring at or after age 55 with 20 years of service;

*(ii)* Retiring at or after age 60 with 10 years of service;

*(iii)* Retiring at or after age 65, without regard to years of service.

*Disability* If your employment or service with Motorola or a Subsidiary is terminated because of your Total and Permanent Disability (as defined below), Options that are not vested will automatically become fully vested upon your termination of employment or service. All your Options will then expire on the earlier of the third anniversary of your

R3 Award Document                                                                      Page 3 of 8

termination of employment or service because of your Total and Permanent Disability or the Date of Expiration stated above. Until that time, the Options will be exercisable by you or your guardian or legal representative.

*Death* If your employment or service with Motorola or a Subsidiary is terminated because of your death, Options that are not vested will automatically become fully vested upon your death. All your Options will then expire on the earlier of the third anniversary of your death or the Date of Expiration stated above. Until that time, with written proof of death and inheritance, the Options will be exercisable by your legal representative, legatees or distributees.

*Change In Control* If there is a Change In Control of Motorola (as defined in the Plan), all the unvested Options will automatically become fully vested as described in the Plan. If Motorola or a Subsidiary terminates your employment or service other than for Serious Misconduct within two years of consummation of a Change In Control, all of your vested Options will be exercisable until the Date of Expiration stated above.

*Termination of Employment or Service Because of Serious Misconduct* If Motorola or a Subsidiary terminates your employment or service because of Serious Misconduct (as defined below) all of your Options (vested and unvested) expire upon your termination.

*Change in Employment in Connection with a Divestiture* If you accept employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary (a "Divestiture"), all of your unvested Options will automatically expire upon termination in direct connection with a Divestiture and your vested Options will expire 12 months after such Divestiture or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service by Motorola or a Subsidiary Other than for Serious Misconduct or a Divestiture* If Motorola or a Subsidiary on its initiative, terminates your employment or service other than for Serious Misconduct or a Divestiture, all of your unvested Options will automatically expire upon termination and your vested Options will expire twelve months after your termination of employment or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service for any Other Reason than Described Above* If your employment or service with Motorola or a Subsidiary terminates for any reason other than that described above, including voluntary resignation of your employment or service, all of your Options (vested and unvested) will automatically expire on the date of termination.

**Leave of Absence/Temporary Layoff**

If you take a Leave of Absence from Motorola or a Subsidiary that your employer has approved in writing in accordance with your employer's Leave of Absence Policy and which does not constitute a termination of employment as determined by Motorola, or you are placed on Temporary Layoff (as defined below) by Motorola or a Subsidiary the following will apply:

*Vesting of Options* Options will continue to vest in accordance with the vesting schedule set forth above.

*Exercising Options* You may exercise Options that are vested or that vest during the leave of absence or layoff.

*Effect of Termination of Employment or Service* If your employment or service is terminated during the Leave of Absence or Temporary Layoff, the treatment of your Options will be determined as described under "Special Vesting Dates and Special Expiration Dates" above.

**Other Terms**

Method of Exercising You must follow the procedures for exercising options established by Motorola from time to time. At the time of exercise, you must pay the Exercise Price for all of the Options being exercised and any taxes that are required to be withheld by Motorola or a Subsidiary in connection with the exercise. Options may not be exercised for less than 50 shares unless the number of shares represented by the Option is less than 50 shares, in which case the Option must be exercised for the remaining amount.

Transferability Unless the Committee provides, Options are not transferable other than by will or the laws of descent and distribution.

Tax Withholding Motorola or a Subsidiary is entitled to withhold an amount equal to the required minimum statutory withholding taxes for the respective tax jurisdictions attributable to any share of common stock deliverable in connection with the exercise of the Options. You may satisfy any withholding obligation in whole or in part by electing to have Motorola retain Option shares having a Fair

R3 Award Document

Market Value on the date of exercise equal to the minimum amount required to be withheld.

### Definition of Terms

If a term is used but not defined, it has the meaning given such term in the Plan.

"Fair Market Value" is the closing price for a share of Motorola common stock on the last trading day before the date of grant or date of exercise, whichever is applicable. The official source for the closing price is the New York Stock Exchange Composite Transaction as reported in the Wall Street Journal, Midwest edition.

"Serious Misconduct" means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

"Subsidiary" means an entity of which Motorola owns directly or indirectly at least 50% and that Motorola consolidates for financial reporting purposes.

"Total and Permanent Disability" means for (x) U.S. employees, entitlement to long-term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations.

"Temporary Layoff" means a layoff or redundancy that is communicated as being for a period of up to twelve months and as including a right to recall under defined circumstances.

### Consent to Transfer Personal Data

By accepting this award, you voluntarily acknowledge and consent to the collection, use, processing and transfer of personal data as described in this paragraph. You are not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect your ability to participate in the Plan. Motorola, its Subsidiaries and your employer hold certain personal information about you, that may include your name, home address and telephone number, date of birth, social security number or other employee identification number, salary, nationality, job title, any shares of stock held in Motorola, or details of all options or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data"). Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of

your participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. You authorize them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing your participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on your behalf to a broker or other third party with whom you may elect to deposit any shares of stock acquired pursuant to the Plan. You may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing your consent may affect your ability to participate in the Plan.

### Acknowledgement of Discretionary Nature of the Plan; No Vested Rights

You acknowledge and agree that the Plan is discretionary in nature and limited in duration, and may be amended, cancelled, or terminated by Motorola or a Subsidiary, in its sole discretion, at any time. The grant of awards under the Plan is a one-time benefit and does not create any contractual or other right to receive an award in the future. Future grants, if any, will be at the sole discretion of Motorola, including, but not limited to, the timing of any grant, the amount of the award, vesting provisions, and the exercise price.

### Agreement Following Termination of Employment

As a further condition of accepting the Options, you acknowledge and agree that for a period of two years following your termination of employment or service, you will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of Motorola or a Subsidiary to terminate his/her employment with Motorola or a Subsidiary and/or to seek employment with your new or prospective employer, or any other company.

You agree that upon termination of employment with Motorola or a Subsidiary, you will immediately inform Motorola of (i) the identity of your new employer (or the nature of any start-up business or self-employment), (ii) your new title, and (iii) your job duties and responsibilities. You hereby authorize Motorola or a Subsidiary to provide a copy of this Award Document to your new employer. You further

agree to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine your compliance with the terms hereof.

### Substitute Stock Appreciation Right

Motorola reserves the right to substitute a Stock Appreciation Right for your Option in the event certain changes are made in the accounting treatment of stock options. Any substitute Stock Appreciation Right shall be applicable to the same number of shares as your Option and shall have the same Date of Expiration, Exercise Price, and other terms and conditions. Any substitute Stock Appreciation Right may be settled only in Common Stock.

### Acceptance of Terms and Conditions

By accepting the Options, you agree to be bound by these terms and conditions, the Plan and any and all rules and regulations established by Motorola in connection with awards issued under the Plan.

### Other Information about Your Options and the Plan

You can find other information about options and the Plan on the Motorola website http://myhr.mot.com/finances/stock_options/index.jsp If you do not have access to the website, please contact Motorola Global Rewards, 1303 E. Algonquin Road, Schaumburg, IL 60196 USA; GBLRW01@Motorola.com; 847-576-7885; for an order form to request Plan documents.

Motorola Confidential Proprietary                          (End of page 4 of the Award Document)

R3 Award Document                                Page 6 of 8

☒ Motorola, Inc.

**Printed: March 12, 2008**

# STOCK OPTION CONSIDERATION AGREEMENT

**Grant Date: May 04, 2004**

The following Agreement is established to protect the trade secrets, intellectual property, confidential information, customer relationships and goodwill of Motorola, Inc. and each of its subsidiaries (the "Company") both as defined in the Motorola Omnibus Incentive Plan of 2000, as amended (the "2000 Plan").

As sole consideration for the stock option(s) granted to me on the date shown above under the terms of the 2000 Plan, the Amended and Restated Motorola Incentive Plan of 1998 (the "1998 Plan"), the Motorola Compensation/Acquisition Plan of 2000 (the "C/A Plan"), the Motorola Omnibus Incentive Plan of 2002 (the "2002 Plan") or the Motorola Omnibus Incentive Plan of 2003 (the "2003 Plan"), as the case may be (the "Covered Options"), and as a person with a salary grade of EXB and/or as a Motorola appointed vice president or elected officer, I agree to the following:

(1)    I agree that during the course of my employment and thereafter, I will not use or disclose, except on behalf of the Company and pursuant to its directions during the course of my employment, any Company Confidential Information. Confidential Information means information concerning the Company and its business that is not generally known outside the Company. Confidential Information includes: (i) trade secrets; (ii) intellectual property; (iii) the Company's methods of operation and Company processes; (iv) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (v) information on customers or potential customers, including customer's names, sales records, prices, and other terms of sales and Company cost information; (vi) Company personnel data; (vii) Company business plans, marketing plans, financial data and projections; and (viii) information received in confidence by the Company from third parties. Information regarding products or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall not be deemed generally known until such broader use is actually commercially implemented.

(2)    I acknowledge and agree that for a period of two years following my termination of employment, I will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company to terminate his/her employment with the Company and/or to seek employment with my new or prospective employer, or any other company.

(3)    I understand that by accepting the Covered Options, (i) if I violate the terms of paragraphs 1 or 2 of this Agreement, or (ii) if during a period of two years following the termination of my employment for any reason I engage in activities which are the same as or similar to activities in which I engaged at any time during the two years preceding termination of my employment, for any person, company or entity in connection with products, services or technological developments (existing or planned) that are the same as, similar to, or competitive with, any products, services or technological developments (existing or planned) on which I worked at any time during the two years preceding the termination of my employment, then:

     (a)    all of my vested and unvested Covered Options will terminate and no longer be exercisable; and

     (b)    for all Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment, I will immediately pay to the Company the difference between the option price and the market price of the Company's common stock on the date of exercise (the "spread").

Paragraph 3(ii) applies in the countries in or for which I have performed work at any time during the two years preceding termination of my employment.

(4)    The requirements of this agreement can be waived or modified only upon the prior written consent of Motorola, Inc. I acknowledge that the promises in this Agreement, not any employment of or services performed by me in the course and scope of that employment, are the sole consideration for the Covered Options.

(5)    I agree that upon termination of employment with the Company and for a period of two years thereafter, I will immediately inform the Company of (i) the identity of my new employer (or the nature of any start-up business, consulting arrangements or self-employment), (ii) my new title, and (iii) my job duties and responsibilities. I hereby authorize the Company to provide a copy of this Agreement to my new employer. I further agree to provide information to the Company as may from time to time be requested in order to determine my compliance with the terms of this Agreement.

(6)    I acknowledge that the harm caused to the Company by the breach or anticipated breach of paragraphs 1 and/or 2 of this Agreement may be irreparable and I agree the Company may have injunctive relief against me in addition to and cumulative with any other rights and remedies the Company may have pursuant to this Agreement, any other agreements between me and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. I agree that any interim or final equitable relief entered by a court of competent jurisdiction will, at the request of the Company, be entered on consent and enforced by any court having jurisdiction over me. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

(7)    If any provisions contained in this Agreement shall be determined by a court of competent jurisdiction to be overly

broad as to scope of activity, duration or territory, I consent to any request by the Company to such court to interpret such provision by limiting or reducing it to be enforceable to the extent compatible with then applicable law. If any one or more of the terms, provisions, covenants or restrictions of this Agreement are determined by a court of competent jurisdiction to be invalid, void or unenforceable, then the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. However, and without regard to the foregoing, if paragraphs 1, 2 and 3 herein, or either of them, is not enforceable or otherwise invalid, the consideration I am providing Motorola for the Covered Options would fail. I agree that all of my Covered Options will terminate and that, I will pay Motorola the spread on any Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment.

(8)     I accept the terms of this Agreement and the above option(s) to purchase shares of the Common Stock of the Company, subject to the terms of this Agreement, the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and/or the 2003 Plan, as the case may be, and any Award Document issued pursuant to one of those Plans. I am familiar with the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and the 2003 Plan and agree to be bound by each to the extent applicable, the actions of the Compensation Committee and the actions of the Company's Board of Directors.

(9)     I agree that this Agreement and the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and/or the 2003 Plan, as the case may be, and any Award Document issued pursuant to one of those Plans, together constitute an agreement between the Company and me. I further agree that this Agreement is governed by the laws of Illinois, without giving effect to principles of Conflicts of Laws, and any legal action related to this Agreement shall be brought in any federal or state court located in Illinois, USA.

I accept the jurisdiction of these courts and consent to service of process from said courts solely for legal actions related to this Agreement and stock option(s) offer.

*(End of the Consideration Agreement)*

**The recipient has accepted the terms of the Agreement on June 21, 2004**

R3 Award Document                                                      Page 1 of 8

**How to use this document**

The first thing you will see on this website is your Option Award Document. This shows the date you were notified at the top of the first page and describes most of the terms under which the options are granted. It is important to read the Award Document carefully, though it is not necessary that you sign it.

From the Award Document you will scroll down to the Stock Option Consideration Agreement ("SOCA"). Please read the SOCA carefully to help you decide whether you wish to accept its terms to receive the Option Award. After reviewing the SOCA, you are required to "sign" the SOCA as a condition of the grant. In other words, the options will not become yours unless you sign the SOCA within 30 days of the date of your email notification for this option grant.

At the bottom of the SOCA, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the SOCA will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," all the terms of the SOCA will apply and the SOCA will be a binding contract between you and Motorola. If you "Reject," the options will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this option grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the options permanently.

If you "Accept" the SOCA and thus receive the options, you will be able to view both the Award Document and the signed SOCA on the website in the future. Even so, we strongly recommend that that you print out a hard copy of the Award Document and the accepted SOCA for your records. If you "Reject" the SOCA or do nothing and thus forfeit the options, on the 31st day of the date of your email notification you will lose the ability to access any information on the website regarding these options. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

Motorola Confidential Proprietary

(Beginning of Page 1 of the Award Document)

# MOTOROLA, INC.
## AWARD DOCUMENT
### For the
### Motorola Omnibus Incentive Plan of 2003
### Terms and Conditions Related to Employee Nonqualified Stock Options
### Award ID: 519282

| Name : | Michael Fenger | Expiration Date : | May 03, 2015 |
|---|---|---|---|
| Commerce ID : | 12028663 | Number of Options : | 200,000 |
| Grant Date : | May 03, 2005 | Exercise Price : | $ 15.47 (USD) |

Motorola, Inc. ("Motorola") is pleased to grant you options to purchase shares of Motorola's common stock under the Motorola Omnibus Incentive Plan of 2003 (the "Plan"). The number of options ("Options") awarded to you and the Exercise Price per Option, which is the Fair Market Value on the Date of Grant, are stated above. Each Option entitles you to purchase one share of Motorola's common stock on the terms described below and in the Plan.

## Vesting Schedule

| Percentage | Date |
|---|---|
| 25.00 | May 03, 2006 |
| 25.00 | May 03, 2007 |
| 25.00 | May 03, 2008 |
| 25.00 | May 03, 2009 |

**Vesting and Exercisability**

You cannot exercise the Options until they have vested.

*Regular Vesting* - The Options will vest in accordance with the aforementioned schedule (subject to the other terms hereof):

*Special Vesting* - You may be subject to the Special Vesting Dates described below if your employment or service with Motorola or a Subsidiary (as defined below) terminates.

*Exercisability*- You may exercise Options at any time after they vest and before they expire as described below.

**Expiration**

All Options expire on the earlier of (1) the Date of Expiration as stated above or (2) any of the Special Expiration Dates described below. Once an Option expires, you no longer have the right to exercise it.

**Special Vesting Dates and Special Expiration Dates**

There are events that cause your Options to vest sooner than the schedule discussed above or to expire sooner than the Date of Expiration as stated above. Those events are as follows:

*Retirement* - If your employment or service with Motorola or a Subsidiary is ended because of your Retirement, all of your unvested Options will automatically expire upon Retirement. All of your vested Options will then expire on the earlier of (i) the date ninety (90) days after your Retirement or (ii) the Date of Expiration stated above. Retirement means (only for purposes of this Option) your retirement from Motorola or a Subsidiary as follows:

Motorola Confidential Proprietary

(End of page 1 of the Award Document)

(i) Retiring at or after age 55 with 20 years of service;

(ii) Retiring at or after age 60 with 10 years of service;

(iii) Retiring at or after age 65, without regard to years of service.

*Disability* - If your employment or service with Motorola or a Subsidiary is terminated because of your Total and Permanent Disability (as defined below), Options that are not vested will automatically become fully vested upon your termination of employment or service. All your Options will then expire on the earlier of the first anniversary of your termination of employment or service because of your Total and Permanent Disability or the Date of Expiration stated above. Until that time, the Options will be exercisable by you or your guardian or legal representative.

*Death* - If your employment or service with Motorola or a Subsidiary is terminated because of your death, Options that are not vested will automatically become fully vested upon your death. All your Options will then expire on the earlier of the first anniversary of your death or the Date of Expiration stated above. Until that time, with written proof of death and inheritance, the Options will be exercisable by your legal representative, legatees or distributees.

*Change In Control* - If there is a Change In Control of Motorola (as defined in the Plan), all the unvested Options will automatically become fully vested as described in the Plan. If Motorola or a Subsidiary terminates your employment or service other than for Serious Misconduct within two years of consummation of a Change In Control, all of your vested Options will be exercisable until the Date of Expiration stated above.

*Termination of Employment or Service Because of Serious Misconduct* - If Motorola or a Subsidiary terminates your employment or service because of Serious Misconduct (as defined below) all of your Options (vested and unvested) expire upon your termination.

*Change in Employment in Connection with a Divestiture* - If you accept employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary (a "Divestiture"), all of your unvested Options will automatically expire upon termination in direct connection with a Divestiture and your vested Options will expire 90 days after such Divestiture or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service Other than for Serious Misconduct or a Divestiture* - If Motorola or a Subsidiary on its initiative, terminates your employment or service other than for Serious Misconduct or a Divestiture, all of your unvested Options will automatically expire upon termination and your vested Options will expire 90 days after your termination of employment or such shorter period remaining until expiration as set forth above.

*Termination of Employment or Service for any Other Reason than Described Above* - If your employment or service with Motorola or a Subsidiary terminates for any reason other than that described above, including voluntary resignation of your employment or service, all of your unvested Options will automatically expire upon termination of your employment or service and all of your vested but not yet exercised Options will expire on the earlier of (i) the date ninety (90) days after the date of termination of your employment or service or (ii) the Date of Expiration stated above.

### Leave of Absence/Temporary Layoff

If you take a Leave of Absence from Motorola or a Subsidiary that your employer has approved in writing in accordance with your employer's Leave of Absence Policy and which does not constitute a termination of employment as determined by Motorola, or you are placed on Temporary Layoff (as defined below) by Motorola or a Subsidiary the following will apply:

*Vesting of Options* - Options will continue to vest in accordance with the vesting schedule set forth above.

*Exercising Options* - You may exercise Options that are vested or that vest during the leave of absence or layoff.

*Effect of Termination of Employment or Service* - If your employment or service is terminated during the Leave of Absence or Temporary Layoff, the treatment of your Options will be determined as described under "Special Vesting Dates and Special Expiration Dates" above.

### Other Terms

*Method of Exercising* - You must follow the procedures for exercising options established by Motorola from time to time. At the time of exercise, you must pay the Exercise Price for all of the Options being exercised and any taxes that are required to be withheld by Motorola or a Subsidiary in connection with the exercise. Options may not be exercised for less than 50 shares unless the number of shares represented by the Option is less than 50 shares, in which case the Option must be exercised for the remaining amount.

R3 Award Document

Motorola Confidential Proprietary

*Transferability* - Unless the Committee provides, Options are not transferable other than by will or the laws of descent and distribution.

*Tax Withholding* - Motorola or a Subsidiary is entitled to withhold an amount equal to the required minimum statutory withholding taxes for the respective tax jurisdictions attributable to any share of common stock deliverable in connection with the exercise of the Options. You may satisfy any withholding obligation in whole or in part by electing to have Motorola retain Option shares having a Fair Market Value on the date of exercise equal to the minimum amount required to be withheld.

### Definition of Terms

If a term is used but not defined, it has the meaning given such term in the Plan.

"Fair Market Value" is the closing price for a share of Motorola common stock on the last trading day before the date of grant or date of exercise, whichever is applicable. The official source for the closing price is the New York Stock Exchange Composite Transaction as reported in the Wall Street Journal, Midwest edition.

"Serious Misconduct" means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

"Subsidiary" means an entity of which Motorola owns directly or indirectly at least 50% and that Motorola consolidates for financial reporting purposes.

"Total and Permanent Disability" means for (x) U.S. employees, entitlement to long-term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations.

"Temporary Layoff" means a layoff or redundancy that is communicated as being for a period of up to twelve months and as including a right to recall under defined circumstances.

### Consent to Transfer Personal Data

By accepting this award, you voluntarily acknowledge and consent to the collection, use, processing and transfer of personal data as described

in this paragraph. You are not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect your ability to participate in the Plan. Motorola, its Subsidiaries and your employer hold certain personal information about you, that may include your name, home address and telephone number, date of birth, social security number or other employee identification number, salary, salary grade, hire date, nationality, job title, any shares of stock held in Motorola, or details of all options or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data").

Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of your participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. You authorize them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing your participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on your behalf to a broker or other third party with whom you may elect to deposit any shares of stock acquired pursuant to the Plan. You may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing your consent may affect your ability to participate in the Plan.

### Acknowledgement of Discretionary Nature of the Plan; No Vested Rights

You acknowledge and agree that the Plan is discretionary in nature and limited in duration, and may be amended, cancelled, or terminated by Motorola or a Subsidiary, in its sole discretion, at any time. The grant of awards under the Plan is a one-time benefit and does not create any contractual or other right to receive an award in the future. Future grants, if any, will be at the sole discretion of Motorola, including, but not limited to, the timing of any grant, the amount of the award, vesting provisions, and the exercise price.

Motorola Confidential Proprietary

R3 Award Document

Motorola Confidential Proprietary

### Agreement Following Termination of Employment

As a further condition of accepting the Options, you acknowledge and agree that for a period of two years following your termination of employment or service, you will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of Motorola or a Subsidiary to terminate his/her employment with Motorola or a Subsidiary and/or to seek employment with your new or prospective employer, or any other company.

You agree that upon termination of employment with Motorola or a Subsidiary, you will immediately inform Motorola of (i) the identity of your new employer (or the nature of any start-up business or self-employment), (ii) your new title, and (iii) your job duties and responsibilities. You hereby authorize Motorola or a Subsidiary to provide a copy of this Award Document to your new employer. You further agree to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine your compliance with the terms hereof.

### Substitute Stock Appreciation Right

Motorola reserves the right to substitute a Stock Appreciation Right for your Option in the event certain changes are made in the accounting treatment of stock options. Any substitute Stock Appreciation Right shall be applicable to the same number of shares as your Option and shall have the same Date of Expiration, Exercise Price, and other terms and conditions. Any substitute Stock Appreciation Right may be settled only in Common Stock.

### Acceptance of Terms and Conditions

By accepting the Options, you agree to be bound by these terms and conditions, the Plan and any and all rules and regulations established by Motorola in connection with awards issued under the Plan.

### Other Information about Your Options and the Plan

You can find other information about options and the Plan on the Motorola website http://myhr.mot.com/finances/stock_options/index.jsp If you do not have access to the website, please contact Motorola Global Rewards, 1303 E. Algonquin Road, Schaumburg, IL 60196 USA; GBLRW01@Motorola.com; 847-576-7885; for an order form to request Plan documents.

Motorola Confidential Proprietary

R3 Award Document                                                          Page 6 of 8

 Motorola, Inc.

**Printed: March 12, 2008**

## STOCK OPTION CONSIDERATION AGREEMENT

**Grant Date: May 03, 2005**

The following Agreement is established to protect the trade secrets, intellectual property, confidential information, customer relationships and goodwill of Motorola, Inc. and each of its subsidiaries (the "Company") both as defined in the Motorola Omnibus Incentive Plan of 2000, as amended (the "2000 Plan").

As sole consideration for the stock option(s) granted to me on the date shown above under the terms of the 2000 Plan, the Amended and Restated Motorola Incentive Plan of 1998 (the "1998 Plan"), the Motorola Compensation/Acquisition Plan of 2000 (the "C/A Plan"), the Motorola Omnibus Incentive Plan of 2002 (the "2002 Plan") or the Motorola Omnibus Incentive Plan of 2003 (the "2003 Plan"), as the case may be ("the Covered Options"), and as a person with a salary grade of EXB and/or as a Motorola appointed vice president or elected officer, I agree to the following:

1.     I agree that during the course of my employment and thereafter, I will not use or disclose, except on behalf of the Company and pursuant to its directions during the course of my employment, any Company Confidential Information. Confidential Information means information concerning the Company and its business that is not generally known outside the Company. Confidential Information includes: (i) trade secrets; (ii) intellectual property; (iii) the Company's methods of operation and Company processes; (iv) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (v) information on customers or potential customers, including customer's names, sales records, prices, and other terms of sales and Company cost information; (vi) Company personnel data; (vii) Company business plans, marketing plans, financial data and projections; and (viii) information received in confidence by the Company from third parties. Information regarding products or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall not be deemed generally known until such broader use is actually commercially implemented.

2.     I acknowledge and agree that for a period of two years following my termination of employment, I will not recruit, solicit or induce, or cause, allow, permit or aid others to recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company to terminate his/her employment with the Company and/or to seek employment with my new or prospective employer, or any other company.

3.     I understand that by accepting the Covered Options, (i) if I violate the terms of paragraphs 1 or 2 of this Agreement, or (ii) if during a period of two years following the termination of my employment for any reason I engage in activities which are the same as or similar to activities in which I engaged at any time during the two years preceding termination of my employment, for any person, company or entity in connection with products, services or technological developments (existing or planned) that are the same as, similar to, or competitive with, any products, services or technological developments (existing or planned) on which I worked at any time during the two years preceding the termination of my employment, then:

   a.     all of my vested and unvested Covered Options will terminate and no longer be exercisable; and

   b.     for all Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment, I will immediately pay to the Company the difference between the option price and the market price of the Company's common stock on the date of exercise (the "spread").

Paragraph 3(ii) applies in the countries in or for which I have performed work at any time during the two years preceding termination of my employment.

4.     The requirements of this agreement can be waived or modified only upon the prior written consent of Motorola, Inc. I acknowledge that the promises in this Agreement, not any employment of or services performed by me in the course and scope of that employment, are the sole consideration for the Covered Options.

5.     I agree that upon termination of employment with the Company and for a period of two years thereafter, I will immediately inform the Company of (i) the identity of my new employer (or the nature of any start-up business, consulting arrangements or self-employment), (ii) my new title, and (iii) my job duties and responsibilities. I hereby authorize the Company to provide a copy of this Agreement to my new employer. I further agree to provide information to the Company as may from time to time be requested in order to determine my compliance with the terms of this Agreement.

6.     I acknowledge that the harm caused to the Company by the breach or anticipated breach of paragraphs 1 and/or 2

of this Agreement may be irreparable and I agree the Company may have injunctive relief against me in addition to and cumulative with any other rights and remedies the Company may have pursuant to this Agreement, any other agreements between me and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. I agree that any interim or final equitable relief entered by a court of competent jurisdiction will, at the request of the Company, be entered on consent and enforced by any court having jurisdiction over me. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

7.      If any provisions contained in this Agreement shall be determined by a court of competent jurisdiction to be overly broad as to scope of activity, duration or territory, I consent to any request by the Company to such court to interpret such provision by limiting or reducing it to be enforceable to the extent compatible with then applicable law. If any one or more of the terms, provisions, covenants or restrictions of this Agreement are determined by a court of competent jurisdiction to be invalid, void or unenforceable, then the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. However, and without regard to the foregoing, if paragraphs 1, 2 and 3 herein, or either of them, is not enforceable or otherwise invalid, the consideration I am providing Motorola for the Covered Options would fail. I agree that all of my Covered Options will terminate and that, I will pay Motorola the spread on any Covered Options exercised within two years prior to the termination of my employment or anytime after termination of my employment.

8.      I accept the terms of this Agreement and the above option(s) to purchase shares of the Common Stock of the Company, subject to the terms of this Agreement, the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and/or the 2003 Plan, as the case may be, and any Award Document issued pursuant to one of those Plans. I am familiar with the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and the 2003 Plan and agree to be bound by each to the extent applicable, the actions of the Compensation Committee and the actions of the Company's Board of Directors.

9.      I agree that this Agreement and the 1998 Plan, the 2000 Plan, the C/A Plan, the 2002 Plan and/or the 2003 Plan, as the case may be, and any Award Document issued pursuant to one of those Plans, together constitute an agreement between the Company and me. I further agree that this Agreement is governed by the laws of Illinois, without giving effect to principles of Conflicts of Laws, and any legal action related to this Agreement shall be brought in any federal or state court located in Illinois, USA.

I accept the jurisdiction of these courts and consent to service of process from said courts solely for legal actions related to this Agreement and stock option(s) offer.

(End of the Consideration Agreement)

**The recipient has accepted the terms of the Agreement on June 21, 2005**

R3 Award Document

**How to use this document**

The first thing you will see on this website is your Restricted Stock Unit ("RSU") Award Document ("Award Document"). This shows the grant date at the top of the first page and describes the terms of the Award. After reviewing the Award Document, you are required to "electronically sign" the Award Document as a condition of the grant.

In other words, the RSUs will not become yours unless you sign the Award Agreement within 30 days of the date of your email notification for this RSU grant.

At the bottom of the Award Document, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the Award Document will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," the RSUs will become yours. By accepting, all the terms of the Award Document will apply and the Award Document will be a binding contract between you and Motorola. If you "Reject," the RSUs will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this RSU grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the RSUs permanently.

If you "Accept" the Award Document and thus receive the RSUs, you will be able to view the Award Document on the website in the future. Even so, we strongly recommend that you print out a hard copy of the Award Document for your records. If you "Reject" the Award Document or do nothing and thus forfeit the RSUs, on the 31st day after the date of your email notification you will lose the ability to access the information on the website regrding these RSUs. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

Motorola Confidential Proprietary                                  (Beginning of the Award Document)

# RESTRICTED STOCK
# UNIT AWARD AGREEMENT

This Restricted Stock Units Award (the "Award") is made this May 03, 2005 ("Date of Grant"), by Motorola, Inc. (the "Company" or "Motorola") to Michael Fenger (the "Grantee").

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the Company hereby awards restricted stock units to Grantee on the following terms and conditions:

1. **Award of Restricted Stock Units** The Company hereby awards to Grantee a total of Twenty-Five Thousand (25,000) Motorola restricted stock Units (the " Units") subject to the terms and conditions set forth below.

2. **Restrictions.**
   The Units are being awarded to Grantee subject to the transfer and forfeiture conditions set forth below (the "Restrictions") which shall lapse, if at all, as described in Section 3 below. For purposes of this Award, the term Units includes any additional Units granted to the Grantee with respect to Units, still subject to the Restrictions.

   a. Grantee may not directly or indirectly, by operation of law or otherwise, voluntarily or involuntarily, sell, assign, pledge, encumber, charge or otherwise transfer any of the Units still subject to Restrictions. The Units shall be forfeited if Grantee violates or attempts to violate these transfer restrictions.

   b. Any Units still subject to the Restrictions shall be automatically forfeited upon the Grantee's termination of employment with Motorola or a Motorola Subsidiary for any reason, other than death or Total and Permanent Disability, as defined in Section 3(a) below. For purposes of this Agreement, a "Motorola Subsidiary" is any corporation or other entity in which a 50 percent or greater interest is held directly or indirectly by Motorola and which is consolidated for financial reporting purposes.

   c. If Grantee engages, directly or indirectly, in any activity which is in competition with any activity of Motorola or any Motorola Subsidiary, or in any action or conduct which is in any manner adverse or in any way contrary to the interests of Motorola or any Motorola Subsidiary, all Units shall be forfeited. This determination shall be made by the Committee and Leadership Committee of the Company's Board of Directors (the "Committee").

   The Company will not be obligated to pay Grantee any consideration whatsoever for forfeited Units.

3. **Lapse of Restrictions.**
   a. The Restrictions applicable to the Units shall lapse, as long as the Units have not been forfeited as described in Section 2 above, as follows:

      i. 50% on November 03, 2007

      ii. 50% on May 03, 2010

      iii. Upon a Change in Control of the Company (as defined by the 2002 Omnibus Plan);

      iv. If the Grantee becomes Totally and Permanently Disabled. A "Total and Permanent Disability" means for (x) U.S. employees, entitlement to long term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations; or

      v. If the Grantee dies.

   b. If during the Restricted Period the Grantee takes a Leave of Absence from Motorola or a Motorola Subsidiary and the Grantee's employment from Motorola or a Motorola Subsidiary is not terminated for any reason (other than death or Total and Permanent Disability), the Units will continue to be subject to this Agreement. If the Restricted Period expires while the Grantee is on a Leave of Absence the Grantee will be entitled to the Units even if the Grantee has not returned to active employment. "Leave of Absence" means a leave of absence from Motorola or a Motorola Subsidiary that is not a termination of employment, as determined by Motorola.

   c. To the extent the Restrictions lapse under this Section 3 with respect to the Units, they will be free of the terms and conditions of this Award.

4. **Adjustments**
   If the number of outstanding shares of Common Stock of the Company is changed as a result of stock dividend, stock split or the like without additional consideration to the Company, the number of Units subject to this Award

shall be adjusted to correspond to the change in the outstanding shares of Motorola Common Stock ("Common Stock").

5. **Dividend Equivalents**

Upon the Company's payment of a cash dividend with respect to its Common Stock, the number of Units shall be increased by dividing the amount of dividend the Grantee would have received had the Grantee owned a number of shares of Common Stock equal to the number of Units then credited to his or her account by the closing price of the Company's Common Stock on the last trading day before the date of the dividend payment, as reported for the New York Stock Exchange - Composite Transaction in the Wall Street Journal, Midwest edition. If a dividend is paid in shares of stock of another company or in other property, the Grantee will be credited with the number of shares of that company or the amount of property which would have been received had the Grantee owned a number of shares of Common Stock equal to the number of Units credited to his or her account. The shares or property so credited will be subject to the same Restrictions and other terms and conditions applicable to Units and will be paid out in kind at the time the Restrictions lapse.

6. **Delivery of Certificates or Equivalent**

Upon the lapse of Restrictions applicable to the Units, the Company shall, at its election, either deliver to the Grantee (i) a certificate representing a number of shares of Common Stock equal to the number of Units upon which such Restrictions have lapsed, plus, a cash payment equal to the value of any fractional unit then credited to the Grantee or (ii) establish a brokerage account for the Grantee and credit to that account the number of shares of Common Stock of the Company equal to the number of Units upon which such Restrictions have lapsed plus, in either case, a cash payment equal to the value of any fractional Unit then credited to the Grantee's account.

7. **Withholding Taxes**

The Company is entitled to withhold an amount equal to Motorola's required minimum statutory withholdings taxes for the respective tax jurisdiction attributable to any share of Common Stock or property deliverable in connection with the Units. Grantee may satisfy any withholding obligation in whole or in part by electing to have Motorola retain shares of Common Stock deliverable in connection with the Units having a Fair Market Value on the date the Restrictions applicable to the Units lapse equal to the minimum amount required to be withheld. "Fair Market Value" for this purpose shall be the closing price for a share of Motorola common stock on the last trading day before the date the Restrictions applicable to the Units lapse as reported for the New York Stock Exchange Composite Transaction in the Wall Street Journal, Midwest edition.

8. **Voting and Other Rights**

   a. Grantee shall have no rights as a stockholder of the Company in respect of the Units, including the right to vote and to receive dividends and other distributions, until delivery of certificates representing shares of Common Stock in satisfaction of the Units.

   b. The grant of Units does not confer upon Grantee any right to continue in the employ of the Company or a Motorola Subsidiary or to interfere with the right of the Company or a Motorola Subsidiary, to terminate Grantee's employment at any time.

9. **Funding**

No assets or shares of Common Stock shall be segregated or earmarked by the Company in respect of any Units awarded hereunder. The grant of Units hereunder shall not constitute a trust and shall be solely for the purpose of recording an unsecured contractual obligation of the Company.

10. **Governing Law**

All questions concerning the construction, validity and interpretation of this Award shall be governed by and construed according to the internal law and not the law of conflicts of the State of Illinois.

11. **Waiver**

The failure of the Company to enforce at any time any provision of this Award shall in no way be construed to be a waiver of such provision or any other provision hereof.

12. **Actions by the Committee**

The Committee may delegate its authority to administer this Agreement. The actions and determinations of the Committee or delegate shall be binding upon the parties.

13. **Acceptance of Terms and Conditions**

By electronically accepting this Award within 30 days after the date of the electronic mail notification by the Company to you of the grant of this Award ("Email Notification Date"), you agree to be bound by the foregoing terms and conditions, the 2002 Omnibus Plan and any and all rules and regulations established by Motorola in connection with awards issued under the 2002 Omnibus Plan. If you do not electronically accept this Award

R3 Award Document                                                    Page 4 of 6

within 30 days of the Email Notification Date you will not be entitled to the Units.

14.  **Plan Documents**
     The 2002 Omnibus Plan and the Prospectus for the 2002 Omnibus Plan are available at
     http://myhr.mot.com/finances/stock_options/plan_documents.jsp or from Motorola Global Rewards, 1303 East
     Algonquin Road, Schaumburg, IL 60196 (847) 576-7885.

Motorola Confidential Proprietary                              (End of the Award Document)

R3 Award Document

| | Motorola Confidential Proprietary | (Beginning of Consideration Agreement) |
|---|---|---|
| **Printed: March 12, 2008**<br>**Grant Date: May 03, 2005** | | |
| | Motorola Confidential Proprietary | (End of Consideration Agreement) |

**The recipient has accepted the terms of the Agreement on June 21, 2005**

R3 Award Document                                                                              Page 1 of 7

**How to use this document**

The first thing you will see on this website is your Option Award Document. This shows the date you were notified at the top of the first page and describes most of the terms under which the options are granted. It is important to read the Award Document carefully, though it is not necessary that you sign it.

From the Award Document you will scroll down to the Stock Option Consideration Agreement ("SOCA"). Please read the SOCA carefully to help you decide whether you wish to accept its terms to receive the Option Award. After reviewing the SOCA, you are required to "sign" the SOCA as a condition of the grant. In other words, the options will not become yours unless you sign the SOCA within 30 days of the date of your email notification for this option grant.

At the bottom of the SOCA, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the SOCA will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," all the terms of the SOCA will apply and the SOCA will be a binding contract between you and Motorola. If you "Reject," the options will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this option grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the options permanently.

If you "Accept" the SOCA and thus receive the options, you will be able to view both the Award Document and the signed SOCA on the website in the future. Even so, we strongly recommend that that you print out a hard copy of the Award Document and the accepted SOCA for your records. If you "Reject" the SOCA or do nothing and thus forfeit the options, on the 31st day of the date of your email notification you will lose the ability to access any information on the website regarding these options. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

## MOTOROLA, INC.
## AWARD DOCUMENT
### For the
### Motorola Omnibus Incentive Plan of 2006
### Terms and Conditions Related to Employee Nonqualified Stock Options

| Name : Michael Fenger | Expiration Date : May 03, 2016 |
|---|---|
| Commerce ID : 12028663 | Number of Options : 25,000 |
| Grant Date : May 03, 2006 | Exercise Price : $ 21.25 (USD) |

Motorola, Inc. ("Motorola") is pleased to grant you options to purchase shares of Motorola's common stock under the Motorola Omnibus Incentive Plan of 2006 (the "Plan"). The number of options ("Options") awarded to you and the Exercise Price per Option, which is the Fair Market Value on the Date of Grant, are stated above. Each Option entitles you to purchase one share of Motorola's common stock on the terms described below and in the Plan.

## Vesting Schedule

| Percentage | Date |
|---|---|
| 25.00 | May 03, 2007 |
| 25.00 | May 03, 2008 |
| 25.00 | May 03, 2009 |
| 25.00 | May 03, 2010 |

### Vesting and Exercisability

You cannot exercise the Options until they have vested.

*Regular Vesting* - The Options will vest in accordance with the above schedule (subject to the other terms hereof).

*Special Vesting* - You may be subject to the Special Vesting Dates described below if your employment or service with Motorola or a Subsidiary (as defined below) terminates.

*Exercisability* - You may exercise Options at any time after they vest and before they expire as described below.

### Expiration

All Options expire on the earlier of (1) the Date of Expiration as stated above or (2) any of the Special Expiration Dates described below. Once an Option expires, you no longer have the right to exercise it.

### Special Vesting Dates and Special Expiration Dates

There are events that cause your Options to vest sooner than the Regular Vesting schedule discussed above or to expire sooner than the Date of Expiration as stated above. Those events are as follows:

*Disability* - If your employment or service with Motorola or a Subsidiary is terminated because of your Total and Permanent Disability (as defined below), Options that are not vested will automatically become fully vested upon your termination of employment or service. All your Options will then expire on the earlier of the first anniversary of your termination of employment or service because of your Total and Permanent Disability or the Date of Expiration stated above. Until that time, the Options will be exercisable by you or your guardian or legal representative.

*Death* - If your employment or service with Motorola or a Subsidiary is terminated because of your death, Options that are not vested will automatically become fully vested upon your death. All your Options will then expire on the earlier of the first anniversary of your death or the Date of Expiration stated above. Until that time, with written proof of death and inheritance, the Options will be exercisable by your legal representative, legatees or distributees.

*Change In Control* - If a "Change in Control" of the Company occurs, and the successor corporation does not assume these Options or replace them with options that are at least comparable to these Options, then: (1) all of your unvested Options will be fully vested and (2) all of your Options will be exercisable until the Date of Expiration set forth above.

Further, with respect to any Options that are assumed or replaced as described in the preceding paragraph, such assumed or replaced options shall provide that they will be fully vested and exercisable until the Date of Expiration set forth above if you are involuntarily terminated (for a reason other than "Cause") or if you quit for "Good Reason" within 24

months of the Change in Control. For purposes of this paragraph, the terms "Change in Control", "Cause" and "Good Reason" are defined in the Plan.

*Termination of Employment or Service Because of Serious Misconduct* - If Motorola or a Subsidiary terminates your employment or service because of Serious Misconduct (as defined below) all of your Options (vested and unvested) expire upon your termination.

*Change in Employment in Connection with a Divestiture* - If you accept employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary, or if you remain employed by a Subsidiary that is sold or whose shares are distributed to the Motorola stockholders in a spin-off or similar transaction (a "Divestiture"), all of your unvested Options will automatically expire upon termination of your employment with Motorola, and all of your vested but not yet exercised Options will expire on the earlier of (i) 90 days after such Divestiture or (ii) the Date of Expiration stated above.

*Termination of Employment or Service by Motorola or a Subsidiary Other than for Serious Misconduct or a Divestiture* - If Motorola or a Subsidiary on its initiative, terminates your employment or service other than for Serious Misconduct or a Divestiture, all of your unvested Options will automatically expire upon termination and all of your vested but not yet exercised Options will expire on the earlier of (i) 90 days after your termination of employment or (2) the Date of Expiration stated above.

*Termination of Employment or Service for any Other Reason than Described Above* - If your employment or service with Motorola or a Subsidiary terminates for any reason other than that described above, including voluntary resignation of your employment or service, all of your unvested Options will automatically expire upon termination of your employment or service and all of your vested but not yet exercised Options will expire on the earlier of (i) the date ninety (90) days after the date of termination of your employment or service or (ii) the Date of Expiration stated above.

### Leave of Absence/Temporary Layoff

If you take a Leave of Absence from Motorola or a Subsidiary that your employer has approved in writing in accordance with your employer's Leave of Absence Policy and which does not constitute a termination of employment as determined by Motorola, or you are placed on Temporary Layoff (as defined below) by Motorola or a Subsidiary the following will apply:

*Vesting of Options* - Options will continue to vest in accordance with the vesting schedule set forth above.

*Exercising Options* - You may exercise Options that are vested or that vest during the Leave of Absence or Temporary Layoff.

*Effect of Termination of Employment or Service* - If your employment or service is terminated during the Leave of Absence or Temporary Layoff, the treatment of your Options will be determined as described under "Special Vesting Dates and Special Expiration Dates" above.

### Other Terms

*Method of Exercising* - You must follow the procedures for exercising options established by Motorola from time to time. At the time of exercise, you must pay the Exercise Price for all of the Options being exercised and any taxes that are required to be withheld by Motorola or a Subsidiary in connection with the exercise. Options may not be exercised for less than 50 shares unless the number of shares represented by the Option is less than 50 shares, in which case the Option must be exercised for the remaining amount.

*Transferability* - Unless the Committee provides, Options are not transferable other than by will or the laws of descent and distribution.

*Tax Withholding* - Motorola or a Subsidiary is entitled to withhold an amount equal to the required minimum statutory withholding taxes for the respective tax jurisdictions attributable to any share of common stock deliverable in connection with the exercise of the Options. You may satisfy any withholding obligation in whole or in part by electing to have Motorola retain Option shares having a Fair Market Value on the date of exercise equal to the minimum amount required to be withheld.

### Definition of Terms

If a term is used but not defined, it has the meaning given such term in the Plan.

"Fair Market Value" is the closing price for a share of Motorola common stock on the last trading day before the date of grant or date of exercise, whichever is applicable. The official source for the closing price is the New York Stock Exchange Composite Transaction as reported in the Wall Street Journal, Midwest edition.

"Serious Misconduct" means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

"Subsidiary" means an entity of which Motorola owns directly or indirectly at least 50% and that Motorola consolidates for financial reporting purposes.

"Total and Permanent Disability" means for (x) U.S. employees, entitlement to long-term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations.

"Temporary Layoff" means a layoff or redundancy that is communicated as being for a period of up to twelve months and as including a right to recall under defined circumstances.

### Consent to Transfer Personal Data

By accepting this award, you voluntarily acknowledge and consent to the collection, use, processing and transfer of personal data as described in this paragraph. You are not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect your ability to participate in the Plan. Motorola, its Subsidiaries and your employer hold certain personal information about you, that may include your name, home address and telephone number, date of birth, social security number or other employee identification number, salary, salary grade, hire date, nationality, job title, any shares of stock held in Motorola, or details of all options or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data"). Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of your participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. You authorize them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing your participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on your behalf to a broker or other third party with whom you may elect to deposit any shares of stock acquired pursuant to the Plan. You may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing your consent may affect your ability to participate in the Plan.

### Acknowledgement of Discretionary Nature of the Plan; No Vested Rights

You acknowledge and agree that the Plan is discretionary in nature and limited in duration, and may be amended, cancelled, or terminated by Motorola or a Subsidiary, in its sole discretion, at any time. The grant of awards under the Plan is a one-time benefit and does not create any contractual or other right to receive an award in the future or to future employment. Nor shall this or any such grant interfere with your right or the Company's right to terminate such employment relationship at any time, with or without cause, to the extent permitted by applicable laws and any enforceable agreement between you and the Company. Future grants, if any, will be at the sole discretion of Motorola, including, but not limited to, the timing of any grant, the amount of the award, vesting provisions, and the exercise price.

### No Relation to Other Benefits/Termination Indemnities

Your acceptance of this award and participation under the Plan is voluntary. The value of your stock option awarded herein is an extraordinary item of compensation outside the scope of your employment contract, if any. As such, the stock option is not part of normal or expected compensation for purposes of calculating any severance, resignation, redundancy, end of service payments, bonuses, long-service awards, pension, or retirement benefits or similar payments, notwithstanding any provision of any compensation, insurance agreement or benefit plan to the contrary.

### Agreement Following Termination of Employment

As a further condition of accepting the Options, you acknowledge and agree that for a period of two years following your termination of employment or service, you will not hire, recruit, solicit or induce, or cause, allow, permit or aid others to hire, recruit, solicit or induce, or to communicate in support of those activities, any employee of Motorola or a Subsidiary to terminate his/her employment with Motorola or a Subsidiary and/or to seek employment with your new or prospective employer, or any other company.

You agree that upon termination of employment with Motorola or a Subsidiary, you will immediately inform Motorola of (i) the identity of your new employer (or the nature of any start-up business or self-employment), (ii) your new title, and (iii) your job duties and responsibilities. You hereby authorize Motorola or a Subsidiary to provide a copy of this Award Document to your new employer. You further agree to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine your compliance with the terms hereof.

### Substitute Stock Appreciation Right

Motorola reserves the right to substitute a Stock Appreciation Right for your Option in the event certain changes are made in the accounting treatment of stock options. Any substitute Stock Appreciation Right shall be applicable to the same number of shares as your Option and shall have the same Date of Expiration, Exercise Price, and other terms and conditions. Any substitute Stock Appreciation Right may be settled only in common stock.

**Acceptance of Terms and Conditions**

By accepting the Options, you agree to be bound by these terms and conditions, the Plan, any and all rules and regulations established by Motorola in connection with awards issued under the Plan, and any additional covenants or promises Motorola may require as a condition of the grant.

**Other Information about Your Options and the Plan**

You can find other information about options and the Plan on the Motorola website http://myhr.mot.com/finances/stock_options/index.jsp If you do not have access to the website, please contact Motorola Global Rewards, 1303 E. Algonquin Road, Schaumburg, IL 60196 USA; GBLRW01@Motorola.com; 847-576-7885; for an order form to request Plan documents.

---

[x] Motorola, Inc.

**Printed: March 12, 2008**

## STOCK OPTION CONSIDERATION AGREEMENT

**Grant Date: May 03, 2006**

The following Agreement is established to protect the trade secrets, intellectual property, confidential information, customer relationships and goodwill of Motorola, Inc. and each of its subsidiaries (the "Company") both as defined in the Motorola Omnibus Incentive Plan of 2006 (the "2006 Plan").

As consideration for the stock option(s) granted to me on the date shown above under the terms of the 2006 Plan ("the Covered Options"), and Motorola having provided me with Confidential Information as a Motorola appointed vice president or elected officer, I agree to the following:

1.  I agree that during the course of my employment and thereafter, I will not use or disclose, except on behalf of the Company and pursuant to its directions during the course of my employment, any Company Confidential Information. Confidential Information means information concerning the Company and its business that is not generally known outside the Company. Confidential Information includes: (i) trade secrets; (ii) intellectual property; (iii) the Company's methods of operation and Company processes; (iv) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (v) information on customers or potential customers, including customer's names, sales records, prices, and other terms of sales and Company cost information; (vi) Company personnel data; (vii) Company business plans, marketing plans, financial data and projections; and (viii) information received in confidence by the Company from third parties. Information regarding products or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall not be deemed generally known until such broader use is actually commercially implemented.

2.  I agree that during my employment and for a period of two years following my termination of employment for any reason, I will not hire, recruit, solicit or induce, or cause, allow, permit or aid others to hire, recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company who possesses Confidential Information of the Company to terminate his/her employment with the Company and/or to seek employment with my new or prospective employer, or any other company.

3.  I agree that during my employment and for a period of two years following the termination of my employment for any reason, I will not engage in activities which are entirely or in part the same as or similar to activities in which I engaged at any time during the two years preceding termination of my employment, for any person, company or entity in connection with products, services or technological developments (existing or planned) that are entirely or in part the same as, similar to, or competitive with, any products, services or technological developments (existing or planned) on which I worked at any time during the two years preceding the termination of my employment. This paragraph applies in the countries in which I have physically been present performing work for the Company at any time during the two years preceding termination of my employment.

4.  I agree that during my employment and for a period of two years following the termination of my employment for any reason, I will not, directly or indirectly, on behalf of myself or any other person, company or entity, solicit or participate in soliciting, products or services competitive with or similar to products or services offered by, manufactured by, designed by or distributed by the Company to any person, company or entity which was a customer or potential customer for such products or services and with which I had direct or indirect contact regarding those products or services or about which I learned Confidential Information at any time during the two years prior to my termination of employment with the Company.

5.  I agree that during my employment and for a period of two years following the termination of my employment for any reason, I will not directly or indirectly, in any capacity, provide products or services competitive with or similar to products or services offered by the Company to any person, company or entity which was a customer for such products or services and with which customer I had direct or indirect contact regarding those products or services or about which customer I learned Confidential Information at any time during the two years prior to termination of my employment with the Company.

R3 Award Document                                                                 Page 6 of 7

6.  I agree that by accepting the Covered Options, if I violate the terms of paragraphs 1 through and including 5 of this Agreement, then, in addition to any other remedies available in law and/or equity, all of my vested and unvested Covered Options will terminate and no longer be exercisable, and for all Covered Options exercised within two years prior to the termination of my employment for any reason or anytime after termination of my employment for any reason, I will immediately pay to the Company the difference between the exercise price on the date of grant as reflected in the Award Document for the Covered Options and the market price of the Covered Options on the date of exercise (the "spread").

7.  The requirements of this agreement can be waived or modified only upon the prior written consent of Motorola, Inc. I acknowledge that the promises in this Agreement, not any employment of or services performed by me in the course and scope of that employment, are the sole consideration for the Covered Options. I agree the Company shall have the right to assign this Agreement which shall not affect the validity or enforceability of this Agreement. This Agreement shall inure to the benefit of the Company assigns and successors.

8.  I agree that during my employment and for a period of two years following the termination of my employment for any reason, I will immediately inform the Company of (i) the identity of my new employer (or the nature of any start-up business, consulting arrangements or self-employment), (ii) my new title, and (iii) my job duties and responsibilities. I hereby authorize the Company to provide a copy of this Agreement to my new employer. I further agree to provide information to the Company as may from time to time be requested in order to determine my compliance with the terms of this Agreement.

9.  I acknowledge that the harm caused to the Company by the breach or anticipated breach of paragraphs 1, 2, 3, 4, and/or 5 of this Agreement will be irreparable and I agree the Company may obtain injunctive relief against me in addition to and cumulative with any other legal or equitable rights and remedies the Company may have pursuant to this Agreement, any other agreements between me and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. I agree that any interim or final equitable relief entered by a court of competent jurisdiction, as specified in paragraph 12 below, will, at the request of the Company, be entered on consent and enforced by any such court having jurisdiction over me. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

10. With respect to the subject matter hereof, this Agreement is my entire agreement with the Company. No waiver of any breach of any provision of this Agreement by the Company shall be construed to be a waiver of any succeeding breach or as a modification of such provision. The provisions of this Agreement shall be severable and in the event that any provision of this Agreement shall be found by any court as specified in paragraph 12 below to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. I also agree that the court may modify any invalid, overbroad or unenforceable term of this Agreement so that such term, as modified, is valid and enforceable under applicable law. Further, I affirmatively state that I have not, will not and cannot rely on any representations not expressly made herein.

11. I accept the terms of this Agreement and the above option(s) to purchase shares of the Common Stock of the Company, subject to the terms of this Agreement, the 2006 Plan, and any Award Document issued pursuant thereto. I am familiar with the 2006 Plan and agree to be bound by it to the extent applicable, as well as by the actions of the Company's Board of Directors or any committee thereof.

12. I agree that this Agreement and the 2006 Plan, and any Award Document issued pursuant thereto, together constitute an agreement between the Company and me. I further agree that this Agreement is governed by the laws of Illinois, without giving effect to any state's principles of Conflicts of Laws, and any legal action related to this Agreement shall be brought only in a federal or state court located in Illinois, USA.

I accept the jurisdiction of these courts and consent to service of process from said courts solely for legal actions related to this Agreement and the Covered Options.

(End of the Consideration Agreement)

**The recipient has accepted the terms of the Agreement on June 18, 2006**

R3 Award Document                                                          Page 1 of 8

**How to use this document**

The first thing you will see on this website is your Restricted Stock Unit ("RSU") Award Document ("Award Document"). This shows the grant date at the top of the first page and describes the terms of the Award. After reviewing the Award Document, you are required to "electronically sign" the Award Document as a condition of the grant.

In other words, the RSUs will not become yours unless you sign the Award Agreement within 30 days of the date of your email notification for this RSU grant.

At the bottom of the Award Document, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the Award Document will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," the RSUs will become yours. By accepting, all the terms of the Award Document will apply and the Award Document will be a binding contract between you and Motorola. If you "Reject," the RSUs will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this RSU grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the RSUs permanently.

If you "Accept" the Award Document and thus receive the RSUs, you will be able to view the Award Document on the website in the future. Even so, we strongly recommend that you print out a hard copy of the Award Document for your records. If you "Reject" the Award Document or do nothing and thus forfeit the RSUs, on the 31st day after the date of your email notification you will lose the ability to access the information on the website regrding these RSUs. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

Motorola Confidential Proprietary

(Beginning of the Award Document)

# RESTRICTED STOCK UNIT AWARD AGREEMENT

This Restricted Stock Units Award (the "Award") is made this March 09, 2007 ("Date of Grant"), by Motorola, Inc. (the "Company" or "Motorola") to Michael Fenger (the "Grantee").

WHEREAS, Grantee is receiving the Award under the Motorola Omnibus Incentive Plan of 2006, as amended (the "2006 Incentive Plan");

WHEREAS, the Award is being made as a special grant of Motorola restricted stock units authorized by the Board of Directors and the Board's Compensation and Leadership Committee (the "Compensation Committee"); and

WHEREAS, it is a condition to Grantee receiving the Award that Grantee electronically accept the terms, conditions and Restrictions applicable to the restricted stock units as set forth in this agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the Company hereby awards restricted stock units to Grantee on the following terms and conditions:

1.  **Award of Restricted Stock Units** The Company hereby awards to Grantee a total of Fifteen Thousand(15,000) Motorola restricted stock Units (the " Units") subject to the terms and conditions set forth below. All Awards shall be paid in whole shares of Motorola Common Stock ("Common Stock"); no fractional shares shall be credited or delivered to Grantee.

2.  **Restrictions.** The Units are being awarded to Grantee subject to the transfer and forfeiture conditions set forth below (the "Restrictions") which shall lapse, if at all, as described in Section 3 below. For purposes of this Award, the term Units includes any additional Units granted to the Grantee with respect to Units, still subject to the Restrictions.

    a.  Grantee may not directly or indirectly, by operation of law or otherwise, voluntarily or involuntarily, sell, assign, pledge, encumber, charge or otherwise transfer any of the Units still subject to Restrictions. The Units shall be forfeited if Grantee violates or attempts to violate these transfer Restrictions. Motorola shall have the right to assign this Agreement, which shall not affect the validity or enforceability of this Agreement. This Agreement shall inure to the benefit of assigns and successors of Motorola.

    b.  Any Units still subject to the Restrictions shall be (x) automatically forfeited upon the Grantee's termination of employment with Motorola or a Subsidiary for any reason other than death, Total and Permanent Disability, or Involuntary Termination due to (i) a Divestiture or (ii) for a reason other than for Serious Misconduct, and (y) at the discretion of the Compensation Committee forfeited, if the Grantee is not an appointed vice president or officer of Motorola at the end of the "Restriction Period" as defined below. For purposes of this Agreement, a "Subsidiary" is any corporation or other entity in which a 50 percent or greater interest is held directly or indirectly by Motorola and which is consolidated for financial reporting purposes. Total and Permanent Disability is defined in Section 3(a).

    c.  If Grantee is a vice president or elected officer on the date of the Award, or has been approved to become a vice president or elected officer on the date of the Award, and Grantee engages in any of the following conduct, in addition to all remedies in law and/or equity available to the Company or any Subsidiary, Grantee shall forfeit all restricted stock units under the Award whose Restrictions have not lapsed, and, for all restricted stock units under the Award whose Restrictions have lapsed, Grantee shall immediately repay to the Company the Fair Market Value (as defined in paragraph 7 below) of Motorola Common Stock ("Common Stock") on the date(s) such Restrictions lapsed, without regard to any taxes that may have been deducted from such amount. For purposes of subparagraphs (i) through and including (iii) below, "Company" or "Motorola" shall mean Motorola Inc. and/or any of its Subsidiaries:

        i.  During the course of Grantee's employment and thereafter, Grantee uses or discloses, except on behalf of the Company and pursuant to the Company's directions, any Company Confidential Information. "Confidential Information" means information concerning the Company and its business that is not generally known outside the Company, and includes (A) trade secrets; (B) intellectual property; (C) the Company's methods of operation and Company processes; (D) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (E) information on customers or potential customers, including customers' names, sales records, prices, and other terms of sales and Company cost information; (F) Company personnel data; (G) Company business plans, marketing plans, financial data and

projections; and (H) information received in confidence by the Company from third parties. Information regarding products, services or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall be deemed not generally known until such broader use is actually commercially implemented; and/or

ii.    During Grantee's employment and for a period of one year following the termination of Grantee's employment for any reason, Grantee hires, recruits, solicits or induces, or causes, allows, permits or aids others to hire, recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company who possesses Confidential Information of the Company to terminate his/her employment with the Company and/or to seek employment with Grantee's new or prospective employer, or any other company; and/or

iii.    During Grantee's employment and for a period of one year following the termination of Grantee's employment for any reason Grantee, directly or indirectly, on behalf of Grantee or any other person, company or entity, solicits or participates in soliciting, products or services competitive with or similar to products or services offered by, manufactured by, designed by or distributed by the Company to any person, company or entity which was a customer or potential customer for such products or services and with which Grantee had direct or indirect contact regarding those products or services or about which Grantee learned Confidential Information at any time during the two years prior to Grantee's termination of employment with the Company.

d.    If Grantee is not a vice president or elected officer on the date of the Award, or has not been approved to become a vice president or elected officer on the date of the Award, and Grantee engages in any of the conduct outlined in paragraph 2(c)(i) or (ii) above, in addition, to all remedies in law and/or equity available to the Company or any Subsidiary, Grantee shall forfeit all restricted stock units under the Award whose Restrictions have not lapsed, and, for all restricted stock units under the Award whose Restrictions have lapsed, Grantee shall immediately pay to the Company the Fair Market Value (as defined in paragraph 7 below) of Motorola Common Stock ("Common Stock") on the date(s) such Restrictions lapsed, without regard to any taxes that may have been deducted from such amount. For purposes of paragraphs 2(c)(i) and (ii) above, "Company" or "Motorola" shall mean Motorola, Inc. and/or any of its Subsidiaries.

e.    The Company will not be obligated to pay Grantee any consideration whatsoever for forfeited Units.

3.    **Lapse of Restrictions.**

a.    Except as set forth in Section 3(b) below, the Restrictions applicable to the Units shall lapse, as long as the Units have not been forfeited as described in Section 2 above, as follows:

i.    Two ( 2 ) years from the Date of Grant (the "Restricted Period");

ii.    If a Change in Control of the Company occurs and the successor corporation (or parent thereof) does not assume this Award or replace it with a comparable award; provided, further, that with respect to any Award that is assumed or replaced, such assumed or replaced awards shall provide that the Restrictions shall lapse for any Participant that is involuntarily terminated (for a reason other than "Cause") or quits for "Good Reason" within 24 months of the Change in Control. For purposes of this paragraph, the terms "Change in Control", "Cause" and "Good Reason" are defined in the 2006 Incentive Plan;

iii.    Upon termination of Grantee's employment by Motorola or a Subsidiary by Total and Permanent Disability. "Total and Permanent Disability" means for (x) U.S. employees, entitlement to long term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations; or

iv.    If the Grantee dies.

b.    In the case of Involuntary Termination due to a Divestiture or for a reason other than for Serious Misconduct before the expiration of the Restriction Period, if the Units have not been forfeited as described in Section 2 above, then the Restrictions shall lapse on a pro rata basis determined by dividing (i) the number of completed full years of service by the Grantee from the Award Date to the employee's date of termination by (ii) the total length of the Restriction Period.

c.    "Termination due to a Divestiture" for purposes of this Agreement means if Grantee accepts employment

with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary, or if Grantee remains employed by a Subsidiary that is sold or whose shares are distributed to the Motorola stockholders in a spin-off or similar transaction (a "Divestiture").

d.   "Serious Misconduct" for purposes of this Agreement means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

e.   If, during the Restriction Period, the Grantee takes a Leave of Absence from Motorola or a Subsidiary, the Units will continue to be subject to this Agreement. If the Restriction Period expires while the Grantee is on a Leave of Absence the Grantee will be entitled to the Units even if the Grantee has not returned to active employment. "Leave of Absence" means an approved leave of absence from Motorola or a Subsidiary that is not a termination of employment, as determined by Motorola.

f.   To the extent the Restrictions lapse under this Section 3 with respect to the Units, they will be free of the terms and conditions of this Award (other than Section 2(c)).

4.   **Adjustments.**
If the number of outstanding shares of Common Stock is changed as a result of a stock split or the like without additional consideration to the Company, the number of Units subject to this Award shall be adjusted to correspond to the change in the outstanding shares of Common Stock.

5.   **Dividends.**
No dividends (or dividend equivalents) shall be paid with respect to Units credited to the Grantee's account.

6.   **Delivery of Certificates or Equivalent.**
Upon the lapse of Restrictions applicable to the Units, the Company shall, at its election, either (i) deliver to the Grantee a certificate representing a number of shares of Common Stock equal to the number of Units upon which such Restrictions have lapsed, or (ii) establish a brokerage account for the Grantee and credit to that account the number of shares of Common Stock of the Company equal to the number of Units upon which such Restrictions have lapsed.

7.   **Withholding Taxes.**
The Company is entitled to withhold applicable taxes for the respective tax jurisdiction attributable to this Award or any payment made in connection with the Units. Grantee may satisfy any minimum withholding obligation by electing to have the plan administrator retain shares of Common Stock deliverable in connection with the Units having a Fair Market Value on the date the Restrictions applicable to the Units lapse equal to the amount to be withheld. "Fair Market Value" for this purpose shall be the closing price for a share of Common Stock on the day the Restrictions applicable to the Units lapse as reported for the New York Stock Exchange- Composite Transactions in the Wall Street Journal, Midwest edition.

8.   **Voting and Other Rights.**

a.   Grantee shall have no rights as a stockholder of the Company in respect of the Units, including the right to vote and to receive cash dividends and other distributions until delivery of certificates representing shares of Common Stock in satisfaction of the Units.

b.   The grant of Units does not confer upon Grantee any right to continue in the employ of the Company or a Subsidiary or to interfere with the right of the Company or a Subsidiary, to terminate Grantee's employment at any time.

9.   **Agreement Following Termination of Employment.**
Grantee agrees that upon termination of employment with Motorola or a Subsidiary, Grantee will immediately inform Motorola of (a) the identity of any new employer (or the nature of any start-up business or self-employment), (b) Grantee's new title, and (c) Grantee's job duties and responsibilities. Grantee hereby authorizes Motorola or a Subsidiary to provide a copy of this Award Document to Grantee's new employer. Grantee further agrees to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine his/her compliance with the terms hereof.

10.  **Consent to Transfer Personal Data.**
By accepting this award, Grantee voluntarily acknowledges and consents to the collection, use, processing and transfer of personal data as described in this paragraph. Grantee is not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect Grantee's ability to participate in the Plan. Motorola, its Subsidiaries and Grantee's employer hold certain personal information about the Grantee, that may include his/her name, home address and telephone number, date of birth, social security number or other employee identification number, salary grade, hire data, salary, nationality,

job title, any shares of stock held in Motorola, or details of all restricted stock units or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data"). Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of Grantee's participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. Grantee authorizes them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing Grantee's participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on the Grantee's behalf to a broker or other third party with whom the Grantee may elect to deposit any shares of stock acquired pursuant to the Plan. Grantee may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing consent may affect the Grantee's ability to participate in the Plan.

11. **Nature of Award.**
By accepting this Award Agreement, the Grantee acknowledges his or her understanding that the grant of Units under this Award Agreement is completely at the discretion of Motorola, and that Motorola's decision to make this Award in no way implies that similar awards may be granted in the future or that Grantee has any guarantee of future employment. Nor shall this or any such grant interfere with Grantee's right or the Company's right to terminate such employment relationship at any time, with or without cause, to the extent permitted by applicable laws and any enforceable agreement between Grantee and the Company. In addition, the Grantee hereby acknowledges that he or she has entered into employment with Motorola or a Subsidiary upon terms that did not include this Award or similar awards, that his or her decision to continue employment is not dependent on an expectation of this Award or similar awards, and that any amount received under this Award is considered an amount in addition to that which the Grantee expects to be paid for the performance of his or her services. Grantee's acceptance of this Award is voluntary. The Award is not part of normal or expected compensation for purposes of calculating any severance, resignation, redundancy, end of service payments, bonuses, long-service awards, pension, or retirement benefits or similar payments, notwithstanding any provision of any compensation, insurance agreement or benefit plan to the contrary.

12. **Remedies for Breach.**
Grantee hereby acknowledges that the harm caused to the Company by the breach or anticipated breach of paragraphs 2(c)(i), (ii) and/or (iii) of this Agreement will be irreparable and further agrees the Company may obtain injunctive relief against the Grantee in addition to and cumulative with any other legal or equitable rights and remedies the Company may have pursuant to this Agreement, any other agreements between the Grantee and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. Grantee agrees that any interim or final equitable relief entered by a court of competent jurisdiction, as specified in paragraph 15 below, will, at the request of the Company, be entered on consent and enforced by any such court having jurisdiction over the Grantee. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

13. **Acknowledgements.**
With respect to the subject matter of paragraphs 2(c)(i), (ii), and (iii), and paragraphs 12 and 15 hereof, this Agreement is the entire agreement with the Company. No waiver of any breach of any provision of this Agreement by the Company shall be construed to be a waiver of any succeeding breach or as a modification of such provision. The provisions of this Agreement shall be severable and in the event that any provision of this Agreement shall be found by any court as specified in paragraph 15 below to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. Grantee hereby agrees that the court may modify any invalid, overbroad or unenforceable term of this Agreement so that such term, as modified, is valid and enforceable under applicable law. Further, by accepting any Award under this Agreement, Grantee affirmatively states that (s)he has not, will not and cannot rely on any representations not expressly made herein.

14. **Funding.**
No assets or shares of Common Stock shall be segregated or earmarked by the Company in respect of any Units awarded hereunder. The grant of Units hereunder shall not constitute a trust and shall be solely for the purpose of recording an unsecured contractual obligation of the Company.

15. **Governing Law.**
All questions concerning the construction, validity and interpretation of this Award shall be governed by and construed according to the law of the State of Illinois without regard to any state's conflicts of law principles. Any disputes regarding this Award or Agreement shall be brought only in the state or federal courts of Illinois.

R3 Award Document

16. **Waiver.**
The failure of the Company to enforce at any time any provision of this Award shall in no way be construed to be a waiver of such provision or any other provision hereof.

17. **Actions by the Compensation Committee**
The Committee may delegate its authority to administer this Agreement. The actions and determinations of the Compensation Committee or its delegate shall be binding upon the parties.

18. **Acceptance of Terms and Conditions.**
By electronically accepting this Award within 30 days after the date of the electronic mail notification by the Company to Grantee of the grant of this Award ("Email Notification Date"), Grantee agrees to be bound by the foregoing terms and conditions, the 2006 Incentive Plan and any and all rules and regulations established by Motorola in connection with awards issued under the 2006 Incentive Plan. If Grantee does not electronically accept this Award within 30 days of the Email Notification Date, Grantee will not be entitled to the Units.

19. **Plan Documents.**
The 2006 Incentive Plan and the Prospectus for the 2006 Incentive Plan are available at http://myhr.mot.com/pay_finances/awards_incentives/stock_options/plan_documents.jsp or from Global Rewards, 1303 East Algonquin Road, Schaumburg, IL 60196 (847) 576-7885.

Motorola Confidential Proprietary

(End of the Award Document)

R3 Award Document

**Printed: March 12, 2008**
**Grant Date: March 09, 2007**

Motorola Confidential Proprietary

(Beginning of Consideration Agreement)

Motorola Confidential Proprietary

(End of Consideration Agreement)

R3 Award Document

**The recipient has accepted the terms of the Agreement on April 16, 2007**

R3 Award Document

## How to use this document

The first thing you will see on this website is your Option Award Document. This shows the date you were notified at the top of the first page and describes most of the terms under which the options are granted. It is important to read the Award Document carefully, though it is not necessary that you sign it.

From the Award Document you will scroll down to the Stock Option Consideration Agreement ("SOCA"). Please read the SOCA carefully to help you decide whether you wish to accept its terms to receive the Option Award. After reviewing the SOCA, you are required to "sign" the SOCA as a condition of the grant. In other words, the options will not become yours unless you sign the SOCA within 30 days of the date of your email notification for this option grant.

At the bottom of the SOCA, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the SOCA will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," all the terms of the SOCA will apply and the SOCA will be a binding contract between you and Motorola. If you "Reject," the options will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this option grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the options permanently.

If you "Accept" the SOCA and thus receive the options, you will be able to view both the Award Document and the signed SOCA on the website in the future. Even so, we strongly recommend that that you print out a hard copy of the Award Document and the accepted SOCA for your records. If you "Reject" the SOCA or do nothing and thus forfeit the options, on the 31st day of the date of your email notification you will lose the ability to access any information on the website regarding these options. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

**Exhibit 8**

# MOTOROLA, INC.
## AWARD DOCUMENT
### For the
### Motorola Omnibus Incentive Plan of 2006
## Terms and Conditions Related to Employee Nonqualified Stock Options

| Name : | Michael Fenger | Expiration Date : | May 08, 2017 |
|---|---|---|---|
| Commerce ID : | 12028663 | Number of Options : | 25,000 |
| Grant Date : | May 08, 2007 | Exercise Price : | $ 17.70 (USD) |

Motorola, Inc. ("Motorola" or "the Company") is pleased to grant you options to purchase shares of Motorola's common stock under the Motorola Omnibus Incentive Plan of 2006 (the "Plan"). The number of options ("Options") awarded to you and the Exercise Price per Option, which is the Fair Market Value on the Date of Grant, are stated above. Each Option entitles you to purchase one share of Motorola's common stock on the terms described below and in the Plan.

## Vesting Schedule

| Percentage | Date |
|---|---|
| 25.00 | May 08, 2008 |
| 25.00 | May 08, 2009 |
| 25.00 | May 08, 2010 |
| 25.00 | May 08, 2011 |

## Vesting and Exercisability

You cannot exercise the Options until they have vested.

*Regular Vesting* - The Options will vest in accordance with the above schedule (subject to the other terms hereof).

*Special Vesting* - You may be subject to the Special Vesting Dates described below if your employment or service with Motorola or a Subsidiary (as defined below) terminates.

*Exercisability* - You may exercise Options at any time after they vest and before they expire as described below.

### Expiration

All Options expire on the earlier of (1) the Date of Expiration as stated above or (2) any of the Special Expiration Dates described below. Once an Option expires, you no longer have the right to exercise it.

### Special Vesting Dates and Special Expiration Dates

There are events that cause your Options to vest sooner than the Regular Vesting schedule discussed above or to expire sooner than the Date of Expiration as stated above. Those events are as follows:

*Disability* - If your employment or service with Motorola or a Subsidiary is terminated because of your Total and Permanent Disability (as defined below), Options that are not vested will automatically become fully vested upon your termination of employment or service. All your Options will then expire on the earlier of the first anniversary of your termination of employment or service because of your Total and Permanent Disability or the Date of Expiration stated above. Until that time, the Options will be exercisable by you or your guardian or legal representative.

*Death* - If your employment or service with Motorola or a Subsidiary is terminated because of your death, Options that are not vested will automatically become fully vested upon your death. All your Options will then expire on the earlier of the first anniversary of your death or the Date of Expiration stated above. Until that time, with written proof of death and inheritance, the Options will be exercisable by your legal representative, legatees or distributees.

*Change In Control* - If a "Change in Control" of the Company occurs, and the successor corporation does not assume these Options or replace them with options that are at least comparable to these Options, then: (1) all of your unvested Options will be fully vested and (2) all of your Options will be exercisable until the Date of Expiration set forth above.

Further, with respect to any Options that are assumed or replaced as described in the preceding paragraph, such assumed or replaced options shall provide that they will be fully vested and exercisable until the Date of Expiration set forth above if you are involuntarily terminated (for a reason other than "Cause") or if you quit for "Good Reason" within 24

R3 Award Document

months of the Change in Control. For purposes of this paragraph, the terms "Change in Control", "Cause" and "Good Reason" are defined in the Plan.

*Termination of Employment or Service Because of Serious Misconduct* - If Motorola or a Subsidiary terminates your employment or service because of Serious Misconduct (as defined below) all of your Options (vested and unvested) expire upon your termination.

*Change in Employment in Connection with a Divestiture* - If you accept employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary, or if you remain employed by a Subsidiary that is sold or whose shares are distributed to the Motorola stockholders in a spin-off or similar transaction (a "Divestiture"), all of your unvested Options will automatically expire upon termination of your employment with Motorola, and all of your vested but not yet exercised Options will expire on the earlier of (i) 90 days after such Divestiture or (ii) the Date of Expiration stated above.

*Termination of Employment or Service by Motorola or a Subsidiary Other than for Serious Misconduct or a Divestiture* - If Motorola or a Subsidiary on its initiative, terminates your employment or service other than for Serious Misconduct or a Divestiture, all of your unvested Options will automatically expire upon termination and all of your vested but not yet exercised Options will expire on the earlier of (i) 90 days after your termination of employment or (ii) the Date of Expiration stated above.

*Termination of Employment or Service for any Other Reason than Described Above* - If your employment or service with Motorola or a Subsidiary terminates for any reason other than that described above, including voluntary resignation of your employment or service, all of your unvested Options will automatically expire upon termination of your employment or service and all of your vested but not yet exercised Options will expire on the earlier of (i) the date ninety (90) days after the date of termination of your employment or service or (ii) the Date of Expiration stated above.

### Leave of Absence/Temporary Layoff

If you take a Leave of Absence from Motorola or a Subsidiary that your employer has approved in writing in accordance with your employer's Leave of Absence Policy and which does not constitute a termination of employment as determined by Motorola, or you are placed on Temporary Layoff (as defined below) by Motorola or a Subsidiary the following will apply:

*Vesting of Options* - Options will continue to vest in accordance with the vesting schedule set forth above.

*Exercising Options* - You may exercise Options that are vested or that vest during the Leave of Absence or Temporary Layoff.

*Effect of Termination of Employment or Service* - If your employment or service is terminated during the Leave of Absence or Temporary Layoff, the treatment of your Options will be determined as described under "Special Vesting Dates and Special Expiration Dates" above.

### Other Terms

*Method of Exercising* - You must follow the procedures for exercising options established by Motorola from time to time. At the time of exercise, you must pay the Exercise Price for all of the Options being exercised and any taxes that are required to be withheld by Motorola or a Subsidiary in connection with the exercise. Options may not be exercised for less than 50 shares unless the number of shares represented by the Option is less than 50 shares, in which case the Option must be exercised for the remaining amount.

*Transferability* - Unless the Committee provides, Options are not transferable other than by will or the laws of descent and distribution.

*Tax Withholding* - Motorola or a Subsidiary is entitled to withhold an amount equal to the required minimum statutory withholding taxes for the respective tax jurisdictions attributable to any share of common stock deliverable in connection with the exercise of the Options. You may satisfy any minimum withholding obligation and any additional withholding, if desired, by electing to have the plan administrator retain Option shares having a Fair Market Value on the date of exercise equal to the amount to be withheld.

### Definition of Terms

If a term is used but not defined, it has the meaning given such term in the Plan. "Confidential Information" means information concerning the Company and its business that is not generally known outside the Company, and includes (A) trade secrets; (B) intellectual property; (C) the Company's methods of operation and Company processes; (D) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (E) information on customers or potential customers, including customers' names, sales records, prices, and other terms of sales and Company cost information; (F) Company personnel data; (G) Company business plans, marketing plans, financial data and projections; and (H) information received in confidence by the

Company from third parties. Information regarding products, services or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall be deemed generally known until such broader use is actually commercially implemented.

"Fair Market Value" is the closing price for a share of Motorola common stock on the date of grant or date of exercise, whichever is applicable. The official source for the closing price is the New York Stock Exchange Composite Transaction as reported in the Wall Street Journal, Midwest edition.

"Serious Misconduct" means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

"Subsidiary" means an entity of which Motorola owns directly or indirectly at least 50% and that Motorola consolidates for financial reporting purposes.

"Total and Permanent Disability" means for (x) U.S. employees, entitlement to long-term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations.

"Temporary Layoff" means a layoff or redundancy that is communicated as being for a period of up to twelve months and as including a right to recall under defined circumstances.

### Consent to Transfer Personal Data

By accepting this award, you voluntarily acknowledge and consent to the collection, use, processing and transfer of personal data as described in this paragraph. You are not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect your ability to participate in the Plan. Motorola, its Subsidiaries and your employer hold certain personal information about you, that may include your name, home address and telephone number, date of birth, social security number or other employee identification number, salary, salary grade, hire date, nationality, job title, any shares of stock held in Motorola, or details of all options or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data"). Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of your participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. You authorize them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing your participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on your behalf to a broker or other third party with whom you may elect to deposit any shares of stock acquired pursuant to the Plan. You may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing your consent may affect your ability to participate in the Plan.

### Acknowledgement of Discretionary Nature of the Plan; No Vested Rights

You acknowledge and agree that the Plan is discretionary in nature and limited in duration, and may be amended, cancelled, or terminated by Motorola or a Subsidiary, in its sole discretion, at any time. The grant of awards under the Plan is a one-time benefit and does not create any contractual or other right to receive an award in the future or to future employment. Nor shall this or any such grant interfere with your right or the Company's right to terminate such employment relationship at any time, with or without cause, to the extent permitted by applicable laws and any enforceable agreement between you and the Company. Future grants, if any, will be at the sole discretion of Motorola, including, but not limited to, the timing of any grant, the amount of the award, vesting provisions, and the exercise price.

### No Relation to Other Benefits/Termination Indemnities

Your acceptance of this award and participation under the Plan is voluntary. The value of your stock option awarded herein is an extraordinary item of compensation outside the scope of your employment contract, if any. As such, the stock option is not part of normal or expected compensation for purposes of calculating any severance, resignation, redundancy, end of service payments, bonuses, long-service awards, pension, or retirement benefits or similar payments, notwithstanding any provision of any compensation, insurance agreement or benefit plan to the contrary.

### Agreement Following Termination of Employment

As a further condition of accepting the Options, you acknowledge and agree that for a period of one year following your termination of employment or service, you will not hire, recruit, solicit or induce, or cause, allow, permit or aid others to hire, recruit, solicit or induce, or to communicate in support of those activities, any employee of Motorola or a Subsidiary who possesses Confidential Information of Motorola or a Subsidiary to terminate his/her employment with Motorola or a Subsidiary and/or to seek employment with your new or prospective employer, or any other company.

You agree that upon termination of employment with Motorola or a Subsidiary, and for a period of one year thereafter, you will immediately inform Motorola of (i) the identity of your new employer (or the nature of any start-up business or self-employment), (ii) your new title, and (iii) your job duties and responsibilities. You hereby authorize Motorola or a Subsidiary to provide a copy of this Award Document to your new employer. You further agree to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine your compliance with the terms hereof.

### Substitute Stock Appreciation Right

Motorola reserves the right to substitute a Stock Appreciation Right for your Option in the event certain changes are made in the accounting treatment of stock options. Any substitute Stock Appreciation Right shall be applicable to the same number of shares as your Option and shall have the same Date of Expiration, Exercise Price, and other terms and conditions. Any substitute Stock Appreciation Right may be settled only in common stock.

### Acceptance of Terms and Conditions

By accepting the Options, you agree to be bound by these terms and conditions, the Plan, any and all rules and regulations established by Motorola in connection with awards issued under the Plan, and any additional covenants or promises Motorola may require as a condition of the grant.

### Other Information about Your Options and the Plan

You can find other information about options and the Plan on the Motorola website http://myhr.mot.com/pay_finances/awards_incentives/stock_options/plan_documents.jsp. If you do not have access to the website, please contact Motorola Global Rewards, 1303 E. Algonquin Road, Schaumburg, IL 60196 USA; GBLRW01@Motorola.com; 847-576-7885; for an order form to request Plan documents.

---

[x] Motorola, Inc.

**Printed: March 12, 2008**

## STOCK OPTION CONSIDERATION AGREEMENT

**Grant Date: May 08, 2007**

The following Agreement is established to protect the trade secrets, intellectual property, confidential information, customer relationships and goodwill of Motorola, Inc. and each of its subsidiaries (the "Company") both as defined in the Motorola Omnibus Incentive Plan of 2006 (the "2006 Plan").

As consideration for the stock option(s) granted to me on the date shown above under the terms of the 2006 Plan ("the Covered Options"), and Motorola having provided me with Confidential Information as a Motorola appointed vice president or elected officer, I agree to the following:

1. I agree that during the course of my employment and thereafter, I will not use or disclose, except on behalf of the Company and pursuant to its directions, any Company Confidential Information. Confidential Information means information concerning the Company and its business that is not generally known outside the Company. Confidential Information includes: (i) trade secrets; (ii) intellectual property; (iii) the Company's methods of operation and Company processes; (iv) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (v) information on customers or potential customers, including customer's names, sales records, prices, and other terms of sales and Company cost information; (vi) Company personnel data; (vii) Company business plans, marketing plans, financial data and projections; and (viii) information received in confidence by the Company from third parties. Information regarding products or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall not be deemed generally known until such broader use is actually commercially implemented.

2. I agree that during my employment and for a period of one year following my termination of employment for any reason, I will not hire, recruit, solicit or induce, or cause, allow, permit or aid others to hire, recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company who possesses Confidential Information of the Company to terminate his/her employment with the Company and/or to seek employment with my new or prospective employer, or any other company.

3. I agree that during my employment and for a period of one year following the termination of my employment for any reason, I will not, directly or indirectly, on behalf of myself or any other person, company or entity, solicit or participate in soliciting, products or services competitive with or similar to products or services offered by, manufactured by, designed by or distributed by the Company to any person, company or entity which was a customer or potential customer for such products or services and with which I had direct or indirect contact regarding those products or services or about which I learned Confidential Information at any time during the two years prior to my termination of employment with the Company.

4. I agree that by accepting the Covered Options, if I violate the terms of paragraphs 1 through and including 3 of this Agreement, then, in addition to any other remedies available in law and/or equity, all of my vested and unvested

R3 Award Document

Covered Options will terminate and no longer be exercisable, and for all Covered Options exercised within one year prior to the termination of my employment for any reason or anytime after termination of my employment for any reason, I will immediately pay to the Company the difference between the exercise price on the date of grant as reflected in the Award Document for the Covered Options and the market price of the Covered Options on the date of exercise (the "spread").

5. The requirements of this agreement can be waived or modified only upon the prior written consent of Motorola, Inc. I acknowledge that the promises in this Agreement, not any employment of or services performed by me in the course and scope of that employment, are the sole consideration for the Covered Options. I agree the Company shall have the right to assign this Agreement which shall not affect the validity or enforceability of this Agreement. This Agreement shall inure to the benefit of the Company assigns and successors.

6. I agree that during my employment and for a period of one year following the termination of my employment for any reason, I will immediately inform the Company of (i) the identity of my new employer (or the nature of any start-up business, consulting arrangements or self-employment), (ii) my new title, and (iii) my job duties and responsibilities. I hereby authorize the Company to provide a copy of this Agreement to my new employer. I further agree to provide information to the Company as may from time to time be requested in order to determine my compliance with the terms of this Agreement.

7. I acknowledge that the harm caused to the Company by the breach or anticipated breach of paragraphs 1, 2, and/or 3 of this Agreement will be irreparable and I agree the Company may obtain injunctive relief against me in addition to and cumulative with any other legal or equitable rights and remedies the Company may have pursuant to this Agreement, any other agreements between me and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. I agree that any interim or final equitable relief entered by a court of competent jurisdiction, as specified in paragraph 10 below, will, at the request of the Company, be entered on consent and enforced by any such court having jurisdiction over me. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

8. With respect to the Covered Options, this Agreement is my entire agreement with the Company. No waiver of any breach of any provision of this Agreement by the Company shall be construed to be a waiver of any succeeding breach or as a modification of such provision. The provisions of this Agreement shall be severable and in the event that any provision of this Agreement shall be found by any court as specified in paragraph 10 below to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. I also agree that the court may modify any invalid, overbroad or unenforceable term of this Agreement so that such term, as modified, is valid and enforceable under applicable law. Further, I affirmatively state that I have not, will not and cannot rely on any representations not expressly made herein.

9. I accept the terms of this Agreement and the above option(s) to purchase shares of the Common Stock of the Company, subject to the terms of this Agreement, the 2006 Plan, and any Award Document issued pursuant thereto. I am familiar with the 2006 Plan and agree to be bound by it to the extent applicable, as well as by the actions of the Company's Board of Directors or any committee thereof.

10. I agree that this Agreement and the 2006 Plan, and any Award Document issued pursuant thereto, together constitute an agreement between the Company and me. I further agree that this Agreement is governed by the laws of Illinois, without giving effect to any state's principles of Conflicts of Laws, and any legal action related to this Agreement shall be brought only in a federal or state court located in Illinois, USA.

*(End of the Consideration Agreement)*

**The recipient has accepted the terms of the Agreement on May 25, 2007**

R3 Award Document                                                                    Page 1 of 8

**How to use this document**

The first thing you will see on this website is your Restricted Stock Unit ("RSU") Award Document ("Award Document"). This shows the grant date at the top of the first page and describes the terms of the Award. After reviewing the Award Document, you are required to "electronically sign" the Award Document as a condition of the grant.

In other words, the RSUs will not become yours unless you sign the Award Agreement within 30 days of the date of your email notification for this RSU grant.

At the bottom of the Award Document, there is a place for you to indicate that you either "Accept" or "Reject" its terms. "Signing" and agreeing to be bound by the terms of the Award Document will be done by you when you write "Accept" in the appropriate box and confirm your choice by clicking the "Accept" button. If you write and click that you "Accept," the RSUs will become yours. By accepting, all the terms of the Award Document will apply and the Award Document will be a binding contract between you and Motorola. If you "Reject," the RSUs will revert back to Motorola and will NOT become yours. You will forfeit them permanently. If you exit this site without having marked either the "Accept" or "Reject" button, nothing will happen for the first 30 days following the date of your email notification for this RSU grant. But if you have still not taken action within 30 days of the date of your email notification, your inaction will be treated as a "Reject" and on the 31st day after the date of your email notification you will forfeit the RSUs permanently.

If you "Accept" the Award Document and thus receive the RSUs, you will be able to view the Award Document on the website in the future. Even so, we strongly recommend that you print out a hard copy of the Award Document for your records. If you "Reject" the Award Document or do nothing and thus forfeit the RSUs, on the 31st day after the date of your email notification you will lose the ability to access the information on the website regrding these RSUs. To print the Award Document, right click now. Select "Print" from the list. Select the desired printer and click "Print." (NOTE: YOU WILL NOT HAVE ACCESS TO THIS INTERNAL WEB SITE ONCE YOU LEAVE MOTOROLA.)

Motorola Confidential Proprietary

## RESTRICTED STOCK UNIT AWARD AGREEMENT

This Restricted Stock Units Award (the "Award") is made this October 16, 2007 ("Date of Grant"), by Motorola, Inc. (the "Company" or "Motorola") to Michael Fenger (the "Grantee").

WHEREAS, Grantee is receiving the Award under the Motorola Omnibus Incentive Plan of 2006, as amended (the "2006 Incentive Plan");

WHEREAS, the Award is being made as a special grant of Motorola restricted stock units authorized by the Board of Directors and the Board's Compensation and Leadership Committee (the "Compensation Committee"); and

WHEREAS, it is a condition to Grantee receiving the Award that Grantee electronically accept the terms, conditions and Restrictions applicable to the restricted stock units as set forth in this agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the Company hereby awards restricted stock units to Grantee on the following terms and conditions:

1. **Award of Restricted Stock Units** The Company hereby awards to Grantee a total of Twenty-Five Thousand (25,000) Motorola restricted stock Units (the " Units") subject to the terms and conditions set forth below. All Awards shall be paid in whole shares of Motorola Common Stock ("Common Stock"); no fractional shares shall be credited or delivered to Grantee.

2. **Restrictions.** The Units are being awarded to Grantee subject to the transfer and forfeiture conditions set forth below (the "Restrictions") which shall lapse, if at all, as described in Section 3 below. For purposes of this Award, the term Units includes any additional Units granted to the Grantee with respect to Units, still subject to the Restrictions.

   a. Grantee may not directly or indirectly, by operation of law or otherwise, voluntarily or involuntarily, sell, assign, pledge, encumber, charge or otherwise transfer any of the Units still subject to Restrictions. The Units shall be forfeited if Grantee violates or attempts to violate these transfer Restrictions. Motorola shall have the right to assign this Agreement, which shall not affect the validity or enforceability of this Agreement. This Agreement shall inure to the benefit of assigns and successors of Motorola.

   b. Any Units still subject to the Restrictions shall be (x) automatically forfeited upon the Grantee's termination of employment with Motorola or a Subsidiary for any reason other than death, Total and Permanent Disability, or Involuntary Termination due to (i) a Divestiture or (ii) for a reason other than for Serious Misconduct, and (y) at the discretion of the Compensation Committee forfeited, if the Grantee is not an appointed vice president or officer of Motorola at the end of the "Restriction Period" as defined below. For purposes of this Agreement, a "Subsidiary" is any corporation or other entity in which a 50 percent or greater interest is held directly or indirectly by Motorola and which is consolidated for financial reporting purposes. Total and Permanent Disability is defined in Section 3(a).

   c. If Grantee is a vice president or elected officer on the date of the Award, or has been approved to become a vice president or elected officer on the date of the Award, and Grantee engages in any of the following conduct, in addition to all remedies in law and/or equity available to the Company or any Subsidiary, Grantee shall forfeit all restricted stock units under the Award whose Restrictions have not lapsed, and, for all restricted stock units under the Award whose Restrictions have lapsed, Grantee shall immediately pay to the Company the Fair Market Value (as defined in paragraph 7 below) of Motorola Common Stock ("Common Stock") on the date(s) such Restrictions lapsed, without regard to any taxes that may have been deducted from such amount. For purposes of subparagraphs (i) through and including (iii) below, "Company" or "Motorola" shall mean Motorola Inc. and/or any of its Subsidiaries:

      i. During the course of Grantee's employment and thereafter, Grantee uses or discloses, except on behalf of the Company and pursuant to the Company's directions, any Company Confidential Information. "Confidential Information" means information concerning the Company and its business that is not generally known outside the Company, and includes (A) trade secrets; (B) intellectual property; (C) the Company's methods of operation and Company processes; (D) information regarding the Company's present and/or future products, developments, processes and systems, including invention disclosures and patent applications; (E) information on customers or potential customers, including customers' names, sales records, prices, and other terms of sales and Company cost information; (F) Company personnel data; (G) Company business plans, marketing plans, financial data and

projections; and (H) information received in confidence by the Company from third parties. Information regarding products, services or technological innovations in development, in test marketing or being marketed or promoted in a discrete geographic region, which information the Company or one of its affiliates is considering for broader use, shall be deemed not generally known until such broader use is actually commercially implemented; and/or

    ii.   During Grantee's employment and for a period of one year following the termination of Grantee's employment for any reason, Grantee hires, recruits, solicits or induces, or causes, allows, permits or aids others to hire, recruit, solicit or induce, or to communicate in support of those activities, any employee of the Company who possesses Confidential Information of the Company to terminate his/her employment with the Company and/or to seek employment with Grantee's new or prospective employer, or any other company; and/or

    iii.   During Grantee's employment and for a period of one year following the termination of Grantee's employment for any reason Grantee, directly or indirectly, on behalf of Grantee or any other person, company or entity, solicits or participates in soliciting, products or services competitive with or similar to products or services offered by, manufactured by, designed by or distributed by the Company to any person, company or entity which was a customer or potential customer for such products or services and with which Grantee had direct or indirect contact regarding those products or services or about which Grantee learned Confidential Information at any time during the two years prior to Grantee's termination of employment with the Company.

    d.   If Grantee is not a vice president or elected officer on the date of the Award, or has not been approved to become a vice president or elected officer on the date of the Award, and Grantee engages in any of the conduct outlined in paragraph 2(c)(i) or (ii) above, in addition, to all remedies in law and/or equity available to the Company or any Subsidiary, Grantee shall forfeit all restricted stock units under the Award whose Restrictions have not lapsed, and, for all restricted stock units under the Award whose Restrictions have lapsed, Grantee shall immediately pay to the Company the Fair Market Value (as defined in paragraph 7 below) of Motorola Common Stock ("Common Stock") on the date(s) such Restrictions lapsed, without regard to any taxes that may have been deducted from such amount. For purposes of paragraphs 2(c)(i) and (ii) above, "Company" or "Motorola" shall mean Motorola, Inc. and/or any of its Subsidiaries.

    e.   The Company will not be obligated to pay Grantee any consideration whatsoever for forfeited Units.

### 3. Lapse of Restrictions.

    a.   Except as set forth in Section 3(b) below, the Restrictions applicable to the Units shall lapse, as long as the Units have not been forfeited as described in Section 2 above, as follows:

        i.   50% on April 16, 2010

        ii.   50% on October 16, 2012

        iii.   If a Change in Control of the Company occurs and the successor corporation (or parent thereof) does not assume this Award or replace it with a comparable award; provided, further, that with respect to any Award that is assumed or replaced, such assumed or replaced awards shall provide that the Restrictions shall lapse for any Participant that is involuntarily terminated (for a reason other than "Cause") or quits for "Good Reason" within 24 months of the Change in Control. For purposes of this paragraph, the terms "Change in Control", "Cause" and "Good Reason" are defined in the 2006 Incentive Plan;

        iv.   Upon termination of Grantee's employment by Motorola or a Subsidiary by Total and Permanent Disability. "Total and Permanent Disability" means for (x) U.S. employees, entitlement to long term disability benefits under the Motorola Disability Income Plan, as amended and any successor plan or a determination of a permanent and total disability under a state workers compensation statute and (y) non-U.S. employees, as established by applicable Motorola policy or as required by local regulations; or

        v.   If the Grantee dies.

    b.   In the case of Involuntary Termination due to a Divestiture or for a reason other than for Serious Misconduct before the expiration of the Restriction Period, if the Units have not been forfeited as described in Section 2 above, then the Restrictions shall lapse on a pro rata basis determined by dividing (i) the number of completed full years of service by the Grantee from the Award Date to the employee's date of termination by (ii) the total length of the Restriction Period.

   c.  "Termination due to a Divestiture" for purposes of this Agreement means if Grantee accepts employment with another company in direct connection with the sale, lease, outsourcing arrangement or any other type of asset transfer or transfer of any portion of a facility or any portion of a discrete organizational unit of Motorola or a Subsidiary, or if Grantee remains employed by a Subsidiary that is sold or whose shares are distributed to the Motorola stockholders in a spin-off or similar transaction (a "Divestiture").

   d.  "Serious Misconduct" for purposes of this Agreement means any misconduct identified as a ground for termination in the Motorola Code of Business Conduct, or the human resources policies, or other written policies or procedures.

   e.  If, during the Restriction Period, the Grantee takes a Leave of Absence from Motorola or a Subsidiary, the Units will continue to be subject to this Agreement. If the Restriction Period expires while the Grantee is on a Leave of Absence the Grantee will be entitled to the Units even if the Grantee has not returned to active employment. "Leave of Absence" means an approved leave of absence from Motorola or a Subsidiary that is not a termination of employment, as determined by Motorola.

   f.  To the extent the Restrictions lapse under this Section 3 with respect to the Units, they will be free of the terms and conditions of this Award (other than Section 2(c)).

4.  **Adjustments.**
If the number of outstanding shares of Common Stock is changed as a result of a stock split or the like without additional consideration to the Company, the number of Units subject to this Award shall be adjusted to correspond to the change in the outstanding shares of Common Stock.

5.  **Dividends.**
No dividends (or dividend equivalents) shall be paid with respect to Units credited to the Grantee's account.

6.  **Delivery of Certificates or Equivalent.**
Upon the lapse of Restrictions applicable to the Units, the Company shall, at its election, either (i) deliver to the Grantee a certificate representing a number of shares of Common Stock equal to the number of Units upon which such Restrictions have lapsed, or (ii) establish a brokerage account for the Grantee and credit to that account the number of shares of Common Stock of the Company equal to the number of Units upon which such Restrictions have lapsed.

7.  **Withholding Taxes.**
The Company is entitled to withhold applicable taxes for the respective tax jurisdiction attributable to this Award or any payment made in connection with the Units. Grantee may satisfy any minimum withholding obligation by electing to have the plan administrator retain shares of Common Stock deliverable in connection with the Units having a Fair Market Value on the date the Restrictions applicable to the Units lapse equal to the amount to be withheld. "Fair Market Value" for this purpose shall be the closing price for a share of Common Stock on the day the Restrictions applicable to the Units lapse as reported for the New York Stock Exchange- Composite Transactions in the Wall Street Journal, Midwest edition.

8.  **Voting and Other Rights.**

   a.  Grantee shall have no rights as a stockholder of the Company in respect of the Units, including the right to vote and to receive cash dividends and other distributions until delivery of certificates representing shares of Common Stock in satisfaction of the Units.

   b.  The grant of Units does not confer upon Grantee any right to continue in the employ of the Company or a Subsidiary or to interfere with the right of the Company or a Subsidiary, to terminate Grantee's employment at any time.

9.  **Agreement Following Termination of Employment.**
Grantee agrees that upon termination of employment with Motorola or a Subsidiary, Grantee will immediately inform Motorola of (a) the identity of any new employer (or the nature of any start-up business or self-employment), (b) Grantee's new title, and (c) Grantee's job duties and responsibilities. Grantee hereby authorizes Motorola or a Subsidiary to provide a copy of this Award Document to Grantee's new employer. Grantee further agrees to provide information to Motorola or a Subsidiary as may from time to time be requested in order to determine his/her compliance with the terms hereof.

10.  **Consent to Transfer Personal Data.**
By accepting this award, Grantee voluntarily acknowledges and consents to the collection, use, processing and transfer of personal data as described in this paragraph. Grantee is not obliged to consent to such collection, use, processing and transfer of personal data. However, failure to provide the consent may affect Grantee's ability to participate in the Plan. Motorola, its Subsidiaries and Grantee's employer hold certain personal information about the Grantee, that may include his/her name, home address and telephone number, date of

birth, social security number or other employee identification number, salary grade, hire data, salary, nationality, job title, any shares of stock held in Motorola, or details of all restricted stock units or any other entitlement to shares of stock awarded, canceled, purchased, vested, or unvested, for the purpose of managing and administering the Plan ("Data"). Motorola and/or its Subsidiaries will transfer Data amongst themselves as necessary for the purpose of implementation, administration and management of Grantee's participation in the Plan, and Motorola and/or any of its Subsidiaries may each further transfer Data to any third parties assisting Motorola in the implementation, administration and management of the Plan. These recipients may be located throughout the world, including the United States. Grantee authorizes them to receive, possess, use, retain and transfer the Data, in electronic or other form, for the purposes of implementing, administering and managing Grantee's participation in the Plan, including any requisite transfer of such Data as may be required for the administration of the Plan and/or the subsequent holding of shares of stock on the Grantee's behalf to a broker or other third party with whom the Grantee may elect to deposit any shares of stock acquired pursuant to the Plan. Grantee may, at any time, review Data, require any necessary amendments to it or withdraw the consents herein in writing by contacting Motorola; however, withdrawing consent may affect the Grantee's ability to participate in the Plan.

11. **Nature of Award.**

By accepting this Award Agreement, the Grantee acknowledges his or her understanding that the grant of Units under this Award Agreement is completely at the discretion of Motorola, and that Motorola's decision to make this Award in no way implies that similar awards may be granted in the future or that Grantee has any guarantee of future employment. Nor shall this or any such grant interfere with Grantee's right or the Company's right to terminate such employment relationship at any time, with or without cause, to the extent permitted by applicable laws and any enforceable agreement between Grantee and the Company. In addition, the Grantee hereby acknowledges that he or she has entered into employment with Motorola or a Subsidiary upon terms that did not include this Award or similar awards, that his or her decision to continue employment is not dependent on an expectation of this Award or similar awards, and that any amount received under this Award is considered an amount in addition to that which the Grantee expects to be paid for the performance of his or her services. Grantee's acceptance of this Award is voluntary. The Award is not part of normal or expected compensation for purposes of calculating any severance, resignation, redundancy, end of service payments, bonuses, long-service awards, pension, or retirement benefits or similar payments, notwithstanding any provision of any compensation, insurance agreement or benefit plan to the contrary.

12. **Remedies for Breach.**

Grantee hereby acknowledges that the harm caused to the Company by the breach or anticipated breach of paragraphs 2(c)(i), (ii) and/or (iii) of this Agreement will be irreparable and further agrees the Company may obtain injunctive relief against the Grantee in addition to and cumulative with any other legal or equitable rights and remedies the Company may have pursuant to this Agreement, any other agreements between the Grantee and the Company for the protection of the Company's Confidential Information, or law, including the recovery of liquidated damages. Grantee agrees that any interim or final equitable relief entered by a court of competent jurisdiction, as specified in paragraph 15 below, will, at the request of the Company, be entered on consent and enforced by any such court having jurisdiction over the Grantee. This relief would occur without prejudice to any rights either party may have to appeal from the proceedings that resulted in any grant of such relief.

13. **Acknowledgements.**

With respect to the subject matter of paragraphs 2(c)(i), (ii), and (iii), and paragraphs 12 and 15 hereof, this Agreement is the entire agreement with the Company. No waiver of any breach of any provision of this Agreement by the Company shall be construed to be a waiver of any succeeding breach or as a modification of such provision. The provisions of this Agreement shall be severable and in the event that any provision of this Agreement shall be found by any court as specified in paragraph 15 below to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. Grantee hereby agrees that the court may modify any invalid, overbroad or unenforceable term of this Agreement so that such term, as modified, is valid and enforceable under applicable law. Further, by accepting any Award under this Agreement, Grantee affirmatively states that (s)he has not, will not and cannot rely on any representations not expressly made herein.

14. **Funding.**

No assets or shares of Common Stock shall be segregated or earmarked by the Company in respect of any Units awarded hereunder. The grant of Units hereunder shall not constitute a trust and shall be solely for the purpose of recording an unsecured contractual obligation of the Company.

15. **Governing Law.**

All questions concerning the construction, validity and interpretation of this Award shall be governed by and construed according to the law of the State of Illinois without regard to any state's conflicts of law principles. Any

R3 Award Document

disputes regarding this Award or Agreement shall be brought only in the state or federal courts of Illinois.

16. **Waiver.**
   The failure of the Company to enforce at any time any provision of this Award shall in no way be construed to be a waiver of such provision or any other provision hereof.

17. **Actions by the Compensation Committee**
   The Committee may delegate its authority to administer this Agreement. The actions and determinations of the Compensation Committee or its delegate shall be binding upon the parties.

18. **Acceptance of Terms and Conditions.**
   By electronically accepting this Award within 30 days after the date of the electronic mail notification by the Company to Grantee of the grant of this Award ("Email Notification Date"), Grantee agrees to be bound by the foregoing terms and conditions, the 2006 Incentive Plan and any and all rules and regulations established by Motorola in connection with awards issued under the 2006 Incentive Plan. If Grantee does not electronically accept this Award within 30 days of the Email Notification Date, Grantee will not be entitled to the Units.

19. **Plan Documents.**
   The 2006 Incentive Plan and the Prospectus for the 2006 Incentive Plan are available at http://myhr.mot.com/pay_finances/awards_incentives/stock_options/plan_documents.jsp or from Global Rewards, 1303 East Algonquin Road, Schaumburg, IL 60196 (847) 576-7885.

Motorola Confidential Proprietary

(End of the Award Document)

R3 Award Document

**Printed: March 12, 2008**
**Grant Date: October 16, 2007**

Motorola Confidential Proprietary

(Beginning of Consideration Agreement)

Motorola Confidential Proprietary

(End of Consideration Agreement)

R3 Award Document

**The recipient has accepted the terms of the Agreement on November 28, 2007**

 **MOTOROLA**

## Application for Employment

Motorola Inc. is an Equal Opportunity/Affirmative Action Employer and fully complies with all applicable federal, state and/or local laws, orders and regulations. All qualified applicants will receive consideration for employment without regard to age, sex, race, color, national origin, ancestry, religion, disability, marital or veteran status.

last name: **Fenger**    first name: **Michael**    middle initial: **J**    date: **9-14-02**

street address: **17455 Shelburne Rd**    city: **Cleveland Hts**    state: **Ohio**    zip: **44118**

social security number: **REDACTED**    home phone: **(216) 397-9877**    business phone: **(216) 266-5501**

position applied for or type of work preferred

which shift do you prefer?    which location do you prefer?

Please mark the appropriate boxes:    under 18? ☐ yes ☒ no

### Personal History

Motorola has a legal obligation to employ only persons who can produce documentation that indicates their identity and authorization to work in the United States. This policy is required by the Immigration Reform and Control Act of 1986 (IRCA). The responsibility for compliance with IRCA is very important to Motorola. Therefore, in order for Motorola to determine whether you are authorized to work and are eligible for hire, please mark the "yes" or "no" box.

Do you currently have unrestricted employment authorization that will allow you to work with any employer in the United States? ☐ yes ☐ no

As part of its application process, Motorola asks each applicant whether he or she has been convicted of a felony. Conviction of a crime does not constitute an absolute bar to employment. Underlying circumstances at the time of the offense will be taken into account.

Have you ever been convicted of a felony? ☐ yes ☒ no

If yes, please explain

Have you ever worked for the Department of Defense or the U.S. Government or served in the armed forces? ☐ yes ☒ no

If yes, please provide:

dates of service    branch/department/service    highest rank held

        /    /    -    /    /

**Exhibit 10**

## Personal History

Were you referred to Motorola by one of the following?  Please check one.

☐ advertisement   ☒ referral   ☐ agency   ☐ job fair   ☐ write-in   ☐ college recruitment   ☐ other

If you previously worked at Motorola and/or its subsidiaries in any capacity (e.g., as an employee, consultant, contractor or temporary employee), please provide:

dates                     location/facility              name used                          badge number

_____/_____/_____ — _____/_____

Is there any other information that may be of value in considering your application? (Please do not include any information that may indicate your age, sex, race, color, national origin, ancestry, religion, physical or mental disability unrelated to job requirements, marital or veteran status.)

## Education

| high school (name and location) | | degree earned | field of specialty | graduate? |
|---|---|---|---|---|
| Western Reserve Academy Hudson Ohio | | GED | | ☒ yes ☐ no |
| college (name and location) | | degree earned | field of specialty | |
| Miami University, Oxford Ohio | | BA | Economics | ☒ yes ☐ no |
| graduate (name and location) | | degree earned | field of specialty | |
| | | | | ☐ yes ☐ no |
| other (name and location) | | degree earned | field of specialty | ☐ yes ☐ no |
| other (name and location) | | degree earned | field of specialty | ☐ yes ☐ no |
| | | | | ☐ yes ☐ no |

## Patents Granted or Pending

It is only necessary to list the title of such inventions and their purpose.

US Pat # 634 2766 — Power Module For High Intensity Discharge Lamp (co-inventor)

I represent that the invention identified in the _____ pages I attached hereto comprise all the unpatented inventions that I have made or conceived prior to my application for employment by Motorola; all such inventions shall be excluded from any agreement with Motorola.

If there are no such unpatented inventions to be excluded, initial here ___MJE___

## Employment Record

Give a complete record of your experience starting with your present or most recent position (attach additional sheets if necessary).

employer
> General Electric

employment dates
9/17/96 - 9/23/02

street address
> 1975 Noble Road

city
Cleveland

state
Oh

zip

starting position
> Mgt. Trainee

starting salary
29,000

present position
> General Manager - Global SupplyChain

present salary
245,000

other compensation
100,000 Bonus

present duties and responsibilities
> Responsible for all Supply Chain Activities & For the Lighting Business

reason for leaving
> Recruited Away

supervisor's name
> Jack Fish

title
COO, GE Consumer Products

phone
(216) 266 - 8986

May we contact this employer? ☒ yes ☐ no

---

employer
>

employment dates
/    /    -    /    /

street address
>

city

state        zip

starting position
>

starting salary

final position
>

final salary

other compensation

final duties and responsibilities
>

reason for leaving
>

supervisor's name
>

title

phone
(    )

May we contact this employer? ☐ yes ☐ no

**Employment Record**

employer                                                    employment dates

street address                          city                    /    /    –    /    /
                                                              state          zip

starting position                              starting salary

final position                                 final salary              other compensation

final duties and responsibilities

reason for leaving

supervisor's name              title              phone
                                                 (        )

May we contact this employer?  ☐ yes  ☐ no

---

employer                                                    employment dates

street address                          city                    /    /    –    /    /
                                                              state          zip

starting position                              starting salary

final position                                 final salary              other compensation

final duties and responsibilities

reason for leaving

supervisor's name              title              phone
                                                 (        )

May we contact this employer?  ☐ yes  ☐ no

## Professional Work References

List only persons we may contact at this time.

name
Jack Fish

title
Chief Operating Office - GECP

address

business phone
(216) 266 - 8986

name
Mike Zafirouski

title
Chief Operating Office  Motorola

address

business phone
(        )

name

title

address

business phone
(        )

name

title

address

business phone
(        )

## Motorola's Drug-Free Workforce Policy

It is Motorola's policy to employ a workforce that is drug free and to provide a workplace free from the illegal manufacture, distribution, possession and use of drugs. All candidates offered a position with Motorola must consent to and pass a drug test as a condition of employment. Motorola will maintain the confidentiality of the test results and any information a candidate furnishes in connection with the pre-employment drug testing process, in accordance with applicable law.

Consent For Drug Testing

You hereby consent to a urinalysis and/or other drug screening to determine the presence of drugs or their metabolites in your system. You also consent to the release of these tests and any information furnished in connection with the pre-employment drug testing process to Motorola, in accordance with applicable law. You hereby release and agree to hold Motorola, the collection facility, the testing laboratory and their employees and agents and the Medical Review Officer harmless from any liability to you based on the testing procedure or the reporting of the test results. You also understand that any offer of employment is contingent upon your passing this pre-employment drug test.

signature
Michael J Fenger

printed name
Michael J Fenger

date
9-14-02

Page 5

## Agreement

Read this carefully as it applies to actions Motorola may or may not take regarding your employment.

The information contained in this application is true to the best of your knowledge and belief. You understand that any misrepresentation of fact, as stated or implied, given in your application or other employment documents, interview(s) or during your employment may be sufficient reason for not hiring you and/or immediate dismissal.

You understand and agree that all information furnished in this application may be verified by Motorola or its authorized representative. You waive any right you may have to be notified by any individuals and organizations named or referred to in this application prior to the release of any employment information to Motorola.

You hereby authorize all individuals and organizations named or referred to in this application and any law enforcement organization to give Motorola all information relative to such verification. You hereby release such individuals, organizations and Motorola from any and all liability for any claim or damage resulting therefrom

You understand that, if employed by Motorola and as a condition of your employment by Motorola, you must furnish proof that you are at least 18 years old and authorized to work in the United States. In addition, you will be required to execute certain agreements with Motorola (profit sharing participation, inventions and code of conduct, copies of which are available upon request) and you may be required, at the option of Motorola, to obtain through the auspices of Motorola and at its expense, a U.S. government security clearance.

You understand that, if hired, you are required to comply with all current and amended Motorola communications regarding any rules, regulations, policies, and/or procedures, which may or may not affect your employment with Motorola. You further understand that Motorola may change and/or amend any of these items at any time and in any way without notice to you.

You understand that Motorola is not obligated to provide employment and that you are not obligated to accept employment. Nothing in this application nor in any prior or subsequent oral or written statement is intended to create any contract of employment or to create any rights in the nature of a contract of employment. This application does not bind either party for a specific period of time regarding employment. You understand that no one other than the Motorola, Inc. Executive Vice President and Director of Human Resources has any authority to enter into any agreement contrary to the foregoing. If hired, nothing in this application shall restrict your right as an employee nor the right of Motorola as an employer to terminate your employment at any time.

signature *Michal J Fonger*    witness *Laura H. Fonger*    date 9-14-02

## Non-Disclosure Agreement

In consideration of this potential employment opportunity with Motorola, I agree to the following:

1. During and after this potential employment opportunity, I will not disclose Motorola confidential information to others or use Motorola confidential information for any purpose other than evaluating employment with Motorola; 2. "Motorola Confidential Information" includes but is not limited to research and/or development projects and related data, designs, products, processes, customer and supplier lists, employee data, cost and pricing data and sales plans; 3. "Motorola Confidential Information" does not include information that I can demonstrate is known to the public without breach of a confidentiality obligation; and 4. I will not remove from Motorola premises any documents, file records, correspondence, notes or other papers (including copies) relating to the business of Motorola except with permission of an authorized Motorola representative, and in such case, I will promptly return such items to Motorola upon request.

signature *Michal J Fonger*    witness *Laura H. Fonger*    date 9-14-02

(Motorola internal use only when completed)



CODE OF
BUSINESS
CONDUCT

**Exhibit 11**

Dear Fellow Motorolan,

We have been entrusted with an ethical legacy that defines Motorola to the world. We may change everything else as we grow and prosper in the years to come, but we will not compromise our high principles and high ethics.

Sustaining our reputation and striving always to earn trust are not only the right things to do, they are essential to our business success. Consistent and faithful adherence to our *Code of Business Conduct* is what we must all do to reach these goals.

This *Code* describes the responsibilities all Motorolans share. It highlights some legal obligations, and it will help you fulfill them. But obeying the law is a minimal standard. The *Code* includes the values and beliefs that are our foundation. Foremost among these are *Uncompromising Integrity* and *Constant Respect for People*. The revised *Code* does not change our values and key beliefs, but rather extends, clarifies and emphasizes them.

Every Motorolan should be familiar with the *Code of Business Conduct*. It offers many guidelines, but it cannot make decisions for you. One of the responsibilities we share is to seek guidance from management and other internal sources when we need it. You can get help from Motorola Ethics Committees around the world.

When we look back at ourselves a decade or two from now, will we be proud of the character and values reflected in what we see? I will do my utmost to see that we are proud. I know you will, too.



Christopher B. Galvin
Chairman and Chief Executive Officer

# CODE OF BUSINESS CONDUCT

*Our Responsibility as Motorolans*

# OUR KEY BELIEFS

THE WAY WE WILL ALWAYS ACT

*Uncompromising Integrity*
*Constant Respect for People*



**Ethics&Compliance**

# CODE OF BUSINESS CONDUCT

## INTRODUCTION

*Times will change. Our products will change. Our people will change. Our customers will change. What will not change is our commitment to our key beliefs.*

### Key Beliefs

Key beliefs define who we are—as individuals and as a company. Our key beliefs have defined us for many years to each other, to our customers, our shareholders, our suppliers, our competitors, and our communities.

*Uncompromising integrity* means staying true to what we believe. We adhere to honesty, fairness and "doing the right thing" without compromise, even when circumstances make it difficult.

*Constant respect for people* means we treat others with dignity, as we would like to be treated ourselves. Constant respect applies to every individual we interact with around the world.

Each of us is expected to demonstrate these key beliefs in our work as Motorolans.

### Purpose of the Code of Business Conduct

This *Code of Business Conduct* is a guide to help Motorolans live up to Motorola's high ethical standards—and their own. It summarizes many of the laws that Motorola and all Motorolans are required to live by. The *Code* goes beyond the legal mini-mums, however, by describing the ethical values we share as Motorolans.

i

This *Code* is neither a contract nor a comprehensive manual that covers every situation Motorolans throughout the world might encounter. It is a guide that highlights key issues and identifies policies and resources to help Motorolans reach decisions that will make Motorola proud.

### Responsibility and Accountability

As Motorolans, each of us has the personal responsibility to make sure that our actions abide by this *Code of Business Conduct* and the laws that apply to our work. If you have any questions or concerns about illegal or unethical acts, check with management or the EthicsLine. Keep in mind that failure to abide by this *Code* and the law will lead to disciplinary measures appropriate to the violation, up to and including dismissal.

Each Motorolan is expected to read the entire *Code of Business Conduct*. No code can guarantee ethical behavior though. Only we can.

### Additional Responsibilities of Managers

Motorola managers are expected to lead according to our standards of ethical conduct, in both words and actions. Managers are responsible for promoting open and honest two-way communications. Managers must be positive activists and role models who show respect and consideration for each of our associates. Managers must be diligent in looking for indications that unethical or illegal conduct has occurred. If you ever have a concern about unethical or illegal activities, you are expected to take appropriate and consistent action, and inform your manager, the Law Department, or the EthicsLine.

# TABLE OF CONTENTS

**Motorolans** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
    Constant Respect . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
    Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
    Safety and Health . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**Customers and Consumers** . . . . . . . . . . . . . . . . . . . .2
    Product Quality and Safety . . . . . . . . . . . . . . . . . . . . .2
    Sales and Marketing . . . . . . . . . . . . . . . . . . . . . . . . . .2
    Customer Information . . . . . . . . . . . . . . . . . . . . . . . . .2
    Government Customers . . . . . . . . . . . . . . . . . . . . . . . .2

**Business Partners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
    Doing Business with Others . . . . . . . . . . . . . . . . . . . .3
    Purchasing Practices . . . . . . . . . . . . . . . . . . . . . . . . . .3

**Shareholders** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
    Protecting Motorola Assets . . . . . . . . . . . . . . . . . . . .4
    Proprietary Information . . . . . . . . . . . . . . . . . . . . . . .4
    Inside Information and Securities Trading . . . . . . . . . .4
    Accuracy of Company Records . . . . . . . . . . . . . . . . . .4
    Recording and Retaining Business Communications . . . . . . . . . . .4

**Competitors** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
    Competitive Information . . . . . . . . . . . . . . . . . . . . . . .5
    Fair Competition and Antitrust . . . . . . . . . . . . . . . . . .5

**Communities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
    Community Service . . . . . . . . . . . . . . . . . . . . . . . . . . .6
    Personal Community Activities . . . . . . . . . . . . . . . . . .6
    Environment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
    Communicating with External Audiences . . . . . . . . . . . . . . . .6

**Governments** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
    Compliance with the Law . . . . . . . . . . . . . . . . . . . . . .7
    Motorola Political Activities . . . . . . . . . . . . . . . . . . . .7
    Anti-Corruption Laws . . . . . . . . . . . . . . . . . . . . . . . . .7
    Crossing National Borders . . . . . . . . . . . . . . . . . . . . .7

**Conflict of Interests** . . . . . . . . . . . . . . . . . . . . . . . . . .8
    General Guidance . . . . . . . . . . . . . . . . . . . . . . . . . . .8
    Outside Employment . . . . . . . . . . . . . . . . . . . . . . . . .8
    Board Memberships . . . . . . . . . . . . . . . . . . . . . . . . . .8
    Family Members and Close Personal Relationships . . . . . . . . . . .8
    Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
    Gifts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    Entertainment . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    Travel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

**How to Get Help** . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
    Key Beliefs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
    EthicsLine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
    Reporting Concerns . . . . . . . . . . . . . . . . . . . . . . . . .11



## OUR RESPONSIBILITY TO

### Constant Respect

We will treat each other with respect and fairness at all times, just as we wish to be treated ourselves. We will value the difference of diverse individuals from around the world. Employment decisions will be based on business reasons such as qualifications, talents and achievements, and will comply with local and national employment laws.

### Harassment

Abusive, harassing or offensive conduct is unacceptable, whether verbal, physical or visual. Examples include derogatory comments based on racial or ethnic characteristics and unwelcome sexual advances. We are encouraged to speak out when a coworker's conduct makes us or others uncomfortable, and to report harassment when it occurs.

### Safety and Health

We are all responsible for maintaining a safe workplace by following safety and health rules and practices. We are responsible for immediately reporting accidents, injuries, and unsafe equipment, practices or conditions to a supervisor or other designated person. Motorola is committed to keep its workplaces free from hazards.

In order to protect the safety of all employees, each of us must report to work free from the influence of any substance that could prevent us from conducting work activities safely and effectively.

Threats or acts of violence or physical intimidation are prohibited.



OUR RESPONSIBILITY TO

### Product Quality and Safety

To maintain Motorola's valuable reputation, compliance with our quality processes and safety requirements is essential. We damage our good name when we ship products or deliver services that fail to live up to Motorola standards.

### Sales and Marketing

We will build long-term relationships with our customers by demonstrating honesty and integrity. All of our marketing and advertising will be accurate and truthful. Deliberately misleading messages, omissions of important fact, or false claims about our competitors' offerings are never acceptable.

We will only obtain business legally and ethically. Bribes or kickbacks are not acceptable. Guidance concerning customer gifts, travel and entertainment is in the *Conflict of Interest* section of this Code.

### Customer Information

We must protect customer information that is sensitive, private or confidential just as carefully as our own. Only those who have a need to know should have access to confidential information.

### Government Customers

We must take special care to comply with all legal and contractual obligations in dealing with governments. National and local governments all around the world have specific and varied procurement laws and regulations that have been established to protect the public interest. These laws generally prohibit or put strict limits on gifts, entertainment and travel offered to government officials. They also often apply to the hiring of current or recently retired officials and their families, and to any conduct that may be viewed as improperly influencing objective decision making. Many other laws strictly govern accounting and billing practices applied to the fulfillment of government contracts and subcontracts.

These laws are applicable to Motorola and all Motorolans worldwide. When Motorola uses suppliers or subcontractors to fulfill its commitments, we may also be responsible for communicating these unique governmental requirements to them. Motorolans who deal with government officials and contracts are responsible for knowing and complying with applicable laws and regulations.

## OUR RESPONSIBILITY TO

### Doing Business with Others

We will not do business with others who are likely to harm Motorola's reputation. For example, we will avoid doing business with others who intentionally and continually violate the law. These laws include, for example, local environmental, employment, safety and anti-corruption statutes. All arrangements with third parties must comply with Motorola policy and the law. We will not use a third party to perform any act prohibited by law or by the Motorola *Code of Business Conduct.*

#### Agents and Consultants

Commission rates or fees paid to dealers, distributors, agents, finders or consultants must be reasonable in relation to the value of the product or work that is actually being done. We will not pay commissions or fees that we have reason to believe will become bribes.

#### Subcontractors

Subcontractors play a vital role in the fulfillment of many of our contracts. In some cases, the subcontractor is highly visible to our customers. It is therefore very important to ensure that our subcontractors preserve and strengthen Motorola's reputation by acting consistently with our *Code of Business Conduct.*

#### Joint Ventures and Alliances

Motorola will strive to ally with companies that share our commitment to ethics. We will also work to make the standards of our joint ventures compatible with our own.

### Purchasing Practices

Purchasing decisions must be made based solely on Motorola's best interests. Suppliers win Motorola business based on product or service suitability, price, delivery and quality. Purchasing agreements should be documented and clearly identify the services or products to be provided, the basis for earning payment, and the applicable rate or fee. The amount of payment must be commensurate with the services or products provided.





OUR RESPONSIBILITY TO

### Protecting Motorola Assets

We have a responsibility to protect the Motorola assets entrusted to us from loss, damage, misuse or theft. Motorola assets, such as funds, products, or computers, may only be used for business purposes and other purposes approved by management. Motorola assets may never be used for illegal purposes.



### Proprietary Information

We will safeguard all proprietary information by marking information accordingly, keeping it secure, and limiting access to those who have a need to know in order to do their jobs. Proprietary information includes any information that is not generally known to the public and is helpful to Motorola, or would be helpful to competitors. It also includes information that suppliers and customers have entrusted to us. The obligation to preserve proprietary information continues even after employment ends.

### Inside Information and Securities Trading

Motorolans are not allowed to trade in securities or any other kind of property based on knowledge that comes from their jobs, if that information hasn't been reported publicly. It is against the laws of many countries, including the U.S., to trade or to "tip" others who might make an investment decision based on inside job information. For example, using non-public information to buy or sell Motorola stock, options in Motorola stock or the stock of a Motorola supplier or customer is prohibited.

### Accuracy of Company Records

We require honest and accurate recording and reporting of information in order to make responsible business decisions. This includes such data as quality, safety, and personnel records, as well as all financial records.

All financial books, records and accounts must accurately reflect transactions and events, and conform both to required accounting principles and to Motorola's system of internal controls. No false or artificial entries may be made. When a payment is made, it can only be used for the purpose spelled out on the supporting document.

### Recording and Retaining Business Communications

All business records and communications should be clear, truthful and accurate. Business records and communications often become public through litigation, government investigations and the media. We will avoid exaggeration, colorful language, guesswork, legal conclusions, and derogatory remarks or characterizations of people and companies. This applies to communications of all kinds, including e-mail and "informal" notes or memos. Records should always be retained and destroyed according to Motorola's record retention policies.

OUR RESPONSIBILITY TO

### Competitive Information

We must never use any illegal or unethical methods to gather competitive information. Stealing proprietary information, possessing trade secret information that was obtained without the owner's consent, or inducing such disclosures by past or present employees of other companies is prohibited.

If information is obtained by mistake that may constitute a trade secret or confidential information of another business, or if we have questions about the legality of information gathering, we should consult the Law Department.

### Fair Competition and Antitrust

Motorola and all our employees are required to comply with the antitrust and unfair competition laws of the many countries in which we do business. These laws are complex and vary considerably from country to country. They generally concern:

- Agreements with competitors that harm customers, including price fixing and allocations of customers or contracts.

- Agreements that unduly limit a customer's ability to sell a product, including establishing the resale price of a product or service, or conditioning the sale of products on an agreement to buy other Motorola products and services.

- Attempts to monopolize, including pricing a product below cost in order to eliminate competition.

Motorolans who question whether an action may violate competition laws should talk to the Law Department.



# OUR RESPONSIBILITY TO





### Community Service

We serve society by providing life-enhancing products and services at a fair price, and by actively supporting the communities in which we operate. Motorola, the Motorola Foundation and Motorolans throughout the world provide generous financial and voluntary support to thousands of worthwhile community programs.

### Personal Community Activities

Motorolans are free to support community, charity and political organizations and causes of their choice, as long as they make it clear that their views and actions are not those of Motorola. We must ensure that our outside activities do not interfere with our job performance.

No Motorolan may pressure another employee to express a view that is contrary to a personal belief, or to contribute to or support political, religious or charitable causes.

### Environment

We will respect the environment by complying with all applicable environmental laws in all countries in which we conduct operations. Motorola is committed to the protection of the environment by minimizing the environmental impact of our operations and operating our businesses in ways that will foster a sustainable use of the world's natural resources. Motorolans need to support this commitment by complying with Motorola's environmental policies and programs. Notify management if hazardous materials come into contact with the environment or are improperly handled or discarded.

### Communicating with External Audiences

To ensure professional and consistent handling, requests from the media should be forwarded to the local communications group or Corporate Communications and Public Affairs. Unfortunately, many well-intentioned interviewees have had their version of stories misinterpreted by reporters. Let the experts handle such situations.

Motorolans are expected to cooperate with reasonable requests for information from government agencies and regulators, and to consult with the Law Department before responding to any non-routine requests. All information provided must be truthful and accurate. We will not alter or destroy documents or records in response to an investigation or other lawful request.

Requests from financial analysts and shareholders should be forwarded to Investor Relations.

OUR RESPONSIBILITY TO



### Compliance with the Law

Motorolans around the world are required to comply with all applicable laws and regulations wherever we do business. Perceived pressures from supervisors or demands due to business conditions are not excuses for violating the law. When we have any questions or concerns about the legality of an action, we are responsible for checking with management, the Law Department or the EthicsLine.

### Motorola Political Activities

No Motorolan may, except with approval from the Government Relations Office, make any political contribution for Motorola or use Motorola's name, funds, property, equipment or services for the support of political parties, initiatives, committees or candidates. This includes any contribution of value. Additionally, lobbying activities or government contacts on behalf of Motorola, other than sales activities, should be coordinated with the Government Relations Office.

### Anti-Corruption Laws

Motorola will comply with the anti-corruption laws of the countries in which it does business, including the U.S. Foreign Corrupt Practices Act (FCPA), which applies to its global business. Motorolans will not directly or indirectly offer or make a corrupt payment to government officials, including employees of state-owned enterprises. These requirements apply both to Motorola employees and agents, such as Third Party Sales Representatives, no matter where they are doing business. If you are authorized to engage agents, make sure that they are reputable and require them to agree in writing to Motorola's standards in this area.

### Crossing National Borders

When importing or exporting products, services, information or technology, Motorola will comply with applicable U.S. and other national laws, regulations and restrictions. In addition, when we travel internationally on company business we are subject to laws governing what we import and export. Motorolans are responsible for knowing the laws that pertain to them, and for checking with their import/export compliance manager when in doubt.



### General Guidance

Business decisions and actions must be based on the best interests of Motorola, and must not be motivated by personal considerations or relationships. Relationships with prospective or existing suppliers, contractors, customers, competitors or regulators must not affect our independent and sound judgment on behalf of Motorola. General guidelines to help Motorolans better understand several of the most common examples of situations that may cause a conflict of interest are listed below. However, Motorolans are required to disclose to local management any situation that may be, or appear to be, a conflict of interest. When in doubt, it is best to disclose.

### Outside Employment

Motorolans may not work for or receive payments for services from any competitor, customer, distributor or supplier of Motorola without approval of local management. Any outside activity must be strictly separated from Motorola employment and should not harm job performance at Motorola. We must make sure that the skills we learn and use at Motorola are not used in such a way that could hurt the business of Motorola.

### Board Memberships

Serving on the Board of Directors or a similar body for an outside company or government agency requires the advance approval of local management. Helping the community by serving on boards of non-profit or community organizations is encouraged, and does not require prior approval.



### Family Members and Close Personal Relationships

We may not use personal influence to get Motorola to do business with a company in which our family members or friends have an interest.

### Investments

Motorolans may not allow their investments to influence, or appear to influence, their independent judgment on behalf of Motorola. This could happen in many ways, but it is most likely to create the appearance of a conflict of interest if a Motorolan has an investment in a competitor, supplier, customer, or distributor and his decisions may have a business impact on this outside party. If there is any doubt about how an investment might be perceived, it should be disclosed to management.

We are also prohibited from directly or indirectly buying, or otherwise acquiring rights to any property or materials, when we know that Motorola may be interested in pursuing such an opportunity and the information is not public.

## Gifts

Gifts are not always physical objects—they might also be services, favors or other items of value.

### Gifts to Motorolans

Motorolans don't accept kickbacks, lavish gifts or gratuities. We can accept items of nominal value, such as small promotional items bearing another company's name. We will not accept anything that might make it appear that our judgment for Motorola would be compromised.

In some rare situations, it would be impractical or harmful to refuse or return a gift. When this happens, discuss the situation with local management.

### Gifts Given by Motorola



Some business situations call for giving gifts. Motorola's gifts must be legal, reasonable, and approved by local management. Motorolans never pay bribes.

We understand that gift-giving practices vary among cultures. Our local gift policies and guidelines address this.

We will not provide any gift if it is prohibited by law or the policy of the recipient's organization. For example, the employees of many government entities around the world are prohibited from accepting gifts. If in doubt, check first.

## Entertainment

We consider "entertainment" to include a representative of both parties at the event.

### Entertainment of Motorolans

We may accept entertainment that is reasonable in the context of the business and that advances the Company's interests. For example, accompanying a business associate to a local cultural or sporting event, or to a business meal, would in most cases be acceptable.

Entertainment that is lavish or frequent may appear to influence one's independent judgment on behalf of Motorola. If an invitation seems inappropriate, we must turn down the offer or pay the true value of the entertainment ourselves. Accepting entertainment that may appear inappropriate should be discussed with local management, in advance if possible.

### Entertainment by Motorola

We may provide entertainment that is reasonable in the context of the business. If we have a concern about whether providing entertainment is appropriate, we will discuss it with management in advance.

Entertainment of government officials may be prohibited by law. Get approval from local management in each instance.

### Travel

#### Acceptance of Travel Expenses

Motorolans may accept transportation and lodging provided by a Motorola supplier or other third party, if the trip is for business and is approved in advance by the employee's supervisor. All travel accepted must be accurately recorded in our travel expense records.

#### Providing Travel

Unless prohibited by law or the policy of the recipient's organization, Motorola may pay the transportation and lodging expenses incurred by customers, agents or suppliers in connection with a visit to a Motorola facility or product installation. The visit must be for a business purpose, for example, on-site examination of equipment, contract negotiations, or training.

All travel by government officials that is sponsored or paid for by Motorola must be approved in advance by the division general manager and the Office of Ethics and Compliance.



If you have questions about the Motorola *Code of Business Conduct*, the first place to turn is your supervisor or manager. If you're uncomfortable discussing the issue with your supervisor, please talk to another member of management, Human Resources, the Law Department or the Motorola EthicsLine. Our Open Door Policy allows you the freedom to approach any level of management with your concerns.

## Key Beliefs

It would be wonderful if the right thing to do were always perfectly clear. In the real world of business, however, things are not always obvious. If you find yourself in a situation where the "right thing" is unclear or doing the right thing is difficult, remember our key beliefs.

How will our action reflect everyone who is held to important concerns?

To Motorola employees? To customers?
To business partners, competitors and shareholders?
To the government? To the public?

*If you wouldn't want your action to appear in the media, it's probably not the right thing to do.*



## EthicsLine

The EthicsLine offers information, advice, and suggestions. You may use it to discuss any concern or problem. It is not only for emergencies. The EthicsLine strives to make sure that all questions or concerns are handled fairly, discreetly and thoroughly. In the U.S. and Canada, the EthicsLine may be reached at *800-538-4427*. When calling from other countries, please use the AT&T Direct Access Code for your country. No method of identifying a caller is used.

The address for writing to the EthicsLine is: *P.O. Box 10551, Scottsdale, AZ 85271-0551* USA. Calls to the EthicsLine may be made anonymously. Anonymous callers will be advised if additional information is required before an effective investigation can take place. Callers who wish to learn the status of their calls will be assigned a confidential identification number. Confidentiality for all others who report concerns will be maintained to the fullest extent possible. The EthicsLine may also be contacted by e-mail at EthicsLine@mot.com. Although e-mail is not anonymous, you can request that your identity be kept confidential within the EthicsLine's office.

## Reporting Concerns

Taking action to prevent problems is part of the Motorola culture. If you observe possible unethical or illegal conduct, you are encouraged to report your concerns.

Retaliation against any employee who honestly reports a concern to Motorola about illegal or unethical conduct will not be tolerated. It is unacceptable to file a report knowing it to be false.



http://ethics.mot.com

*Uncompromising Integrity*

*Constant Respect for People*

 **MOTOROLA**

© 1999 Motorola, Inc.
Motorola is an Equal Opportunity/Affirmative Action Employer
Motorola and Ⓜ are registered trademarks of Motorola, Inc.
Produced by the Motorola Office of Ethics and Compliance
1303 E. Algonquin Road, Schaumburg, IL 60196
Printed on recycled paper

12/99



 **MOTOROLA** | **Pledge to Abide by the Code of Business Conduct**

I hereby acknowledge that I have been provided with a copy of the Motorola Code of Business Conduct. I will read and abide by the provisions of the Code as an ongoing condition of my employment with Motorola. If I have a question about the meaning or application of any part of the Code, I can get answers through my manager, my Ethics Committee, the Office of Ethics & Compliance, or the EthicsLine.

**EthicsLine Contact Information:**
- Telephone:    1-800-538-4427
- Email:    ethicsline@motorola.com
- Mail:    P.O. Box 10551
    Scottsdale, AZ  85271-0551
- Online:    ethics.mot.com/ethicsline

| WITNESS | EMPLOYEE |
|---|---|
| Signature *Rochelle Russo* | Signature *Michael J Fenger* |
| Typed or Printed Name Rochelle Russo | Typed or Printed Name Michael J Fenger |
| Date 9-23-02 | Date 9-23-02 |

Motorola Internal Use

MOTOROLA, INC.
STANDARD OPERATING PROCEDURE

E - 60

# PROTECTION OF PROPRIETARY INFORMATION - POPI

Effective Date:    September 1, 1991    Current Date:   August 19, 1997

Written By:        Vince Rauner
Reviewed By:       Pat Armstrong        Sanjar Ghaem
                   Bernie Banahan       Larry Grow
                   Peter Browne         Dave Hickie
                   Chuck Eger           Jerry Johnson
                   Peggy Eichberger     Ken Johnson
                   Chuck Ekdahl         Pat O'Malley
                   Bob Frith            Martin O'Sullivan
                   Mike Garber          Bob Scallon

Revised By:            Internal Controls Council
Revision Reviewed By:  Ken Johnson
Revision Date:         August 19, 1997

Approved By:           Accounting Policy Council

## PURPOSE

To define a uniform Motorola-wide operating procedure for the identification of proprietary information and protection of the data from inadvertent or unauthorized disclosure, modifica- tion or destruction.

## SCOPE

This operating procedure applies to all employees of Motorola, Inc. and its subsidiaries worldwide.

## CONTENTS

**Exhibit 12**

SOP E-60: Protection of Proprietary Information - POPI

1.0 References

2.0 Definitions

3.0 Policy

4.0 Responsibility

5.0 POPI Controlled Access Areas

6.0 Procedures

## 1.0 References

1.1 SOP E-62 - Appropriate Use of Computer Resources

1.2 WWCFP A-4 - Record Retention

1.3 WWCFP A-6 - Non-Motorola Use of Motorola Computers

1.4 Motorola Standards of Internal Control (SICs)

1.5 Corporate Security Policies and Procedures (CSPP) #105

1.6 Motorola Electronic Information Security Standards Motorola Information Protection Services Note: Failure to maintain appropriate confidentiality of personnel records and Motorola proprietary information is a Class III infraction of that policy and could result in loss of employment.

## 2.0 Definitions

2.1 Proprietary Information - information useful in the business which: o Motorola keeps confidential to establish legal rights, that is, property rights; o Is not generally known outside Motorola (unless subject to a confidentiality agreement or the terms of a contract with the U.S. Government); o Gives the company a competitive advantage if it is used in the business and therefore, has economic value and benefit to the company. Such types of information include technical and personnel information; sensitive business information such as plans, strategies, financial data; and trade secrets such as techniques, processes, compilations, formulas and patterns. Further included is proprietary information of others in the possession of Motorola.

SOP E-60: Protection of Proprietary Information - POPI

2.2 POPI Controlled Access Area - Any enclosed floor space which conforms to the requirements specified in Section 5.0 of this Policy. Also refer to Corporate Security Policies and Procedures (CSPP #105) for additional information on physical security requirements.

## 3.0 Policy

3.1 Motorola's policy is to keep secure within the company non- public information which it possesses, except in the case of normal business pursuits, e.g., where the company promotes products, makes announcements or transfers such information in a selective manner under an agreement.

3.2 Some information possessed by the company is of a sensitive nature such that divulging it to outsiders, for example, competitors, would make Motorola less competitive or cause damage. On the other hand, the company does not want to inhibit sharing of information among employees for those who need to know such information to perform their jobs. If information is properly handled it can remain proprietary to the company, and safeguarded for competitive benefit, while at the same time it is being shared for company use.

3.3 The purpose of protection is to prevent inadvertent or wrongful disclosure. The procedures for accomplishing this must be standard throughout the company so that information from one part of the company can be transferred to another part of the company with assurance of protection expected by the organization originating the information.

3.4 All computer and network users, including non-Motorolans accessing Motorola computers, will be held strictly accountable for their activities while using Motorola information processing resources. Actions, including details of files accessed, will be subject to recording and subsequent audit review. Individual users shall be uniquely identified, with explicit authorization to access non-public information enforced at the host system which stores the data. Additional requirements are specified in the Standards of Internal Control and the Electronic Information Security Standards, which provide guidance relating to specific technologies or services, such as E-Mail or EDI.

3.5 The exhibit that follows sets forth minimum safeguards to use. Motorolans with a question should seek an answer from Corporate Security, Corporate Information Security or the Intellectual Property Department, but in any event, take steps to secure sensitive and valuable information, just as one would safeguard one's own valuable property.

3.6 Proprietary information may, on occasion, be provided to the U.S. Government. In that event, the words "Confidential" and "Secret" may be omitted. Instead, the proprietary information will be marked either "Motorola Proprietary" or Motorola Registered Proprietary". In addition and in order to protect the proprietary information in a manner recognized by the U.S. Government legends as set out in the relevant U.S. Government Regulations (e.g., ASPR, FAR, DFAR, etc.) will also be placed on the information being provided.

## 4.0 Responsibility

4.1 Sector/Group/Subsidiary, General Managers and Corporate Directors will implement and enforce this policy and procedure within their respective business entities. They will cause standards to be set for use of the procedures to protect information originating in their organizations. They will cause training of their people to protect that information and also information their people receive from other organizations within the Company.

4.2 Each employee has a responsibility not to use, or to publish, or to otherwise disclose to others, any proprietary or confidential information of Motorola or its customers or suppliers or other contractors, except as Motorola duties may require. Each employee should report information security breaches to the Corporate Security Department and the local Security Department.

4.3 Corporate Audit has the responsibility to monitor compliance with this procedure and determine that suitable tools and training are available in audited departments.

## 5.0 POPI Controlled Access Areas

5.1 An area properly designated as POPI access controlled is subject to less stringent physical storage requirements than those specified elsewhere in this policy. The use of this policy exemption is meant to be very rare and should be considered only for highly unusual and technical functions (i.e., 24-hour engineering labs and design centers), where printed schematics or other shared data cannot be easily removed from view. By definition, individual offices may not be designated as POPI Controlled Access Areas.

5.2 The occupants of a POPI Controlled Access Area must adhere to all other Motorola policy requirements. These include but are not limited to requirements regarding POPI document classification, EISS, and internal control standards (SICs) governing loss prevention.

5.3 In order for an area to be considered POPI Controlled Access, the following criteria are required:

5.3.1 A written plan for each POPI Controlled Access Area which at a minimum addresses the business reason for the designation as well as relevant self-audit and security procedures. Each plan must be approved in writing by the appropriate Sector/ Group Security Manager, Internal Controls Manager, Controller and Operations Vice President.

5.3.2 Documented and independent self-audits of the area must be performed at least quarterly to ensure compliance with POPI and security standards. Repeat or serious infractions must result in the temporary revocation of the POPI Controlled Access designation until adequate corrective action can be demonstrated.

SOP E-60: Protection of Proprietary Information - POPI

5.3.3 A separate and restricted 24-hour security system must be in place which uniquely identifies users and logs their access by date/time. In areas surrounded by false ceilings and/or walls which do not extend to the ceiling, motion detectors must supplement the separate security access system.

5.3.4 Janitorial services within the area must either be accompanied by Security personnel or be performed under supervision during normal working hours.

## 6.0 Procedures

6.1 The following schedule provides information with respect to the treatment to be given to Motorola classified documents. It is organized by type of classification. Within each classification it is then organized by the type of action and the procedures that must accompany that specific action.
-------------------------------------

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MOTOROLA GENERAL BUSINESS INFORMATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| ACTION PERFORMED<br>* * * * * * * * * * * * * * * | PROCEDURES FOR<br>MANAGING INFORMATION<br>* * * * * * * * * * * * * * * * * * * * * |
|---|---|
| Classification Basis<br>- (Business entity<br>provides for examples<br>for its personnel) | All Motorola<br>information of<br>business relevance<br>not otherwise<br>classified. |
| Classifier | Developer or compiler<br>of the information. |
| Marking | Information is not<br>marked or labeled. |
| Marking Exception -<br>(For information<br>revealed to US<br>government employees<br>under an NDA or US<br>Gov. Regs. | N/A |
| Access | All Motorolans and<br>non-Motorolans having |

SOP E-60: Protection of Proprietary Information - POPI

| | |
|---|---|
| | a legitimate business need for this information. |
| Handling During Travel | No extra precautions necessary. |
| Revisions | No specific requirements. |
| Copying | No restrictions. |
| Distribution Internal | Any appropriate method. |
| Distribution External | Any appropriate method. |
| Storage | No specific requirements. |
| Destruction | No specific requirements. |
| Downgrading | No specific requirements. |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

MOTOROLA INTERNAL USE ONLY

- - - - - - - - - - - - - - - - - - - - - - - - - - -

| ACTION PERFORMED<br>* * * * * * * * * * * * * * * * | PROCEDURES FOR MANAGING INFORMATION<br>* * * * * * * * * * * * * * * * * * * * |
|---|---|
| Classification Basis - (Business entity provides for examples for its personnel) | Business, technical, financial and personnel information which is written, oral, in electronic media or physical form, and which, if communicated outside Motorola, could benefit competitors |

SOP E-60: Protection of Proprietary Information - POPI

|  |  |
|---|---|
|  | at Motorola's expense. |
| Classifier | Developer or compiler of the information. |
| Marking | "MOTOROLA INTERNAL USE ONLY" prominently marked on at least the top page. |
|  | For digital information, application systems must enforce the marking in all print routines and graphics displays, and where practical, embedded in files. |
|  | Classification expiration date is optional. |
| Marking Exception - (For information revealed to US government employees under an NDA or US Gov. Regs. | N/A |
| Access | All Motorolans and non-Motorolans having a need for this information, but only the specific information needed. |
| Handling During Travel | Keep in control. |
| Revisions | Revisions to original |

SOP E-60: Protection of Proprietary Information - POPI

|  | information require the approval of the classifier. |
|---|---|
| Copying | Permitted by authorized user, but maintain clear markings, including digital copies. |
| Distribution Internal | Company mail (folded or in envelop), general mail, approved electronic mail and electronic file transfer systems. |
| Distribution External | Public or private mail carrier, approved public E-Mail or electronic file transfer system. |
| Storage | Protect from loss to non-Motorolans.<br><br>Digital information must have access control. |
| Destruction | No special requirements. Insure that material cannot be acquired by non-Motorolans.<br><br>Digital files must be deleted or erased. |
| Downgrading | By date stated in the information or at the end of the |

SOP E-60: Protection of Proprietary Information - POPI

information retention
period per policy
WWCFP A-4, or as
designated at the
request of the
classifier.

------------------------------------
MOTOROLA CONFIDENTIAL PROPRIETARY
------------------------------------

ACTION PERFORMED
* * * * * * * * * * * * * * *

PROCEDURES FOR
MANAGING INFORMATION
* * * * * * * * * * * * * * * * * * * *

Classification Basis
- (Business entity
provides for examples
for its personnel)

Business, technical,
financial and
personnel information
which is written,
oral, in electronic
media or physical
form, and which has
significant value to
the company.  It
should be limited to
persons with a need
to know.

Classifier

Manager or higher of
the organization
developing the
information.

Marking

"MOTOROLA
CONFIDENTIAL
PROPRIETARY"
prominently marked on
the top page and each
other page, as
reasonable.

For digital
information,

SOP E-60: Protection of Proprietary Information - POPI

application systems must enforce the marking in all print routines and graphics displays and where practical, embedded in files.

Classification expiration date is optional.

| | |
|---|---|
| Marking Exception - (For information revealed to US government employees under an NDA or US Gov. Regs. | MOTOROLA PROPRIETARY INFORMATION.<br><br>In place on MCP above. |
| Access | Motorolans with a need to know and non-Motorolans with a need to know, but subject to a confidentiality agreement and consistent with Corporate/Sector/Group SOP's. |
| Handling During Travel | Keep in possession or locked. |
| Revisions | Revisions to original information require the approval of the classifier. |
| Copying | Permitted by authorized user, but maintain clear markings, including digital copies. |

| | |
|---|---|
| Distribution Internal | Printed documents by company mail or approved outside carriers, opaque envelope. Double envelope used in judgment of sender.<br><br>For digital information, approved electronic mail and electronic file transfer systems with access authentication control. |
| Distribution External | Public or private mail carrier with double envelope, MIS approved public E-Mail or electronic file transfer system. Files must be encrypted when transmitting over unprotected communications systems. |
| Storage | Information must be kept out of view of persons not having a need to know. When printed information is not in use, it must be stored in a locked cabinet, desk or approved controlled access area.<br><br>Digital information |

SOP E-60: Protection of Proprietary Information - POPI

should have access control and files should be locked for access only by authorized individuals.

Destruction

Printed materials must be deposited in secure document receptacles or shredded.

Digital files must be erased through MIS approved computerized disk utilities which destroy the data.

Downgrading

By date stated in the information or at the end of the information retention period per policy WWCFP A-4, or as designated at the request of the classifier.

------------------------------------------

MOTOROLA REGISTERED SECRET PROPRIETARY

------------------------------------------

ACTION PERFORMED
* * * * * * * * * * * * * * * *

PROCEDURES FOR
MANAGING INFORMATION
* * * * * * * * * * * * * * * * * * *

Classification Basis
- (Business entity
provides for examples
for its personnel)

Business, technical, financial, trade secret and personnel information which is written, oral, in electronic media or

physical form, and which is of a most sensitive nature.

Knowledge must be limited to selected individuals.

| | |
|---|---|
| Classifier | Manager or higher of the organization developing the information. |
| Marking | "MOTOROLA REGISTERED SECRET PROPRIETARY" on a colored cover sheet and prominently displayed on the top and bottom of each page. The cover sheet should name the individual custodian of that copy and bear a registration number tracked by the Classifier.<br><br>For digital information, application systems must enforce the marking in all print routines and graphics displays, and where practical, embedded in files. |
| Marking Exception - (For information revealed to US government employees under an NDA or US Gov. Regs. | "MOTOROLA REGISTERED PROPRIETARY INFORMATION" in place of MRSP above. |

SOP E-60: Protection of Proprietary Information - POPI

| | |
|---|---|
| Access | Motorolans with a need to know and non-Motorolans with a need to know, but subject to a confidentiality agreement. Approval for access must be at the V.P. level. Distribution lists maintained by originator. |
| Handling During Travel | Keep in possession or locked. Avoid working with or exposing material while on public transportation. |
| Revisions | Revisions to original information require the approval of the classifier. Approval must be in writing and all changes must be documented. |
| Copying | Permitted by authorized user upon permission of originator, but maintain clear markings, including digital copies. All copies must be registered and logged. |
| Distribution Internal | Printed documents |

SOP E-60: Protection of Proprietary Information - POPI

must be hand-carried, if possible. Double envelope is required, with inner envelope marked "open by addressee only". Company mail or approved, secure outside carrier, with same packaging requirements.

For digital information, MIS approved secure electronic systems, with access authentication control and end-to-end encryption.

Distribution External

Public or private mail carrier with double envelope. Registered return receipt is required. Any electronic transmission, including file transfer or E-Mail, must be encrypted end- to-end with MIS approved systems.

Storage

When is use, kept under sight control, and when stored, placed in locked cabinets or desks.

Digital information must be encrypted, with de-encryption

SOP E-60: Protection of Proprietary Information - POPI

only available to designated, authorized individuals.  All computer systems must have access control.

Destruction

Material must be returned to the originator.

Digital files must be erased through MIS approved computerized utilities which destroy the data. Records must be kept of destruction.

Downgrading

Only as authorized in writing by the originator.

Motorola Internal Use Only

MOTOROLA, INC.
STANDARD OPERATING PROCEDURE (SOP)
E - 62

# APPROPRIATE USE OF COMPUTER RESOURCES

Effective Date: January 1, 1987

Revised Date: May 25, 2006

Revised By:   Appropriate Use of Computer Resources Task Force
(Corporate Law, Human Resources, and
Motorola Information Protection Services)

Reviewed By:    Corporate Law
Human Resources
Information Technology - Infrastructure Services    ITIS
Motorola Information Protection Services    MIPS

Approved By: Accounting Policy Council

## PURPOSE

1.0    To define the policy and responsibilities necessary to ensure appropriate, efficient and responsible use of computer resources.
2.0    To ensure that computer resources are used in compliance with applicable laws and software license agreements.
3.0    To define the privacy policy applicable to Motorola's computer resources.

## SCOPE

This policy applies to all employees and non-Motorolans who have access to Motorola's electronic information assets.   . It applies whether access is on-site or from remote locations. It applies to all data systems and equipment that contains Motorola data and/or is used in support of Motorola business, whether managed by Motorola or a third party. Non-Motorola users who only use computer resources that are intended for public access are exempt from the provisions of this policy.
This policy supercedes all prior versions of this SOP.

## CONTENTS

1.0 References
2.0 Definitions
3.0 Policy
4.0 Responsibilities
5.0 Appendix
    5.1. Examples of Appropriate and Inappropriate Use
    5.2. Required Usage Notice

## 1.0 REFERENCES

1.1. Human Resource Policies, including
    Progressive Discipline and Conduct
    Detrimental to Motorola's Interests, and Employee Handbooks
1.2 Code of Business Conduct
1.3 Internet Web Site Terms of Use and Privacy Policy
1.4 SOP E-60 Protection of Proprietary Information
1.5 Educational materials related to this policy

## 2.0 DEFINITIONS

2.1    Motorola Computer Resources are computers, peripherals, printers, plotters, scanners, modems, internal and external networks, electronic mail, facsimile devices/systems, paging devices/systems, and other computer devices/systems owned or leased by Motorola, whether used by employees, agents of Motorola, or authorized non-Motorolans. For purposes of this policy the scope also includes non-Motorola computer resources (e.g. Internet, business partner Computer Resources) when accessed via Motorola computer resources.

2.2    This policy includes any piece of electronic equipment or accessory that has the ability to store data that belongs to Motorola.  (examples include but are not limited to: Servers, workstations, personal computers, laptops, persona digital assistants (PDA's, smartphones) and mobile phones)

## 3.0 STATEMENT OF POLICY

3.1 Motorolans and authorized non-Motorolans are empowered to appropriately use Motorola Computer Resources in ways that will accomplish company goals and initiatives. Users of these resources are expected to act ethically and professionally wherever and whenever the resources are used. The use of Motorola Computer Resources must comply with all applicable policies and procedures, including but not limited to the Code of Business Conduct, Human Resource policies, employee handbooks, non-disclosure agreements and applicable laws.

3.2 Occasional personal use of Motorola Computer Resources is allowed if such use does not interfere with work responsibilities and other required business activities, business operations, or system performance. Personal use of these resources must not violate other provisions of this policy including Section 3.1 and Appendix 5.1.

3.3 All Motorolans must use a Motorola provided (owned or leased) computer as their primary computer for conducting Motorola business. Exceptions to this must be approved by a business controller and a vice president of IT.
*Note: A partial listing of appropriate and inappropriate uses is found in Appendix 5.1.*

3.4    All software stored in or executed on Motorola Computer Resources must be used in accordance with applicable license agreements. Public domain and shareware software are allowed only after ensuring the necessary rights have been acquired and fees have been paid.

3.5    It is the policy of Motorola to protect confidential, sensitive or critical information owned by Motorola or in Motorola custody, and also to protect specific

information as required by applicable law. Sensitive information must be properly classified, and protected according to SOP E-60, Protection of Proprietary Information (POPI).

3.6    Motorola Computer Resource transactions must be traceable to the initiating user.

3.7    Each user must be aware of the provisions of this policy before being given access to Motorola Computer Resources.

3.8    Motorola reserves the right to audit, access and inspect electronic communications of any devices connecting to the Motorola network, and any data created, stored or transmitted in any form on these devices in accordance with applicable law. Motorola retains ownership for all Motorola data regardless of who owns the device or media on which it is stored.  Motorola also reserves the right to add necessary files and modify the configuration of any connected computer or device to ensure the security and integrity of its computer resources. A usage notice (Appendix 5.2) must be displayed on computer workstations and remote data network access points before a user may login.

3.9    Appropriate disciplinary or other action, in accordance with Motorola policies and applicable law, and/or legal action will be taken against individuals found to have violated this policy. Such action may include termination of employment or contract.

## 4.0 RESPONSIBILITIES

4.1 Human Resources will:
    4.1.1    Lead the policy formation, maintenance, and enforcement activities.
    4.1.2    Maintain educational materials and guidelines which communicate the appropriate use policy and on-line privacy expectations.
    4.1.3    Ensure that new and existing employees receive education on SOP E-62.
    4.1.4    Ensure that other appropriate organizations within their business units are cognizant of their responsibilities to communicate SOP E-62 requirements to agents, business partners, and contractors.
    4.1.5    Lead the specification of enforcement mechanisms.

4.2 Law department:
    4.2.1    Will provide legal guidance in the development and maintenance of an electronic commerce privacy statement for public computer resources (e.g. Internet web sites) in conjunction with the Marketing department.
    4.2.2    Will support investigations of inappropriate use of Motorola's Computer Resources as necessary.



4.3  Corporate Contracts, Software & Technology Acquisition and Supply
      Management organizations:

    4.3.1      Will review business processes in their organization to determine
             who has principal contracting responsibility for agreements with
             contractors, consultants or agents.

    4.3.2      Will ensure that appropriate language is incorporated into agreements
             with non-Motorola organizations covering:

    4.3.2.1    Compliance with this policy.

    4.3.2.2    Inclusion of the usage notice (Appendix 5.2) in all outsourced
             connections to Motorola Computer Resources (e.g., Internet Service
             Providers).

4.4  Network and system administrators:

    4.4.1      Will ensure that the usage notice (Appendix 5.2) appears on computer
             workstations and remote data network access points.

    4.4.2      Must provide a unique user ID (computer account) and an appropriate
             authentication mechanism (e.g., password, security token/card) for each
             employee having access to Motorola computer resources.

    4.4.3      Will participate and support investigations of potential inappropriate use
             as directed by responsible management as further described in
             paragraph 4.7 below.

4.5  Department managers and individuals responsible for non-Motorolans:

    4.5.1      Must ensure individuals reporting to them are aware of all provisions of
             this policy before authorizing any access to computer resources.

    4.5.2      Are responsible for the informed interpretation of the provisions of this
             policy, including the determination of the appropriateness of all non-
             business uses by individuals reporting to them.

    4.5.3      May not grant exceptions for those activities that are specifically
             prohibited in this policy.

4.6  Employees and authorized non-Motorola users:

    4.6.1      Must comply with this policy.

4.7  Cyber Incident Response Team, Security departments, and Internal Control
      organizations:

    4.7.1      Will participate in investigations as requested by the Human Resources
             or Law departments according to jointly-developed procedures.

## 5.0 APPENDIX

### 5.1 Examples of Appropriate and Inappropriate Use

Some examples of appropriate non-business uses of Motorola's Computer Resources include but are not limited to:
- Support of approved volunteer work in the community
- Doing homework for a continuing education course
- Compiling research for a project in a post-graduate program
- Conducting on-line banking
- Performing on-line financial management
- Doing on-line shopping

Some examples of non-appropriate use of Motorola's Computer Resources include but are not limited to:
- Disclosing confidential or sensitive information which is owned by or entrusted to Motorola to unauthorized recipients
- Misusing copyrighted material or other violation of copyrights held by Motorola or others
- Misusing trademarks or service marks of Motorola or other organizations
- Infringing on intellectual property rights
- Use for any illegal purpose
- Communicating in ways that disparage other companies' products or services (excluding objective reports of substantiated fact with limited internal distribution)
- Communicating information that could be perceived as official Motorola positions or endorsements without proper management approval
- Communicating using confrontational or improper language or using statements that are defamatory
- Creating, storing, transmitting, or viewing illegal, offensive or inappropriate material, including pornography
- Participating in any activity which could be interpreted as harassment, discrimination or intimidation of others
- Using electronic mail to transmit offensive or inappropriate materials, including pornography, inappropriate jokes or cartoons, and games
- Originating or distributing chain letters or other mass mailings
- Misrepresenting an individual's identity or the source of communications or information
- Attempting to break into or monitor any Computer Resource without proper authorization, whether within Motorola or another organization
- Accessing confidential or sensitive information on computer resources without authorization
- Appropriating, disclosing, accessing, distributing, storing, collecting or processing any individual personal information or data in violation of data protection or privacy laws
- Promoting personal political or religious positions to fellow employees in the

workplace
- Participating or engaging in activities that violate the law, the Code of Business Conduct, Key Beliefs, or Motorola policies
- Operating a personal business
- Soliciting on behalf of charitable, commercial, or internal organizations, or otherwise, except as provided by appropriate Motorola HR policies/procedures on solicitation and distribution
- Export or import of any government controlled information or software to or from unauthorized locations or persons without appropriate licenses or permits
- Enabling non-Motorolans who have not signed the proper non-disclosure agreements with Motorola to regularly access a Motorola provided network connection.

## 5.2 Required Usage Notice

The following notice must be displayed on all workstations and interactive network access points before a user may login. The notice must be in English, however other languages may be used simultaneously if deemed appropriate by local Human Resource departments.

This computer resource is the property of Motorola. Authorized persons may use Motorola computer resources only for approved purposes. Misuse or misappropriation of company networks and systems is prohibited.

Motorola reserves the right to audit, access and inspect electronic communications and data created, stored, or transmitted on its computer resources in accordance with applicable law.

Motorola also reserves the right to add necessary files and modify the configuration of any connected computer or system to ensure the security and integrity of its computer resources.

BY COMPLETING THE LOGIN PROCESS YOU ARE ACKNOWLEDGING AND CONSENTING TO THE PROVISIONS OF THIS NOTICE AND POLICY SOP E-62. IF YOU ARE NOT AN AUTHORIZED USER, PLEASE DISCONTINUE THE LOGIN PROCESS NOW.
If you need further information, please visit banner.mot.com or contact your local help desk.

 **MOTOROLA** | **Policy Signature Form**

I hereby acknowledge that I have been provided with a copy of the following Policies:

- Protection of Proprietary Information (POPI), SOP E-60

- Appropriate Use of Computer Software, SOP E-62

I understand that I must read and abide by the above materials as an ongoing condition of employment, and I certify that if I do not understand the materials, I will seek clarification from my Supervisor or Human Resources Personnel.

| WITNESS | EMPLOYEE |
|---|---|
| Signature *Rochelle Russo* | Signature *Michael J Fenger* |
| Typed or Printed Name *Rochelle Russo* | Typed or Printed Name *Michael J Fenger* |
| Date 9-23-02 | Date 9-23-02 |

# EXHIBIT B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| MOTOROLA, INC. a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08 CH 25742 |
| MICHAEL FENGER, an individual, | ) ) ) | Hon. William Maki |
| Defendant. | ) ) | |

## MOTOROLA'S FIRST SET OF INTERROGATORIES TO DEFENDANT FENGER

Pursuant to Illinois Supreme Court Rules 201 and 213, Plaintiff, MOTOROLA, INC.

("Motorola"), by and through its attorneys, Seyfarth Shaw LLP, requests that Defendant,

MICHAEL FENGER ("Fenger"), answer, under oath within ten (10) days of receipt the

interrogatories propounded below.

## INSTRUCTIONS

1.      These discovery requests extend to documents and information in the possession

or control of your employees, officers, consultants, accountants, agents, representatives,

assignees, and unless privileged, your attorneys.

2.      If you object to, or otherwise decline to respond to, any portion of an

Interrogatory, please provide all documents or information called for by that portion of the

Interrogatory to which you do not object or to which you do not decline to answer. If you object

to an Interrogatory on the ground that it is too broad (i.e., that it calls both for documents or

information which is relevant to the subject matter of the action and documents or information

which is not), please provide such documents or information as is concededly relevant. If you

object to an Interrogatory on the ground that to provide documents or information would

constitute an undue burden, please provide such requested documents or information as can be supplied without undertaking an undue burden.

3.    All objections or answers to these Interrogatories which fail or refuse fully to respond to any Interrogatory on the ground of any claim of privilege of any kind shall:

a.    State the nature of the claim of privilege;

b.    State all facts relied upon in support of the claim of privilege or related thereto;

c.    Identify all documents or information related to the claim of privilege;

d.    Identify all persons having knowledge of any facts related to the claim of privilege;

e.    Provide a description of each document withheld sufficient to validate the privilege claimed, including the date of each document, its author and all recipients; and

f.    To the extent not privileged, describe the subject matter of the documents or information.

4.    These Interrogatories are continuing in nature.  You shall provide additional documents or information, by way of supplemental responses, as you or any person acting on your behalf may hereafter obtain or become aware of, which will augment, modify or clarify the answers now given, or otherwise be responsive to any of these Interrogatories.

5.    Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to obtain the broadest possible meaning.

6.    These Interrogatories are intended to cover all information and documents in your possession, custody or control.  If any information or documents described in the Interrogatories

CH1 11531497.1

or answers thereto was, but no longer is, in your custody or control, or in existence, state whether:

    a.     It is missing or lost;

    b.     It has been destroyed;

    c.     It has been transferred, voluntarily or involuntarily, to others; or

    d.     It has been disposed of otherwise.

7.     In each instance, explain the circumstances surrounding such disposition and identify the person(s) directing or authorizing same, and the date(s) thereof, including but not limited to a copy of the document retention policy. Identify each document by listing its author, the author's address, type of document, date, subject matter, present location(s) and custodian(s), and state whether the document (or copies) are still in existence.

## DEFINITIONS

1.     "Motorola" means Motorola, Inc., and any parent corporations, subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, representatives, agents, investigators, attorneys, and all other Persons or entities acting on behalf of Motorola.

2.     "Communication(s)" means any word, statement, question, fact, thing, idea, Document, instruction, request, or demand transmitted or communicated verbally, in writing, electronically, telephonically or in any other manner and includes, but is not limited to, Communications with third parties.

3.     "Document(s)" means all tangible things and all written and graphic material and records of any type or description, whether handwritten, typed, printed, computer-generated, or in any other form, including, without limitation, all originals, drafts and non-identical copies. Document(s) includes, without limitation, all tangible things, including, without limitation, photographs, photographic negatives, movies, videotapes, slides, phone records, audio and/or

3

visual recordings, transcripts, catalogs, ledgers, minutes, memoranda, letters, notes, purchase orders, invoices, data compilations and all computerized and electronic data from which written or graphic material or records can be obtained, generated and/or translated.

4.    "Litigation" means the Litigation titled "*Motorola, Inc. v. Michael Fenger*," filed in the Circuit Court of Cook County, Illinois, Case No. 08 CH 25742.

5.    "Apple" means Apple Inc. and any parent corporations, subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, representatives, agents, investigators, attorneys, or other Persons or entities acting on behalf of Apple.

6.    "Person" means a natural Person and any entity, such as, but not limited to, a corporation, association, partnership, limited liability company, or trust, and each such entity's known predecessors, successors, assigns, affiliated entities, parent corporations, subsidiaries, units and divisions.

7.    "Relate(s) To" or "Relating To" means consisting of, referring to, regarding, describing, about, identifying, concerning, evidencing, summarizing or analyzing.

8.    "You" or the "Defendant" means Michael Fenger and all representatives, successors, agents, investigators, attorneys, or other Persons or entities acting on behalf of Michael Fenger. "Your" is the possessive form of "You."

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all computers owned or used by you, whether hand-held, laptop or desktop and any external hard drives, Zip drives, floppy disk, DVD, or other portable computer disks, drives or devices in your possession, custody, or control since September 1, 2007.

### ANSWER:

CH1 11531497.1

**INTERROGATORY NO. 2:**

Identify all e-mail accounts used by you since September 1, 2007.

**ANSWER:**

**INTERROGATORY NO. 3:**

State your current job title, duties and responsibilities, and identify all customers with which you have or will interact.

**ANSWER:**

**INTERROGATORY NO. 4:**

Identify all contracts, agreements, and terms of your employment between you and Apple.

**ANSWER:**

**INTERROGATORY NO. 5:**

Identify all Apple employees with whom you had contact during the recruitment and hiring process.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify all documents that you provided to Apple before and after you were hired by Apple and the date on which they were provided.

**ANSWER:**

CH1 11531497.1

**INTERROGATORY NO. 7:**

Identify all Communications You have had with any Person Relating To their application

for employment with Apple or hiring at Apple since October 1, 2007.

**ANSWER:**


**INTERROGATORY NO. 8:**

Identify all persons participating in any way in answering these Interrogatories.

**ANSWER:**


**INTERROGATORY NO. 9:**

Identify all persons having knowledge of any of the facts alleged in the complaint in this

cause and state the substance of the facts of which each has knowledge.

**ANSWER:**


**INTERROGATORY NO. 10:**

Identify each "lay witness", as defined by Ill. Sup. Ct. R. 213(f)(1), who will testify for

Defendant at a trial herein and, separately for each such person, provide the information required

by Rule 213(f)(1).

**ANSWER:**


**INTERROGATORY NO. 11:**

Identify each "independent expert witness", as defined by Ill. Sup. Ct. R. 213(f)(2), who

will testify for Defendant at a trial herein and, separately for each such person, provide the

information required by Rule 213(f)(2).

CH1 11531497.1

**ANSWER:**


**INTERROGATORY NO. 12:**

Identify each "controlled expert witness", as defined by Ill. Sup. Ct. R. 213(f)(3), who will testify for Defendant at a trial herein and, separately for each such person, provide the information required by Rule 213(f)(3).

**ANSWER:**


Respectfully submitted,

MOTOROLA, INC.


By: _____
          One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 30, 2008

7

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MOTOROLA, INC.                                     )
a Delaware Corporation,                            )
                                                   )
      Plaintiff,                              )
                                                   )        Case No. 08 CH 25742
      v.                                      )
                                                   )        Hon. William Maki
MICHAEL FENGER, an individual,                     )
                                                   )
      Defendant.                              )

## MOTOROLA'S REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Illinois Supreme Court Rule 214, Plaintiff, MOTOROLA, INC.

("Motorola"), by and through its attorneys, Seyfarth Shaw LLP, requests that Defendant,

MICHAEL FENGER ("Fenger"), produce each of the Documents identified and described below

for inspection and copying at the offices of Seyfarth Shaw LLP, 131 South Dearborn Street,

Suite 2400, Chicago, Illinois 60603 within ten (10) days of receipt.

## INSTRUCTIONS

1.      Motorola's Requests for Production of Documents (the "Requests") is addressed

to Defendant, his agents and/or attorneys. Except where stated otherwise, if the requested

Documents are known by Defendant to exist but are not in the possession of Defendant, his

agents and/or attorneys, it is requested that Defendant so indicate or produce such Documents

that show the name of the Person or entity who has custody of the Documents.

2.      If any Documents responsive to any Request have been lost, mutilated or

destroyed, so state and identify each such Document, and state to which Request(s) the

Document would have been responsive.

3.      For each Request, produce all Documents responsive to the Request that are in Your possession, custody or control.  If there are no Documents in Your possession, custody or control which are responsive to a particular Request, so state and Identify such Request.

4.      If any Documents falling within any description contained in any of the following Requests is withheld under claim of privilege, Defendant shall serve upon the undersigned attorneys a written list of the withheld Documents, including the following information as to each such item:  (1) its date; (2) the name(s) of the Person(s) or other entity(ies) who or which drafted, authored or prepared it; (3) its title; (4) the name(s) of the Person(s) or other entity(ies) to whom it was addressed; (5) the name(s) of each Person or entity to whom the item or any copy or reproduction thereof was ever directed, addressed, sent, delivered, mailed, given or in any other manner disclosed; and (6) a statement of the ground or grounds on which each such document is considered to be privileged from production.

5.      To the extent any proper name used herein is incorrect, it is to be construed as the correct proper name, if the correct name is reasonably identifiable from the name used.  Please notify the undersigned counsel for clarification of any proper names used herein.

6.      The past tense of words used herein is to be construed to include the past and present tense and vice versa to make the Request inclusive rather than exclusive.

7.      "And" shall include "or" and "or" shall include "and," as is necessary to make the Requests inclusive rather than exclusive.

8.      Terms used in the plural or singular form shall be construed in both the singular and plural forms, as is appropriate to require the most complete and inclusive response and the words used in the masculine gender also include the feminine.

CHI 11530868.1

9.      Each Document is to be produced as it is kept in the ordinary course of business, in its original file folder, file jacket or container.

10.      Each Request is deemed to be continuing. If You obtain other information and/or Documents which would add to the Documents produced by You, then You are directed to provide such information and/or produce such additional or different Documents immediately upon Your discovery or receipt of such information and/or Documents.

11.      If You contend that any of the following Requests are overly broad, unduly burdensome, vague or ambiguous, please contact the undersigned counsel. Counsel will endeavor to modify or clarify a particular Request to remedy any valid objection raised.

12.      Where You object to a Request being overly broad, burdensome or oppressive, please state facts or other evidence demonstrating the nature of the burden.

## DEFINITIONS

1.      "Motorola" means Motorola, Inc., and any parent corporations, subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, representatives, agents, investigators, attorneys, and all other Persons or entities acting on behalf of Motorola.

2.      "Communication(s)" means any word, statement, question, fact, thing, idea, Document, instruction, request, or demand transmitted or communicated verbally, in writing, electronically, telephonically or in any other manner and includes, but is not limited to, Communications with third parties.

3.      "Document(s)" means all tangible things and all written and graphic material and records of any type or description, whether handwritten, typed, printed, computer-generated, or in any other form, including, without limitation, all originals, drafts and non-identical copies. Document(s) includes, without limitation, all tangible things, including, without limitation, photographs, photographic negatives, movies, videotapes, slides, phone records, audio and/or

3

visual recordings, transcripts, catalogs, ledgers, minutes, memoranda, letters, notes, purchase orders, invoices, data compilations and all computerized and electronic data from which written or graphic material or records can be obtained, generated and/or translated.

4.      "Litigation" means the Litigation titled "*Motorola, Inc. v. Michael Fenger*," filed in the Circuit Court of Cook County, Illinois, Case No. 08 CH 25742.

5.      "Apple" means Apple Inc. and any parent corporations, subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, representatives, agents, investigators, attorneys, or other Persons or entities acting on behalf of Apple.

6.      "Person" means a natural Person and any entity, such as, but not limited to, a corporation, association, partnership, limited liability company, or trust, and each such entity's known predecessors, successors, assigns, affiliated entities, parent corporations, subsidiaries, units and divisions.

7.      "Relate(s) To" or "Relating To" means consisting of, referring to, regarding, describing, about, identifying, concerning, evidencing, summarizing or analyzing.

8.      "You" or the "Defendant" means Michael Fenger and all representatives, successors, agents, investigators, attorneys, or other Persons or entities acting on behalf of Michael Fenger. "Your" is the possessive form of "You."

## DOCUMENTS REQUESTED

### REQUEST NO. 1:

All Documents identified in or used in preparing Your Answers to Interrogatories.

### RESPONSE:

4

**REQUEST NO. 2:**

All Documents that Relate To You taking or considering an employment position with Apple.

**RESPONSE:**


**REQUEST NO. 3:**

All Documents used, relied upon, consulted or referenced by You in considering and/or accepting employment with Apple.

**RESPONSE:**


**REQUEST NO. 4:**

All Documents Relating To Communications between You and Apple that Relate To Your employment or potential employment with Apple since October 1, 2007.

**RESPONSE:**


**REQUEST NO. 5:**

All Documents Relating To any interview(s) between You and Apple, including, but not limited to, all Documents You used, relied upon, consulted or referenced while interviewing with Apple.

**RESPONSE:**


**REQUEST NO. 6:**

All Documents Relating To or referencing any Agreements between You and Motorola.

**RESPONSE:**

**REQUEST NO. 7:**

All Documents Relating To Communications between You and any Person since October 1, 2007 that Relate To any Agreement between You and Motorola.

**RESPONSE:**


**REQUEST NO. 8:**

All Documents Relating To any evaluation or investigation performed by You, Apple or any Person Relating To any Agreement between You and Motorola.

**RESPONSE:**


**REQUEST NO. 9:**

All Documents and any Documents Relating To Communications between You and Apple Relating To any Motorola Business Unit, strategic plan, customer or potential customer, trade secret and/or other proprietary or confidential information.

**RESPONSE:**


**REQUEST NO. 10:**

All Documents and any Communications and Documents Relating To Communications between You and any Person since October 1, 2007  Relating To any Motorola Business Unit, strategic plan, customer or potential customer, trade secret and/or other proprietary or confidential information.

**RESPONSE:**

CH1 11530868.1

**REQUEST NO. 11:**

All Documents Relating To any action taken by You since January 1, 2007 to protect any Motorola trade secret and/or other proprietary or confidential information.

**RESPONSE:**

**REQUEST NO. 12:**

All Documents and Communications Relating To employment opportunities at Apple for other Motorola current or former employees.

**RESPONSE:**

**REQUEST NO. 13:**

All Documents and any Communications and Documents Relating To Communications since October 1, 2007 between You and any current or former Motorola employee that Relate To employment opportunities at Apple.

**RESPONSE:**

**REQUEST NO. 14:**

All Documents Relating To or referencing any Communications that Relate To any efforts by You to solicit, recruit, interview and/or hire former or current Motorola employees on behalf of Apple.

**RESPONSE:**

7

**REQUEST NO. 15:**

All Documents and any Communications and Documents Relating To any Communication Relating To Your job description, duties, compensation, responsibilities and the terms and conditions of Your employment at Apple.

**RESPONSE:**

**REQUEST NO. 16:**

All Document Relating To or referencing any Agreements between You and Apple, including, but not limited to, any Indemnification Agreement between You and Apple that Relates To the Litigation.

**RESPONSE:**

**REQUEST NO. 17:**

All Documents and any Documents Relating To Communications between You and Apple or any Person that Relate To You taking or considering an employment position with Apple and/or any Agreement between You and Apple.

**RESPONSE:**

**REQUEST NO. 18:**

All Documents and any Documents Relating To any Communication between You and any Person that Relate To You being solicited, recruited, interviewed or hired by Apple.

**RESPONSE:**

**REQUEST NO. 19:**

All Documents in your possession Relating To Motorola's Board of Directors' meetings.

**RESPONSE:**


**REQUEST NO. 20:**

All Documents and Documents Relating To any Communications between You and any executive search company and/or firm since October 1, 2007.

**RESPONSE:**


**REQUEST NO. 21:**

All Documents or Documents Relating To any Communications you intend to offer into evidence or use as an exhibit at any hearing, arbitration, deposition or trial of this Litigation.

**RESPONSE:**


**REQUEST NO. 22:**

Your calendars, daily planners, blackberries, palm pilots, PDAs, schedules, agendas, itineraries and any other documents relating to your day-to-day business activities from September 1, 2007 to the present.

**RESPONSE:**


**REQUEST NO. 23:**

Any and all computers owned or used by you, whether hand-held, laptop, or desktop and any external hard drives, Zip drives, floppy disk, DVD, or other portable computer disks, drives or devices in your possession, custody, or control since January 1, 2007.

9

**RESPONSE:**


**REQUEST NO. 24:**

For every Person who may offer any opinion testimony in this Litigation, produce all Documents:

      1.    reviewed, considered, relied upon or referred to in any way, to the extent the Documents may relate to the Person's testimony in this Litigation;

      2.    Relating To all reports, including all drafts of reports, prepared by the Person, to the extent the Documents may relate to the Person's testimony in this Litigation;

      3.    that identify the background, experience, credentials, education and employment or work experience of the Person, including, but not limited to, a curriculum vitae;

      4.    that identify the number of times the Person has been retained by You, the number of times the Person has testified on behalf of You, all reports, including all drafts of reports, prepared by the Person on behalf of You for each time that Person has been retained, and the fees charges by the Person for each time the Person has been retained;

      5.    Relating To articles, transcripts of speeches, books, pamphlets, manuals and other Documents authored, co-authored, edited, prepared or published by or for the witness;

      6.    Relating To prior deposition, trial, administrative or other judicial or quasi-judicial proceedings, testimony of the Person, including all affidavits signed or adopted by the Person.

**RESPONSE:**

**REQUEST NO. 25:**

To the extent not requested above, all Documents that Relate To the Litigation.

**RESPONSE:**

Respectfully submitted,

MOTOROLA, INC.

By: _____
                    One of Its Attorneys

Michael D. Wexler
Justin K. Beyer
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000
Firm I.D. No. 90747

Dated: July 30, 2008

11

## CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the NOTICE OF MOTION, MOTION FOR EXPEDITED DISCOVERY, and PROPOSED DISCOVERY REQUESTS to be served upon the following by FedEx, postage prepaid, this 30th day of July, 2008:

> Michael Fenger
> 23500 Toyonita Road
> Los Altos Hills, California 94024

Justin K. Beyer

# EXHIBIT J

Order                                                                    (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MOTOROLA

v.

FENGER

No. 08 CH 25742

### ORDER

This matter coming before the Court on Motorola's motion for Expedited Discovery, the Court being advised that Defendant Fenger has filed his Notice of Removal to federal court; IT IS HEREBY ORDERED:

(1) matter removed to Northern District of Illinois

(2) This motion not heard due to removal and deemed moot.

Atty. No.: 90747

Name: Seyfarth Shaw / J. Beyer

Atty. for: ∏

Address: 131 S. Dearborn St. Ste 2400

City/State/Zip: Chicago, IL 60603

Telephone: (312) 460-5000

ENTERED:

Dated: S 11, 2008

ENTERED
JUDGE WILLIAM O. MAKI-1604
AUG 11 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                        Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**